IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMELIA FAIRLEY and ASHLEY REDDICK, on behalf of themselves and all those similarly situated, | |
| Plaintiffs, | No. 20-cv-02273 |
| v. | Honorable Franklin U. Valderrama |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, and McDONALD'S RESTAURANTS of FLORIDA, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jamelia Fairley (Fairley) and Ashley Reddick (Reddick) (collectively, Plaintiffs), work and worked at a McDonald's restaurant in Sanford, Florida. Plaintiffs allege that they worked in a discriminatory, sexually charged, and hostile work environment. They brought a class-action suit against McDonald's Corporation, McDonald's USA, LLC (McDonald's USA), and McDonald's Restaurants of Florida, Inc. (McDonald's of Florida) (collectively, Defendants), asserting counts for sex harassment, hostile work environment, and retaliation, under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000(e), *et seq*. and the Florida Civil Rights Act, Fla. Stat. Ann. § 760. R. 18, FAC.[1] Defendants move to dismiss

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

Plaintiffs' First Amended Complaint (FAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 30, Mot. Dismiss. Defendants also move to strike the class allegations of the FAC. R. 32, Mot. Strike. For the reasons stated below, Defendants' Motion to Dismiss and Motion to Strike are denied.

## Background

Plaintiffs are both female employees who previously worked or currently work at the same McDonald's corporate owned and operated McOpCo restaurant in Sanford, Florida (Sanford Restaurant). FAC ¶¶ 13, 70.[2] McDonald's Corporation and/or its subsidiaries, including but not limited to McDonald's USA and McDonald's of Florida, own and operate over 650 non-franchised restaurants in the United States, and directly employ some 40,000 restaurant-level employees at its corporate owned and operated "McOpCo" restaurants. *Id.* ¶ 6; McDonald's Corp. 10-K, https://corporate.mcdonalds.com/content/dam/gwscorp/nfl/investor-relations-content/annual-reports/2019%20Annual%20Report.pdf, at 3, 31, 73 (last visited 6/29/2021). The largest concentration of corporate owned and operated McOpCo restaurants is in Florida, where Defendants own and operate over 100 restaurants and employ over 6,000 workers. FAC ¶¶ 8, 24. McDonald's of Florida is a wholly-owned subsidiary of McDonald's USA, which is a wholly-owned subsidiary of McDonald's Corporation. *Id.* ¶¶ 16–17.

Defendants develop common tools and procedures—relating to hiring, orientation, training, and maximizing employee performance—at their Illinois

---

[2]The Court accepts as true all the well-pleaded facts in the FAC and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

headquarters to be used at their corporate owned and operated McOpCo restaurants throughout the country, including in Florida. FAC ¶ 26. Defendants also develop and set common policies at their Illinois headquarters with respect to training about and prevention of sexual harassment in Defendants' corporate owned and operated McOpCo restaurants, and with respect to reporting and investigating complaints of sexual harassment in McOpCo restaurants. *Id.* ¶ 27. Employees at Defendants' Chicago headquarters are responsible for McOpCo restaurants from a human resources (HR) perspective, including ensuring that all HR practices, principles, and procedures are followed and applied effectively. *Id.* ¶ 29. Regional HR Consultants, who provide HR direction in the field to restaurant managers and the Operations Consultants who supervise multiple stores, themselves partner with the Corporate Legal Department in Chicago. *Id.* Employment practices such as hiring and candidate screening, employee orientation, training, benefits, and management structures are developed and set by employees at Chicago headquarters, and mandated throughout corporate owned and operated McOpCo restaurants, including those in Florida. *Id.* ¶ 30. Defendants control the McOpCo restaurants by conducting regular audits to ensure compliance with company employee practices. *Id.* ¶ 31. Defendants use a reporting chain at McOpCo restaurants that goes all the way up to senior and management employees at Chicago headquarters. *Id.*

Plaintiffs allege that all Defendants operated the corporate owned and operated McOpCo stores in Florida during the relevant period and jointly employed all workers there, including Plaintiffs, class members, and managers, as well as

higher-level supervisors and HR representatives with authority over multiple stores in Florida. FAC ¶ 32. Plaintiffs allege that all Defendants are jointly liable for their failure to prevent and remediate the acts of sexual harassment, retaliation, discrimination, and civil rights violations complained of in the FAC. *Id.* ¶ 33.

Fairley currently works[3] at the Sanford Restaurant, and has worked there since approximately September 2016. FAC ¶¶ 13, 34. Two male co-workers, Brian Newton (Newton) and Matthew Capshaw (Capshaw) verbally and physically harassed her over the entire time period they worked there, asking inappropriate sexual questions, rubbing her groin, and "dry humping" her. *Id.* ¶¶ 34–47. The physical sexual harassment was frequently witnessed by other co-workers and by a shift manager, Mary (Shift Manager Mary), who did not report the sexual harassment or take any steps to stop it. *Id.* Fairley also complained about the harassment to managers, including to additional shift managers, and to General Manager Pedro Jimenez (GM Jimenez). *Id.* ¶¶ 42–43, 45–49. Several shift managers talked to Newton and Capshaw about their conduct but initially did not take steps to prevent or stop future harassment, such as disciplining Newton or Capshaw or reporting them to managers about the restaurant level, so the harassment continued. *Id.* ¶¶ 43–49.

Eventually GM Jimenez asked Fairley to write a statement about the harassment she experienced, after which Operations Consultant Collins (OC Collins), who is responsible for supervising a group of McOpCo restaurants, came to the Sanford Restaurant and spoke to Fairley about the harassment she experienced. FAC

---

[3]Fairley worked at the Sanford Restaurant at the time of the filing of the FAC and nothing before the Court suggests that Fairley no longer works at the Sanford restaurant.

¶¶ 50–51. Capshaw confessed to the harassment and was terminated. *Id.* ¶ 52. No manager, including GM Jimenez, OC Collins, or Jessica Goodwin, the HR Representative with responsibility over multiple South Florida restaurants (HR Rep. Goodwin), undertook any meaningful investigation concerning Newton. *Id.* ¶ 53. OC Collins asked Newton for a statement, after which, OC Collins and HR Rep. Goodwin found that there was "not significant evidence to support the allegation" of harassment, despite Fairley's statement, video evidence, and other workers who witnesses harassment. *Id.* ¶ 54. Newton was not disciplined for his harassment of Fairley, but was later transferred to another store for unrelated reasons. *Id.* 55. Even after transfer and termination, respectively, Newton and Capshaw continued visiting the Sanford Restaurant where they continued to confront Fairley. *Id.* ¶¶ 56–57. Several other female employees at the Sanford Restaurant reported sexual harassment at the hands of Newton, some of whom reported the harassment to managers, including GM Jimenez, but no action was taken. *Id.* ¶¶ 94–101. After reporting the harassment to her managers, Fairley's hours were reduced, which she attributes to the harassment she reported. *Id.* ¶ 59. Because Newton still frequented the Sanford Restaurant, Fairley requested a transfer, but OC Collins offered only to transfer her to Newton's new store and refused to transfer her to any other restaurant. *Id.* ¶¶ 56–57, 61–67. Fairley attempted to report the harassment via a phone number posted in the Sanford Restaurant's break room, but when she was transferred to an HR representative's extension, nobody answered, nor was her message returned. *Id.* ¶ 63.

5

Similarly, Reddick worked at the Sanford Restaurant from October 28, 2015 to September 9, 2018, and for most of her time working there, was subjected to and witnessed daily sexually verbal and physical harassment by a co-worker, Marquis Frazier (Frazier). FAC ¶¶ 70, 73–79. Reddick also reported the harassment by Frazier to management, including Manager Debbie Turner, but Frazier was not disciplined and the harassment continued, which caused Reddick anxiety and distress and caused her to leave early when Frazier was scheduled to work so she could avoid him. *Id.* ¶¶ 77, 79–81. The harassment continued until approximately July 2018, when Frazier stopped working in the Sanford Restaurant of his own accord. *Id.* ¶ 83. Reddick also experienced sexual harassment from customers, which she reported to General Manager Jackie Alexander, who did not take any action. *Id.* ¶¶ 85–86. On August 17, 2018, Reddick was sent home by OC Collins for being "confrontational," which Reddick denies. *Id.* ¶ 88. Reddick was terminated on September 9, 2018, which she alleges was due to her opposition to and reporting of Frazier's harassment. *Id.* ¶¶ 90–91.

McDonald's workers throughout Florida have reported that they were sexually harassed and that McDonald's failed to prevent or remediate the harassment. FAC ¶¶ 110–123. Plaintiffs allege that managers and other supervisors to whom harassment is reported (as instructed by McDonald's policies)—including operations consultants, HR representatives, and others responsible for overseeing multiple McDonald's restaurants, have not been properly trained in how to investigate and remediate sexual harassment. *Id.* ¶¶ 41–43, 45, 48, 77, 86, 107–108. Plaintiffs allege

that they and other women were subjected to a sexually hostile work environment at Defendants' McOpCo stores in Florida because Defendants do not have effective policies and practices to prevent and remediate sexual harassment. *Id.* ¶¶ 125–152.

On May 10 and May 21, 2019, Fairley and Reddick respectively filed charges of sex discrimination on behalf of themselves and all others similarly situated with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission on Human Relations (Florida Commission). FAC ¶¶ 166–167; FAC, Exhs. A, C (collectively EEOC Charges).

Fairley and Reddick have filed a class-action suit against Defendants, asserting counts for sex harassment, hostile work environment, and retaliation, arising under Title VII and the Florida Civil Rights Act. FAC. Plaintiffs propose a class (the Class) consisting of: all female employees who work or worked in a position below that of General Manager at Defendants' corporate owned and operated McOpCo McDonald's restaurants in Florida, for a time period from four years before the filing of this lawsuit to the time of trial (the Class Period). *Id.* ¶ 155. They also propose a subclass (the Subclass) consisting of: all female employees who work or worked in a position below that of General Manager at any of Defendants' corporate owned and operated McOpCo McDonald's restaurants in Florida during the Class Period who, after complaining of or reporting sexual harassment, were subject to adverse employment action, including but not limited to, termination, discipline, reduction in hours, assignment to inferior shifts, or transfer to an inferior restaurant location. *Id.* ¶ 156.

Before the Court are (1) Defendants' Motion to Dismiss Plaintiffs' FAC under Rule 12(b)(6), Mot. Dismiss, and (2) Defendants' Motion to Strike Plaintiffs' class allegations under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D).

## Standards of Review

### I.      Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### II.      Motion to Strike

Federal Rule of Civil Procedure 23(c)(1)(A) directs that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV.

P. 23(c)(1)(A). Although "[m]ost often it will not be 'practicable' for the court to do that at the pleading stage, . . . sometimes the complaint will make it clear that class certification is inappropriate." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [Rule 23(c)(1)(A)'s] language, a court may deny class certification even before the plaintiff files a motion requesting certification."). In those situations, a court may determine that class certification is inappropriate before the parties conduct class discovery. *See Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013). A court should only strike class allegations in "exceptional case[s] where it is clear from the complaint that circumstances warrant a motion to strike class allegations to conserve court and party resources and where the pleadings make clear that the suit cannot satisfy Rule 23." *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (internal citations and quotations omitted).

If the plaintiff's class allegations are facially and inherently deficient, for example, "a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action." *See Bohn*, 2013 WL 3975126, at *5 (quoting *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012)); *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014); *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006). If, on the other hand, the dispute concerning class certification is factual in nature and

9

"discovery is needed to determine whether a class should be certified," a motion to strike the class allegations at the pleading stage is premature. *Wright*, 2010 WL 4962838, at *1; *see also Santiago v. RadioShack Corp.*, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012) (similar). Although the decision to strike material "is within the discretion of the court," *Cannata v. Forest Pres. Dist. of Du Page Cty.*, 2006 WL 2927604, at *6 (N.D. Ill. Oct. 11, 2006), "the general rule is that motions to strike are disfavored," *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (involving motion to strike affirmative defenses); *Cannata*, 2006 WL 2927604, at *6 (applying general rule to motion to strike class allegations). This is, in part, "because plaintiffs generally have the burden of demonstrating that they meet the requirements of Rule 23. Class action defendants, however, are often in control of the information plaintiffs need to meet that burden. Thus, discovery is often appropriate, even necessary." *Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (internal citations and quotations omitted); *see also De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) (denying motion to strike as premature and noting that "the Seventh Circuit has warned that 'a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class.'") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) (overruled on other grounds by *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015))).

To obtain class certification under Rule 23, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

representation—and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(b)(2) allows class certification where the "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Rule 23(b)(3) allows class certification in class actions seeking damages where "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently resolving the dispute in question." FED. R. CIV. P. 23(b)(3). "Failure to meet any of [Rule 23's] requirements precludes class certification." *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)).

## Analysis

### I. Motion to Dismiss

At the outset, the Court must address an issue raised in Defendants' Reply about what the Court may properly consider when analyzing Defendants' Motion to Dismiss. R. 41, MTD Reply. Plaintiffs attach several exhibits to their Response opposing dismissal: Defendants' Statements of Position with Respect to Plaintiffs' EEOC Charge and exhibits thereto (R. 39, MTD Resp., Exh. 1, Defs.' Fairley EEOC Statement; MTD Resp. Exh. 2, Defs.' Reddick EEOC Statement) and Fairley's paystub (MTD Resp., Exh. 3, Paystub). Relying only on out-of-Circuit cases,

Defendants argue that, because these documents were neither specifically referenced in the FAC nor attached as exhibits thereto, the Court should not consider them when deciding the Motion to Dismiss. MTD Reply at 8 n.8. The Court disagrees.

It is well settled that the Court can consider facts contained in a plaintiff's opposition brief or exhibits thereto, so long as they are consistent with the allegations in the complaint. MTD Resp. at 2 (citing *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015)); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (a plaintiff opposing a motion to dismiss may elaborate on factual allegations in a complaint so long as those elaborations are consistent with the pleadings, and a plaintiff may "submit materials outside the pleadings to illustrate the facts the party expects to be able to prove") (internal citations omitted). The issue, therefore, is whether the documents "are consistent with the pleadings." *Gondeck v. A Clear Title & Escrow Exch., LLC*, 2012 WL 5200091, at *1 (N.D. Ill. Oct. 22, 2012) (citing *Geinosky*, 675 F.3d at 745 n.1).

Contrary to Defendants' argument, the exhibits attached to the Response elaborate on the FAC's factual allegations by specifying the entities that controlled Plaintiffs' working conditions or employed the supervisor who did so, which sometimes seem at odds with one another. *See, e.g.*, MTD Resp. at 8 n.6 (citing Defs.' Reddick EEOC Statement, Exh. F) (disciplinary write-ups about Reddick that include a statement at the bottom that the material contained in the report is "business confidential information of McDonald's, USA, LLC."); Defs.' Fairley EEOC Statement at 1 n.1; Defs.' Reddick EEOC Statement at 1 n.1 (indicating that "the appropriate

entity with respect to this Charge is McDonald's USA, LLC (and not McDonald's Corporation)"); Defs.' Fairley EEOC Statement, Exh. J (memorandum refusing to impose discipline on one of Fairley's harassers is signed by a general manager of "McDonald's Corporation.")). The FAC states that "Defendants are the corporate entities that comprise Plaintiffs' employer." FAC ¶ 1. The Court cannot say that the exhibits elaborating on which Defendant may have controlled which employment function are not "consistent with the complaint." *Geinosky*, 675 F.3d at 745 n.1. The Court, therefore, may consider the exhibits to Plaintiffs' Response when deciding Defendants' Motion to Dismiss. The Court having dispensed with the preliminary issue now turns to the merits of the Motion to Dismiss.

Defendants advance five bases for dismissal. First, Plaintiffs' FAC violates Rule 8 of the Federal Rule of Civil Procedure because Plaintiffs group all three Defendants together without attributing the alleged wrongful conduct to any particular Defendant. R. 31, Memo. Dismiss at 5–6 (citing *Bank of Amer. v. Knight,* 725 F.3d 815 (7th Cir. 2013)). Second, Plaintiffs' contention that Defendants are a "single enterprise" or "joint employers" is meritless, and no Defendant is liable for the conduct of Plaintiffs' co-workers. *Id.* at 6–10. Third, Plaintiffs failed to exhaust their administrative remedies. *Id.* at 11–13. Fourth, Reddick's claims are time-barred and she fails to state a claim for retaliation. *Id.* at 13–15. Finally, Plaintiffs' Florida Civil Rights Act claims fail for the same reasons. *Id.* at 15. The Court addresses each argument in turn.

### A.    Group Pleading

Defendants maintain that the FAC is defective because Plaintiffs have grouped all the Defendants together without attributing the alleged wrongful conduct to any particular defendant. Memo. Dismiss at 5–6. As noted by Plaintiffs, to the extent that Defendants' argument is that group pleading violates Rule 8 of the Federal Rules of Civil Procedure, that contention is incorrect. MTD Resp. at 4. "Group pleading does not violate Rule 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, 2019 WL 5963633, at *15 (N.D. Ill. Nov. 13, 2019) (internal citations and quotations omitted). The issue, therefore, is whether the FAC provides sufficient details to put Defendants on notice of Plaintiffs' claims.

The Court agrees with Plaintiffs that the FAC provides Defendants sufficient notice of the claims brought against them. First, it alleges that Defendants are responsible for the hostile work environment at McOpCo restaurants because of inadequate policies and training relating to sexual harassment. MTD Resp. at 5 (citing FAC ¶¶ 27, 42–43, 114, 126, 134, 137). Second, the FAC identifies specific instances of sexual harassment which were reported to specifically named managers and supervisors, who did not adequately address the alleged harassment. *Id.* at 5–6 (citing FAC ¶¶ 42–43, 45, 48–49, 53–54, 59, 63, 66, 77, 86, 88, 91, 97–98, 101, 109, 111–13, 143–50). Contrary to Defendants' argument, Plaintiffs *need not* include specific facts as to any of the three corporate entities, since the facts alleged put "each defendant on fair notice of the claims." *Sanders v. JGWPT Holdings, Inc.*, 2016 WL

14

4009941, at *10 (N.D. Ill. July 26, 2016) (refusing to dismiss based on "group pleading" where plaintiff referred to multiple related corporate entities together as "Defendants" throughout the complaint). Plaintiffs' allegations are sufficient under Rule 8(a).

## B.    Single Enterprise/Joint Employer

Next, Defendants argue that while Plaintiffs have sued McDonald's Corporation, McDonald's USA, and McDonald's of Florida, Plaintiffs' Title VII claims must be pursued against the entity with which they have an "employment relationship." Memo. Dismiss at 6 (citing *Shah v. Littelfuse Inc.*, 2013 WL 1828926, at *6 (N.D. Ill. Apr. 29, 2013)). Defendants contend that the FAC consists of sparse, conclusory allegations insufficient to allege an employment relationship with each Defendant, and even if they were adequate, Plaintiffs fail to allege that Defendants had knowledge of the alleged harassment or failed to take appropriate corrective measures. Memo. Dismiss at 6–7, 10–11 (citing *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) (when a hostile work environment claim is based on harassment by coworkers, a plaintiff must allege that the employer was "negligent either in discovering or remedying the harassment")).

The Court agrees with Defendants that Title VII claims can only be brought against an entity with which a plaintiff has "an employment relationship," but it is also true that, "[f]or purposes of Title VII, an employee can have more than one employer[; a]n entity can be an indirect employer or a joint employer or have some other complex combined relationship with an employee." *Johnson v. Advoc. Health &*

*Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018) (internal citations omitted). When multiple entities may be involved in the employment relationship, the Seventh Circuit has instructed courts to apply the factors articulated in *Knight v. United Farm Bureau Mut. Ins. Co.*:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Johnson*, 892 F.3d at 905 (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)); *see also Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago,* 2021 WL 1056847, at *4 (N.D. Ill. Mar. 18, 2021) (applying *Knight* factors to a motion to dismiss).[4] The ability to supervise and control employees is the most important of these factors, and of the control factors, the ability to hire and fire is the most significant. *Bronson*, 2021 WL 1056847, at *4 (citing *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702–703 (7th Cir. 2015)).

Here, Plaintiffs allege that they and the class members are or were "employees of restaurants owned and operated in Florida by the Chicago-based McDonald's corporation [and] Defendants are the corporate entities that comprise Plaintiffs' employer." FAC ¶ 1. McDonald's Restaurants of Florida, Inc. is a wholly-owned

---

[4]The Court agrees with Defendants that to the extent Plaintiffs' arguments support a "single integrated enterprise" theory of liability against all Defendants, they are not well-taken, as the Seventh Circuit has rejected such a theory as a basis for determining employer status under Title VII. Memo. Dismiss at 7 (citing *Tamoyo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008)). Plaintiffs do not dispute this in their Response. *See generally* MTD Resp.

subsidiary of McDonald's USA, *id.* ¶ 17, which is a wholly-owned subsidiary of McDonald's Corporation, *id.* ¶ 16. Plaintiffs allege that Defendants are a "single integrated enterprise" and that they "jointly employed all workers at the McOpCo restaurants in Florida." *Id.* ¶¶ 22, 25, 32.

The Court finds that, based on the information available to Plaintiffs, Plaintiffs have adequately pled an employment relationship with each Defendant. Admittedly, courts in this District have held that failure to name or distinguish the plaintiffs' direct employer, *when such information is available to them*, is grounds for dismissal. *See Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1129 (N.D. Ill. 2017) ("Ivery fails to allege even the most basic facts concerning her employment as an [assistant manager]; namely, who hired her, paid her, or directly supervised her work. By omitting such information, the amended complaint fails to identify which of the defendant entities was Ivery's primary, direct employer. That deficiency alone is enough to sink her claim."); *see Boyce v. SSP Amer. MDW, LLC*, 2019 WL 3554153, at *4 (N.D. Ill. Jul. 31, 2019) (dismissing complaint against parent corporation where plaintiff failed to allege enough detail about parent's "role or actions to establish that it controlled his working conditions," instead referring generally to "Defendants").

However, when such information is not available to a plaintiff, dismissal may be improper. For example, a court in this District recently found that the plaintiff's allegations that a defendant was her "employer" and that the "defendants jointly and collectively maintained control, oversight, and direction over Plaintiff and other similarly situated [employees], including with respect to the timekeeping, payroll,

and other employment practices that applied to them," was sufficient to allege an employment relationship, despite the defendant's arguments that the allegations were "conclusory." *Piazza v. New Albertsons, LP*, 2021 WL 365771, at *3 (N.D. Ill. Feb. 3, 2021). *Piazza* distinguished *Ivery*, because, unlike in *Ivery*, based on publicly available information, it was not possible for the plaintiff to allege exactly which defendant owned which stores that the plaintiff worked in. *Id.* (citing *Ivery*, 280 F. Supp. 3d at 1129); *see also* MTD Resp. at 9 (citing *Nelis v. Gepa Hotel Operator Indianapolis LLC*, 340 F. Supp. 3d 751, 753 (S.D. Ind. 2018)) (denying a motion to dismiss where plaintiff's complaint included "three different defendants without identifying which one was [plaintiff's] employer" because publicly available information and information available to plaintiff did not indicate what entity owned the hotel where plaintiff worked and the moving defendant refused to answer whether it owned the hotel in a reply brief)).

Like the plaintiff in *Piazza*, Plaintiffs here assert that, based on the information available to them, they know that "*some* McDonald's entity must have employed them; Plaintiffs simply have no idea which one." MTD Resp. at 6–7; *see Piazza*, 2021 WL 365771, at *4 ("Piazza asserts that 'given the information that is publicly available' it is not possible for 'Plaintiff to allege exactly which Defendant owns which stores that Plaintiff worked in.'"). As discussed above, Plaintiffs point out the conflicting or unclear information available to them about which Defendant employed Plaintiffs and their supervisors. MTD Resp. at 8 (citing, among other exhibits, Defs.' Fairley EEOC Statement at 1 n.1; Defs.' Reddick EEOC Statement

n.1 (stating McDonald's USA was the "appropriate entity to respond to the charge");
Defs.' Reddick EEOC Statement, Exh. F (disciplinary write-ups including McDonald's
USA information); *id.*, Exh. D (poster saying "McDonald's USA does not tolerate
unlawful discrimination or harassment"); *id.*, Exh. A (policy manual addressed to
"McOpCo Employees"); Defs.' Fairley EEOC Statement, Exh. J (memorandum
declining to discipline an alleged harasser signed by a general manager of McDonald's
Corporation). and Fairley's paystub (MTD Resp., Exh. 3, Paystub)).[5] Plaintiffs argue
and allege that Defendants qualified as a joint employers because they "jointly
controlled Plaintiffs' working conditions, including with respect to training, hiring,
discipline, transfer, and firing, and . . . that all three Defendants developed common
procedures for use in their Florida [McOpCo] restaurants, including with respect to
hiring, orientation, training, and maximizing employee performance." MTD Resp. at
8–9; *see Piazza*, 2021 WL 365771, at \*4 (holding that similar allegations are sufficient
to allege a joint employer relationship at the motion to dismiss stage); *see also
Anderson v. Twin Restaurant Oakbrook, LLC*, 2021 WL 2986289, at \*10 (N.D. Ill.

---

[5]Plaintiffs also cited to Defendants' 2019 10-K in their FAC and Response in support of their
allegation that they do not and cannot know which entity was their employer. FAC ¶ 7 n.11;
MTD Resp. at 3. However, the Court agrees with Defendants that a plain reading of the text
of the 10-K indicates that employees like Plaintiffs who work at McOpCo restaurants are
employed by "subsidiaries" of McDonald's Corporation. *See* MTD Reply at 8–9, 9 n.9 (citing
McDonald's Corp. 10-K,
https://corporate.mcdonalds.com/content/dam/gwscorp/nfl/investorrelations-content/annual-
reports/2019%20Annual%20Report.pdf, at 3, 33)). The 10-K identifies McDonald's USA, LLC
as a domestic subsidiary of the Company, which has its own unnamed wholly-owned
subsidiaries, many of which operate one or more McDonald's restaurants within the United
States and the District of Columbia. *Id.* at 73. Read in the light most favorable to Plaintiffs,
the 10-K indicates that Plaintiffs were employed by a subsidiary of McDonald's Corporation,
which could mean McDonald's USA *or* McDonald's of Florida (or another unnamed
subsidiary). And the 10-K is *not* clear about non-restaurant employees, which could include
HR Representatives. *See id.* at 31.

July 15, 2021) (finding that plaintiff had plausibly alleged a joint employer relationship where plaintiff asserted that defendant was "corporate," defendant's employee was a "key corporate player," and corporate must approve all new hires). Based on the information available to them Plaintiffs have adequately pled a joint employer relationship with each Defendant.

The Court also agrees with Plaintiffs that, at this stage, they have sufficiently pled that each Defendant had knowledge of the alleged harassment and failed to take appropriate corrective measures, including by implementing and keeping inadequate sexual harassment policies and practices in the face of hundreds of complaints, FAC ¶ 2; informing workers to report sex harassment to certain managers who Defendants fail to properly train on how to investigate, discipline, or remediate sex harassment, *id.* ¶¶139–148; and failing to monitor serial harassers and but rather moving them to other stores, and pressuring managers to continue staffing harassers to meet operational needs, *id.* ¶¶ 9–9, 121, 148. True, to the extent a plaintiff alleges a joint-employer relationship, the negligence of one employer "does not automatically expose an[other] to liability for actions taken by its coemployer." Memo. Dismiss at 10–11 (quoting *Shah*, 2013 WL 1828926, at *6 (N.D. Ill. Apr. 29, 2013). But based on the information available to Plaintiffs—and in the possession of Defendants—Plaintiffs have adequately pled an employment relationship with each Defendant and that each Defendant had knowledge of the alleged harassment or failed to take appropriate corrective measures. It would be premature to dismiss Plaintiffs' claims before discovery. *See Piazza*, 2021 WL 365771, at *4; *Nelis*, 340 F. Supp. 3d at 753; *see also*

20

*Anderson*, 2021 WL 2986289, at *10 (noting that the joint-employer inquiry is fact-intensive and generally unsuitable for resolution on the pleadings).

### C. Failure to Exhaust Administrative Remedies

Next, Defendants argue that Plaintiffs have failed to exhaust their administrative remedies.[6] Defendants seek dismissal of part of Plaintiffs' sex discrimination claim, arguing that the FAC allegations that Defendants' "uniform nationwide policies, practices, and procedures," promulgated an environment that allowed for sexual harassment against women and a hostile work environment at Defendants' stores, exceed the scope of Plaintiffs' EEOC charges. Memo. Dismiss at 11–13 (citing FAC ¶ 168).

The "scope of the charge" doctrine provides that a plaintiff generally cannot bring in federal court claims that were not previously presented to the EEOC. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Although the factual basis for a discrimination claim alleged in a complaint must have been presented in an EEOC charge, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Instead, the question is whether the federal claims are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations" or, put another way, whether "there is a

---

[6]"Administrative exhaustion is an affirmative defense that ordinarily need not be overcome at the pleading stage, unless the allegations in the complaint 'unambiguously establish all the elements of the defense.'" *Clapper v. United Airlines, Inc.*, 2021 WL 260232, at *2 (N.D. Ill. Jan. 26, 2021) (quoting *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)).

reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (internal quotation marks omitted). "Simple or general allegations of discrimination in an EEOC charge are not a sufficient predicate for bringing any discrimination theory in federal court." *Askew v. Waukegan Pub. Sch. Dist. 60*, 767 F. Supp. 2d 923, 928 (N.D. Ill. 2011) (citing *Cheek*, 31 F.3d at 501). "The EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 501. Courts should apply a lenient standard when evaluating whether federal claims were also raised in an EEOC charge. *Rush*, 966 F.2d at 1111.

The Court agrees with Plaintiffs that they exhausted their administrative requirements: their EEOC charges contained sufficient allegations that Defendants engaged in a pattern and/or practice of maintaining a hostile work environment and retaliated against those who complained about sex discrimination and harassment. MTD Resp. at 11. Two paragraphs contained in both Plaintiffs' EEOC charges work together to make it clear that their charges contained pattern and/or practice claims relating to sex discrimination and hostile work environment against Defendants, and not just the individual managers named in the charges:

> At all relevant times, McDonald's maintained a work environment pervaded with sexually explicit language and sexually harassing behavior, that was reported to and condoned by managers, including but not limited to [area managers, general managers, and shift managers]. Despite repeated notice of this unlawful conduct, McDonald's did nothing to address the situation. EEOC Charges ¶ 3.

22

Additionally, McDonald's was and is engaged in a pattern of discriminating against female employees, including by maintaining a hostile work environment at its stores, and retaliating against those who complain. This discrimination charge is filed on behalf of myself, and all others similarly situated. The charge is intended to be as broad as possible and exhaust the class administrative process for all class claims relating to female employees at McDonald's for both disparate treatment and disparate impact claims with respect to a hostile work environment, gender discrimination, retaliation, and other terms and conditions of employment that are subject to Title VII and Section 760.10, Florida Statutes. *Id.* ¶ 19.

True, as Defendants observe, these allegations do not specify that Defendants' "policy" caused the sex discrimination, hostile work environment, or harassment. Memo. Dismiss at 12–13. But as Plaintiffs point out, the allegations in the FAC do not *add* pattern or practice claims against new individuals, rather, they simply make it more explicit that the allegations—contained in the EEOC charges against Defendants—result from company-wide policies and practices concerning sexual harassment. MTD Resp. at 10 (quoting FAC ¶ 168 ("McDonald's violated Title VII when it subjected Plaintiffs and class members to severe or pervasive sexual harassment and sex-based harassment that altered Plaintiffs' and class members' working conditions and created a hostile working environment. McDonald's engaged in a company-wide and systemic policy, pattern, and or practice of such unlawful sex discrimination by tolerating, condoning, and allowing sexual harassment of its women workers.")); *see Copot v. Stewart Title Guar. Co.*, 2020 WL 1848204, at *4 (N.D. Ill. Apr. 13, 2020) (holding that general allegation that plaintiff experienced sex discrimination because he was "subjected to different terms and conditions of employment than female employees" fairly encompassed the specific allegations relating to workplace discrimination).

Moreover, Defendants' store-wide policies for addressing sex harassment are reasonably related, and could "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge," *Chaidez*, 937 F.3d at 1004, which allege a "pattern" of discrimination against female employees, including the maintenance of a hostile work environment at its stores and retaliation against those who complain, EEOC Charges ¶ 19. In fact, the EEOC's Compliance Manual instructs EEOC investigators, when investigating a charge alleging sexual harassment (a recognized form of sex discrimination) by a co-worker, to "note whether the employer had a policy or practice designed to prevent the occurrence of sexual harassment and what specific steps, if any, the employer had taken to implement such a policy or practice." EEOC, Compliance Manual (Vol. 2), §§ 615.4(a)(9), 615.2(a) https://www.eeoc.gov/laws/guidance/cm-615-harassment (last accessed 6/25/2021).

Defendants' argument that the EEOC charges implicate different individuals also fails. Paragraphs 3 and 19 of Plaintiffs' charges identify "McDonald's" (in the EEOC charge, defined as McDonald's Corporation and McDonald's USA, LLC) and "managers, including but not limited to" an area manager who supervised multiple stores, as the parties that maintained a hostile work environment. The "individuals" named in the EEOC charge and federal complaint need not be natural persons, but can be a corporation such as McDonald's. *See, e.g.*, *Chaidez*, 937 F.3d at 1005 (charge alleged discriminatory conduct by the Ford Motor Company such that discrimination claim against Ford could proceed); *Rush v. McDonald's Corp.*, 760 F. Supp. 1349, 1356 (S.D. Ind. 1991), aff'd, 966 F.2d 1104 (7th Cir. 1992) (allowing claims against

24

McDonald's Corp., plaintiff's employer, for racial discharge and denial of promotion to proceed where EEOC charge named McDonald's Corp. and described plaintiff's termination enacted by her supervisor).

Similarly, Defendants' argument that Plaintiffs' allegation about the Chicago-based managers who wrote the policy are not named in the charge is misplaced. The FAC does not include any counts against any individuals, and certainly no unknown Chicago individuals. *See* FAC ¶¶ 15–17. A federal complaint may include facts stemming from allegations in the charge that were not included in the charge, *see Cheek*, 31 F.3d at 500 (7th Cir. 1994), and the Court may consider allegations relating to individuals not named in the charge for purposes of evaluating claims brought against parties who *were* named in the charge, *see Askew*, 767 F. Supp. 2d at 930 (even though plaintiff's pattern-or-practice claim was barred for failure to exhaust, the Court did not strike the allegations relating to a policy of discrimination nor bar discovery into it).

The cases primarily relied on by Defendants in support of their argument that Plaintiffs' allegations relating to Defendants' policies and procedures must be dismissed for failure to administratively exhaust them are distinguishable. In *Askew*, the court rejected the plaintiff's policy-wide discrimination claim because the plaintiff's EEOC charge did not allege "an overarching policy of discrimination, identif[y] anybody (other than the claimant) who suffered discrimination, or reference[] anything but individual, discrete allegations of discrimination." 767 F. Supp. 2d at 929. Here, as discussed above, both Plaintiffs' EEOC charges alleged that

Defendants were "engaged in a *pattern*" of discrimination against "female employees . . . at [their] stores" and specified that the "discrimination charge [was] filed on behalf of [Plaintiffs], and all others similarly situated." EEOC Charges ¶ 19. True, the plaintiff's charge in *Askew* contained a sentence alleging that the defendant discriminated "against [him] and a class [of] Black employees." 767 F. Supp. 2d at 929 n.1. But the court found that the plaintiff had forfeited any argument that such a passage put the EEOC or the defendant on notice that the defendant had engaged in a pattern or practice of race discrimination. *Id.* Here, Plaintiffs argue that the language in their charges *did* put Defendants on notice of a pattern or policy of sex discrimination, and, reading the charge liberally, the Court finds that it is enough to put Defendants on notice of such a policy.

*Chaidez* similarly offers no support to Defendants' contention, as the allegations in *Chaidez* were even weaker than the allegations contained in the charge in *Askew*. In *Chaidez*, the court held that the complaint's claim of racial discrimination relating to a pre-test were "at best, incongruent with the allegations made in the charges (at worst, directly contradictory)." 937 F. 3d at 1006. In *Copot*, another case cited by Defendants, the court dismissed allegations that defendants "had a policy or practice that disproportionately impacted male employees" where the plaintiff's charged focused only on differential treatment of himself as an individual. 2020 WL 1848204, at *4. Here, Plaintiffs' FAC does not allege disparate impact claims, but rather only discrimination, hostile work environment, and retaliation claims. FAC at ¶¶ 165–180. Plaintiffs adequately put Defendants on notice through

their charges that Defendants had policies contributing to, and that they engaged in, a pattern of sexual harassment and hostile work environment.

### D. Statute of Limitations and Failure to State a Claim

Defendants also argue that Reddick's hostile work environment claim is time-barred and that she fails to state a claim for retaliation. Memo. Dismiss at 13–15. Neither party spends much time on these arguments. Reading the FAC in the light most favorable to Reddick, the Court finds that Reddick's hostile work environment and retaliation claims both survive.

The Court first addresses the statute of limitations. "Under Title VII, a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice." *Doe 1 v. Chicago*, 335 F. Supp. 3d 1098, 1101 (N.D. Ill. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)). In the case of a hostile work environment claim, that means that at least one "hostile act" giving rise to the claim must occur within 300 days of the filing of the EEOC charge. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 724 (7th Cir. 2004). A hostile work environment claim is barred by the statute of limitations only if the plaintiff affirmatively pleads dates that show that her claim is outside the limitations period. *See Davis v. Palos Health*, 2019 WL 214916, at *3 (N.D. Ill. Jan. 16, 2019).

Reddick filed her EEOC charge on May 21, 2019. FAC ¶ 167. So, as long as one incident of sexual harassment occurred on or after July 25, 2018, her hostile work environment claim is timely. Reddick alleges that, starting in April 2018, her co-worker, Frazier, made unwelcome sexual comments to her on a daily basis and

subjected her to "frequent physical assaults." FAC ¶¶ 73, 75. She alleges one specific incident of sexual harassment in or about May 2018 and another one about a week later. *Id.* ¶¶ 76, 78. The FAC goes on to state that Frazier's "physical and verbal harassment continued unabated," stopped for a short period after Reddick confided in her brother, but "soon continued anew." *Id.* ¶¶ 79, 82. Reddick alleges that Frazier's "harassment continued until approximately July 2018, when he stopped working at the [Sanford] restaurant." *Id.* ¶ 82.

Citing only one case in support, Defendants argue that Reddick's claims are untimely because (1) by alleging that the "harassment continued *until* approximately July 2018," it is not conceivable that Frazier worked with or harassed Reddick on or after July 25, 2018, and (2) the allegations after May 2018 are too conclusory to make her otherwise time-barred claims timely. Memo. Dismiss at 14; MTD Reply at 13 (citing *Toth-Gray v. Lamp Liter, Inc.*, 2019 WL 3555179, at *5 (N.D. Ill. July 31, 2019)). The Court finds *Toth-Gray* distinguishable.

In *Toth-Gray*, the court held that the publication of two Facebook posts in 2016, without any allegations of other continuing conduct, was insufficient to allege a pattern of conduct that continued past the 2016 dates of publication, much less into 2019. 2019 WL 3555179, at *5. The Court agrees with Reddick that her allegations about the pervasive harassment she endured "daily," including allegations of several specific instances in approximately May 2018, unlike the allegations in *Toth-Gray*, are not conclusory and are sufficient, for purposes of a motion to dismiss, to support a continuing violation until Frazier left his employment with Defendants. MTD Resp.

28

at 13–14. It is a closer question whether it is plausible that Frazier's sexual harassment continued on or after July 25, 2018 where Reddick alleged that he continued harassing her "until approximately July 2018." FAC ¶ 82. Defendants correctly point out that "until" *generally* means "up to the point in time or event mentioned." MTD Reply at 13. But the Court cannot say, based on the allegations, that a date *before* July 25, 2018 is the "latest possible date the claim[] accrued." *See Cameron v. City of Chicago*, 2017 WL 3421474, at *2 n.4 (N.D. Ill. Aug. 9, 2017). As such, the Court cannot say, at the motion to dismiss stage, that Reddick's hostile work environment claim is barred by the statute of limitations. Perhaps the evidence will eventually support Defendants' contention. That motion, however, is left for another day.

Moving on to Reddick's retaliation claim, Defendants argue that Reddick has not plausibly plead a connection between her complaints of harassment and her termination. Memo. Dismiss at 14–15. To state a claim for retaliation, a plaintiff must allege: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. *Conner v. Bd. Of Trustees for Univ. of Ill.*, 2019 WL 5179625, at *5 (N.D. Ill. Oct. 15, 2019). Like their statute of limitations argument, Defendants rely on only one case in support of their argument that Reddick fails to state a claim for retaliation. Memo. Dismiss at 14–15 (citing *Straub v. Jewel Food Stores, Inc.*, 2018 WL 4512060, at *5 (N.D. Ill. Sept. 20, 2018)). Again, the Court agrees with Reddick that her claim survives, though it is a close call. Reddick reported sexual harassment by Frazier and by a customer to Manager

Turner and GM Alexander respectively. FAC ¶¶ 77, 86. Reddick's complaint to Manager Turner was made in approximately May 2018, several months before she was terminated in September 2018. *Id.* ¶ 77. Defendants argue that this temporal delay contributes to breaking the causal connection between Reddick's complaint and her termination; however, the case they rely on, *Straub*, held that a nearly six-*year* delay between the filing of an EEOC complaint and adverse employment actions was too long to support a causal connection.[7] 2018 WL 4512060, at *5–6. Three-to-four months between a complaint and termination is not sufficiently long to make it implausible that Reddick was terminated in retaliation for complaining about Frazier's harassment.

Additionally, Defendants argue that Reddick's EEOC charge makes it clear that she was terminated not for complaining about sexual harassment, but for being confrontational after being found away from the drive-thru window. Memo. Dismiss at 15 (citing Reddick EEOC Charge ¶ 14). But the FAC alleges that "other employees, especially long-term employees such as Ms. Reddick, were not terminated for being 'confrontational.' On information and belief, Ms. Reddick was terminated in retaliation for her opposition to and reporting of [Frazier's] sexual harassment." FAC ¶ 91. Combined with Reddick's allegations about her reports of sexual harassment, the Court finds that, for now, this is enough to sufficiently plead a causal connection

---

[7]The court also found that the plaintiff's retaliation claim failed because it was supported only by "a conclusory statement with no factual support," and the limited detail provided suggested that the plaintiff was fired for reasons other than his EEOC charge. *Straub*, 2018 WL 4512060, at *5.

between her complaints of harassment and her termination. *See Conner*, 2019 WL 5179625, at *8.

### E. Florida Civil Rights Act

The parties generally agree that Plaintiffs' Florida Civil Rights Act claims rise or fall with their Title VII claims. *See* Memo. Dismiss at 15; MTD Resp. at 15. Because the Court has held that Plaintiffs have adequately stated a claim under Title VII, it also finds that they have sufficient pled claims under the Florida Civil Rights Act.[8]

### II.    Motion to Strike

Defendants also move to strike the FAC's class allegations under Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D). Mot. Strike. Defendants advance five bases to strike the class allegations. First, no putative class members' claims present a common question that can satisfy Rule 23(a). Second, for similar reasons, Plaintiffs cannot demonstrate typicality. Third, conflicts among the class make it impossible to establish adequacy.  Fourth, individual issues far outnumber any purported common questions, and thus, it is not possible for Plaintiffs to establish predominance or superiority under Rule 23(b)(3). Fifth, Plaintiffs' class claims exceed the scope of the charges filed with the EEOC. R. 33, Memo. Strike at 1–2. The Court addresses, where appropriate, each argument in turn.

---

[8]Because the Court has held that Plaintiffs have sufficiently pled an employment relationship with each Defendant under the joint employer theory, it need not address Plaintiffs' argument that their Florida Civil Rights Act claims are also valid under the single integrated enterprise test. MTD Resp. at 15 (citing *Keene v. Teco Energy Corp.*, 2000 WL 230243, at *2 (M.D. Fla. Mar. 1, 2000)).

## A. Commonality

Rule 23(a)(2) requires a plaintiff to show that there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Supreme Court has explained that commonality requires "not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). For purposes of the commonality requirement, "[e]ven a single [common] question will do." *Id.* at 359 (alterations in original) (internal quotation marks omitted).

Defendants assert that Plaintiffs will be unable to meet Rule 23(a)'s commonality requirement because their hostile work environment claims and retaliation claims present no common questions or law or fact, and their allegations about Defendants' policies and procedures fail to create commonality. Memo. Strike at 4–10; Strike Reply at 5–12. Plaintiffs retort that they satisfy the commonality requirement because they allege "a company-wide practice of sex discrimination and intend to produce evidence of a pattern or practice of discrimination." Strike Resp. at 9–10 (internal citations omitted). The Court finds that, at this stage, Plaintiffs have done enough to support commonality.

Importantly, as Plaintiffs point out, almost every case Defendants cite in support of their Motion to Strike was decided *after* discovery on a motion for class certification, rather than at the pleadings stage on a motion to strike, and therefore had the benefit of discovery. Strike Resp. at 12. In fact, Defendants concede that they

rely on only one in-District case that granted (and affirmed) striking employment discrimination claims at the pleading stage. Memo. Strike at 8, Strike Reply at 3 (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)). *Patterson* is distinguishable, however. The Seventh Circuit first noted that apart from the plaintiff's "assertion that he was filing suit on behalf of all minority workers at [his employer], plaintiff's complaint was not framed in class action terms at all. . . . [In fact,] he nowhere substantiated that claim with any factual allegations of classwide discrimination. The facts alleged in plaintiff's complaint relate solely to plaintiff's personal grievances." *Patterson*, 631 F.2d at 480. As to commonality specifically, the Seventh Circuit agreed with the district court that even if the plaintiff had specified grievances of the other prospective class members, "[t]he issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy, including relative seniority, qualifications, availability for work and desire to perform the job. Each disciplinary action would present a different set of facts for each employee." *Id.* at 481. Unlike the plaintiff and his individual racial discrimination failure to assign/promote claims in *Patterson*, in the instant case Plaintiffs not only allege sexual harassment, including hostile work environments and retaliation, experienced by female workers at multiple Florida McOpCo restaurants, *see* FAC ¶¶ 108–121, but Plaintiffs also allege that such sexual harassment existed due to common nationwide policies and procedures, primarily inadequate training of restaurant and area managers and HR representatives, inadequate accountability for managers who fail

to investigate or remedy sexual harassment, and inadequate resources for reporting sexual harassment for female workers. *See* FAC ¶¶ 140–49.

The Court finds *Palmer v. Combined Ins. Co. of Am.*, 2003 WL 466065, at *2 (N.D. Ill. Feb. 24, 2003) instructive. In *Palmer*, the plaintiff's proposed class included all female workers of a company that consisted of twelve sales divisions, each of which was divided into regions, which were divided into sub-regions, sub-regions into districts, and districts into territories. *Id.* at *1. Each level of the company had its own manager, and the plaintiff alleged that upper-level managers saw the mistreatment of female employees, including the denial of equal compensation opportunities, the denial of promotions, and the creation of a hostile work environment, "on a regular basis and d[id] nothing, and whenever a female agent complain[ed] to higher management of sexual discriminatory treatment, her complaint [was] superficially addressed, but, for all intents and purposes, [was] essentially ignored." *Id.* The court held that the plaintiff's allegations of "a company-wide practice of sex discrimination that . . . nourishes a culture in which it is not only acceptable, but also commendable to degrade and insult female employees" were enough that it could not conclude that there was no question of fact common to the class. *Id.* Plaintiffs' allegations in the instant case are similar: they claim that several of Defendants' company-wide practices—including failing to train managers to properly address sexual harassment or retaliation against employees who complained about sexual harassment, failing to adequately hold accountable managers who do not investigate and remedy harassment or who retaliate against

employees who complained (and even incentivizing such conduct), and failing to provide adequate avenues for victims of sexual harassment to report such harassment such that it was addressed—create a hostile work environment for female workers. FAC ¶¶ 8–10, 25–30, 108–09, 114, 121, 132, 135–37, 140–45, 147–150, 152, 168.

In their Reply, again citing primarily cases at the class-certification stage, Defendants insist that no common question is presented because the policies alleged by Plaintiffs allow for discretion on the part of managers to administer Defendants' policy against harassment. Strike Reply at 7–10 (citing *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 897 (7th Cir. 2012); *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 273 (N.D. Ill. 2019)). Defendants argue that Plaintiffs' theory of liability is "indistinguishable" from that rejected by the Supreme Court in *Dukes*, 564 U.S. 338. Strike Reply at 9–10. But Defendants ignore the fact that the Supreme Court rejected the class in *Dukes* at class certification, *after* the parties engaged in extensive discovery. 564 U.S. at 353–54. The Supreme Court held that the plaintiffs had failed to present "significant proof that [the employer] operated under a general policy of discrimination" where the plaintiffs relied on (1) the testimony of an expert that the employer had a "strong corporate culture, that ma[de] it vulnerable to bias;" (2) studies about gender disparities across the employer's stores nationwide; and (3) anecdotal evidence of discrimination supported by about 120 affidavits (which came out to be 1 for every 12,500 class members). *Id.* at 354–58 (internal citations and quotations omitted). It

held that this evidence did not support a "common mode of exercising discretion that pervades the entire company" but noted that it has "recognized that 'in appropriate cases' giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory." *Id.* at 355 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990–91 (1988)). Here, at the pleading stage, Plaintiffs have yet to receive any discovery through which they could present "significant proof" supporting Defendants' common policy of sex discrimination in addressing sexual harassment at the McOpCo restaurants.

The Court also agrees with Plaintiffs that *Ladik*—an in-Circuit case cited by Defendants in which the court rejected the proposed class at the pleading stage—is also distinguishable. Memo. Strike at 13–14 (citing *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269–72 (W.D. Wis. 2013)). The plaintiffs in *Ladik* were individuals who would have been members of the rejected class in *Dukes*, who sought to bring a class action on behalf of a smaller class involving only employees in one region rather than nationwide. 291 F.R.D. at 264. The court struck the class on the pleadings, finding that the plaintiffs had "not shown how the class they propose solves any of the problems the Court found in *Dukes*." *Id.* at 265. Here, Defendants do not point to a prior case in which discovery has been conducted about a similar proposed class, which fails to support a common policy of sex discrimination. As such, unlike *Ladik,* this is not "the rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class." *Id.* at 272.

36

This is true even in the face of Defendants' argument that commonality is implausible because the proposed Class spans "over 100" restaurants. Strike Reply at 10 (citing FAC ¶ 24). Plaintiffs allege inadequate responses and retaliation for reporting sexual harassment by at least one manager and HR representative who supervise multiple McOpCo restaurants (FAC ¶ 106); moreover, they allege a policy of incentivizing managers at McOpCo stores to ignore sexual harassment, among other policies enacted at the corporate level (FAC ¶¶ 143–44; 148–49). At the pleading stage, that is enough. *See Palmer*, 2003 WL 466065, at *2 (declining to strike class allegations based on a culture promoting degrading and insulting female employees across many stores in different regions).

That is not to say that the policies alleged by Plaintiffs so clearly cause common injuries that they will allow for smooth sailing at the class certification stage. *See, e.g.*, *Bolden*, 688 F.3d at 897 (recognizing that supervisor discretion over employment matters might facilitate discrimination and allow for certification of "one class per store" but not "one class per company"). However, at this stage, the Court cannot find that Plaintiffs' allegations of sex discrimination are so individualized that they "could not possibly present common questions of law or fact sufficient to justify class action treatment." *Patterson*, 631 F.2d at 481; *see also Pruitt v. Pers. Staffing Grp., LLC*, 2016 WL 6995566, at *6 (N.D. Ill. Nov. 30, 2016); *Lucas v. Ferrara Candy Co.*, 2014 WL 3611130, at *8 (N.D. Ill. July 22, 2014).

## B. Typicality

Similarly, Plaintiffs' allegations are sufficient, for now, to satisfy Rule 23(a)'s typicality requirement. Rule 23(a)(3) requires that there "be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

True, the fact that the proposed Class and Subclass encompass workers from over 100 McOpCo restaurants may present issues at class certification due to distinguishable harassing conduct by different harassers, as well as the decisions of numerous supervisors (managers, operations consultants and/or HR representatives) impacting how the sexual harassment was addressed at different restaurants. *See Van*, 332 F.R.D. at 281. But, like other courts in this District, the Court finds that the pleading stage is not "the appropriate time to determine whether the plaintiffs' typicality . . . allegations . . . can be proved." *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 883 (N.D. Ill. 2014). For now, the typicality requirement is met because Plaintiffs' allegations that Defendants' company-wide practices of inadequate training and inadequate responses to sexual harassment "give rise to [Plaintiffs'] and the class members' claims, and these claims are based on the same legal theor[ies], . . . hostile work environment because of sex and retaliation under Title VII." *Palmer*, 2003 WL 466065 at *2.

### C. Adequacy

To satisfy Rule 23's adequacy requirement, a plaintiff must demonstrate both that the named plaintiff is a satisfactory representative for the class and that her counsel is up to the task of prosecuting the action. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants argue that Plaintiffs have not plausibly alleged adequacy because the Class includes people who allegedly contributed to the hostile work environment. Memo. Strike at 11–12 (citing FAC ¶¶ 41–42, 45, 48, 52, 77, 155).

The Court agrees that such conflicts of interest create issues with the class definition. *See Van*, 332 F.R.D. at 283 (denying class certification based on adequacy where potential conflicts of interest in proposed class "at least some putative class members" in managerial roles appeared to have "fought to preserve the sexually harassing culture," even if they did not themselves participate in any harassment). And although Plaintiffs argue that no conflict of interest exists because the low-level managers who contributed to the hostile work environment are not Plaintiffs' "employers," Plaintiffs also appear to partially concede the issue by offering to "cure the asserted problem by proposing subclasses or a narrowed class definition after discovery." Strike Resp. at 11 (citing *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017)). Like other courts in this District, the Court finds that it "is more prudent to deny Defendants' motion to strike Plaintiffs' class allegations with leave granted to Plaintiffs to amend the class definition to remove the defect upon filing their motion for class certification [and] consider Defendants'

additional objections to Plaintiffs' class allegations when Defendants oppose Plaintiffs' motion to certify the class[es]." *Lucas*, 2014 WL 3611130, at *8; *c.f. Wright*, 2010 WL 4962838, at *2 (striking class allegations on adequacy grounds where plaintiff herself, during the relevant statute of limitations period, was promoted to a position that required class members to work off-the-clock and thus "acted in violation of the law and of defendant's policies"). Accordingly, the Court must deny the Motion to Strike as it pertains to Rule 23(a).

### D. Predominance

Plaintiffs seek compensatory damages, FAC ¶ 11, meaning they must satisfy not only Rule 23(a), but also Rule 23(b)(3), which requires predominance and superiority. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824–25 (7th Cir. 2011). The predominance inquiry asks whether the common issues in the case are more prevalent or important than the non-common, individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citations and quotations omitted). The predominance requirement is similar to, but "far more demanding" than, the commonality requirement. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624–25 (1997). Defendants argue that "[e]ven if any relevant common issues exist, they are eclipsed by the overwhelming number of differences." Memo. Strike at 12.

The Court again agrees with Plaintiffs that, even more so than the Rule 23(a) criteria, the predominance standard generally requires consideration of the merits and the nature of the evidence, and "some level of discovery is essential to such an evaluation." *Murdock-Alexander*, 2016 WL 6833961, at *5. The pleadings "do not

allow the Court to conduct the rigorous analysis required under Rule 23." *Id.* (collecting cases). Like the court in *Palmer*, this Court has "concerns about the manageability of this potential class, which might reach numbers in the thousands, [but] it is too early to conclude that there is a better way to handle this case." 2003 WL 466065, at *6. It is too early to determine whether the questions common to the class predominate the questions pertaining to the individual class members, but at this point it is "possible" that they do. *Id.* The Motion to Strike on predominance grounds therefore fails.

### E. EEOC Charge

Finally, Defendants contend that Plaintiffs' proposed classes exceed the scope of their EEOC charges. Memo. Strike at 14–15. The Court addressed a similar argument raised in Defendants' Motion to Dismiss regarding the scope of Plaintiffs' policy and practice claims being broader than their EEOC charges. *See supra* Section I.C. For the same reasons, the Court denies the Motion to Strike based on Defendants' argument that the class definition is broader than that included in Plaintiffs' EEOC charges. The Court agrees with Plaintiffs that, by including a class-wide allegation in their EEOC charges, they provided the requisite notice to Defendants. Strike Resp. at 14 (citing *Levine v. Bryant*, 700 F. Supp. 949, 955 (N.D. Ill. 1988)).

The Court cannot say, at this stage, that this is an extraordinary case in which "additional discovery would not be useful in resolving the class determination."

*Kasalo*, 656 F.3d at 563. As such, Defendants' Motion to Strike Plaintiffs' class allegations is denied.

## Conclusion

For the reasons given above, Defendants' Motion to Dismiss [30] is denied. Defendants' Motion to Strike [32] is also denied. Defendants have until August 10, 2021 to answer the First Amended Complaint. The parties are instructed to submit a joint status report on or before August 17, 2021.

Dated: 7/20/2021

United States District Judge
Franklin U. Valderrama