# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMELIA FAIRLEY and ASHLEY REDDICK, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McDONALD'S CORPORATION, McDONALD'S USA, LLC, and McDONALD'S RESTAURANTS OF FLORIDA, INC.<br><br>Defendants. | Case No. 20-CV-02273<br><br>Hon. Franklin U. Valderrama<br><br>Magistrate Judge Susan E. Cox |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO THEIR SIXTH SET OF REQUESTS FOR PRODUCTION**

Defendants McDonald's Corporation, McDonald's USA, LLC ("McDonald's USA"), and McDonald's Restaurants of Florida, Inc. ("McDonald's Florida") submit this Opposition to Plaintiffs' Motion to Compel Responses to Their Sixth Set of Requests for Production. Dkt. 100. Plaintiffs' Requests for Production of Documents ("RFPs") Nos. 1 and 4 seek Board materials that were produced in a different case filed in Delaware Chancery Court involving shareholder derivative claims. The requests are not limited to the company-owned restaurants operated by McDonald's Florida that are at issue in this lawsuit. And they seek materials from the Board of Directors of McDonald's Corporation, which is a *parent of a parent* of McDonald's Florida, and thus two legal entities removed from Plaintiffs' employer. Just eight days ago, this Court denied Plaintiffs' earlier request for similar Board materials from the same Delaware proceeding. The Court should likewise deny Plaintiffs' current requests, because they are neither relevant to Plaintiffs' claims nor proportional to the needs of this case.

Plaintiffs assert claims on behalf of female employees of McDonald's Florida who were allegedly sexually harassed by coworkers at almost 140 restaurants in Florida. To establish their claims, Plaintiffs must show, *inter alia*, that they and the putative class members experienced sexual harassment that was sufficiently "severe or pervasive" and that management was "negligent either in discovering or remedying the harassment." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928, 930 (7th Cir. 2017); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (Florida Civil Rights Act adopts federal standards of liability).

RFPs 1 and 4 seek Board-level materials that are not relevant to any element of Plaintiffs' harassment claims. Board members, given their role in the corporate governance structure, are not involved in day-to-day management. This is particularly true here, because the Board is two legal entities removed from the entity that employed the Plaintiffs and the putative class members. In

these circumstances, the at-issue Board materials could not plausibly shed light on whether employees in the Florida restaurants experienced harassment that was "severe or pervasive" or whether management knew about the harassment and failed to take remedial action. Rather, documents relevant to the elements of Plaintiffs' harassment claims can and should be obtained from custodians who managed the day-to-day affairs of McDonald's Florida. Minute Entry, Mar. 23, 2023, Dkt. 99 (noting that information relevant to Plaintiffs' claims "can be established through testimony of human resources employees who oversaw sexual harassment claims, probing their experiences with how claims and training were handled").

The documents Plaintiffs seek are also disproportionate to the needs of this case. Plaintiffs' delay in serving Requests 1 and 4—despite knowing about the Board materials produced in the Delaware case for over a year—is a tacit admission that these documents are not important to their claims. *See id.* (noting that some of the very same materials sought here are not relevant enough to justify production, "particularly at this late stage of discovery"). Moreover, these documents are highly confidential, reflecting sensitive Board deliberations. Finally, the production of these documents at the very end of fact discovery (which closes *today*) would unduly burden the proceedings by requiring Defendants to develop new evidence and identify new witnesses to demonstrate that broad-based statements in the Board minutes have no bearing on what may have occurred (or not) at particular restaurants in Florida. *Cf. id.* (noting that belated production of Board materials would unduly prolong discovery by requiring Defendants to develop additional evidence to rebut the theories Plaintiffs seek to advance through those Board materials). Because the burden imposed by requiring production of documents responsive to RFPs 1 and 4 far outweighs any benefit, the Court should deny Plaintiffs' Motion.

For their part, Plaintiffs concede that the Board materials will contain no details about

conduct in the Florida restaurants, and thus are not relevant to the merits of Plaintiffs' sexual harassment claims. Instead, Plaintiffs argue that the documents are relevant to their allegation that McDonald's Corporation is subject to liability under a joint employer and/or integrated enterprise theory. But there is no reason to believe these Board minutes would demonstrate that McDonald's Corporation exercises the type of control over labor relations at McDonald's Florida that would make it a joint employer or integrated enterprise. As noted, Board members are not involved in day-to-day management; if there is evidence that McDonald's Corporation exercised control of labor relations at McDonald's Florida, it would be found in the files of management custodians, not the Board.

Plaintiffs nonetheless argue (wrongly) that the Board materials will support their joint employer allegations, citing the court decisions in the Delaware proceeding in a misguided attempt to bolster this argument. But Plaintiffs' citations to the Delaware decisions undermine their joint employer allegations. Oddly, Plaintiffs rely on language from those decisions addressing what the Delaware court noted David Fairhurst, the former Chief People Officer of McDonald's Corporation, "should have done" to address concerns of sexual harassment at the restaurants—an inquiry relevant to whether Fairhurst satisfied a duty of oversight he owed to shareholders under securities law. But whether or not Fairhurst satisfied his duty of oversight says nothing about joint employer liability. An exercise of the duty of oversight under securities law does not contemplate or require the type of control over labor relations that gives rise to joint employment liability. And, in any event, the Delaware court found that the shareholder plaintiffs had plausibly alleged, for purposes of that motion, that Fairhurst *breached* his duty of oversight, which, if anything, appears to suggest that Fairhurst was <u>not</u> involved in the affairs of the Florida restaurants, thus contradicting Plaintiffs' joint employer allegations.

Plaintiffs also argue that the Board materials will show that McDonald's Corporation provided training and policies to its subsidiaries. But as courts routinely hold, a parent company's involvement in drafting policies and making training available for its subsidiaries is not indicative of a joint employer relationship. Nor can Plaintiffs advance their joint employer theory by pointing out that an officer of McDonald's USA reported to an officer of McDonald's Corporation, because, as courts observe, this is a customary arrangement between parents and subsidiaries that does not support joint employer liability.

In short, at the end of discovery, despite ample opportunity, Plaintiffs have cited no evidence that McDonald's Corporation has engaged in any activities with respect to McDonald's Florida other than what is customary in a parent-subsidiary relationship. And there is no plausible basis to argue that the Board materials Plaintiffs seek will provide evidence relevant to joint employer liability. For these and other reasons set forth below, Plaintiffs' motion should be denied.

## I. **BACKGROUND**

Plaintiffs bring claims of alleged co-worker harassment on behalf of a purported class of all female employees who work or worked in a position below that of General Manager at nearly 140 company-owned Florida restaurants ("McOpCos"). First Am. Compl., Dkt. 18, ¶¶ 155-56. Though both Plaintiffs worked in a single Florida restaurant at the time of the alleged harassment and were directly managed by employees of McDonald's Florida, Plaintiffs allege that McDonald's Corporation, McDonald's USA, and McDonald's Florida acted as joint employers of Plaintiffs and the putative class members. *Id.* ¶ 32; Defs.' Position Paper, Dkt. 96, at 2-3.

Discovery closes on March 31, 2023. Minute Entry, Dec. 14, 2022, Dkt. 93. To date, Defendants have provided extensive discovery relevant to Plaintiffs' class claims and joint employer claims. Class discovery has been guided by the Court's discovery order that limited discovery to "all corporate owned and operated McDonald's stores in the state of Florida." Minute

Entry, Sept. 14, 2022, Dkt. 89. In addition to offering multiple witnesses for deposition, Defendants have provided over 11,000 pages of document discovery, including sexual harassment policies and training materials for the Florida restaurants, documents regarding harassment complaints brought by female employees who worked in those restaurants from 2016 to the present, and documents relating to investigations into those complaints. Defs.' Position Paper, Dkt. 96, at 3. Defendants also produced logs of responsive complaints from central repositories and documents from the ESI of dozens of human resources employees who supported the Florida restaurants during the relevant time period. *Id.*

With respect to the joint employer claims, McDonald's has provided 30(b)(6) testimony regarding the relationship of the three Defendants. Christopher Sparks, a 30(b)(6) representative, testified that the employees of the Florida restaurants are employed by a separate legal entity (McDonald's Florida), whose parent, McDonald's USA, is a subsidiary of McDonald's Corporation with its own Chief People Officer, President, and management structure separate and apart from McDonald's Corporation. *Id.* at 3-4. Further, discovery confirmed that McDonald's Corporation does not supervise, hire, fire or otherwise control the employees of McDonald's Florida, nor does it engage in other activities that are indicative of an employment relationship.

Nonetheless, RFP Nos. 1 and 4 seek materials relating to deliberations by McDonald's Corporation's Board of Directors, and are not limited to the Florida restaurants.

- Request for Production 1 seeks: "All Exhibits cited in the Fairhurst Opinions (attached to the Transmittal Declaration of S. Reiko Rogozen filed in the Delaware Actions)."
- Request for Production 4 seeks: "All Documents . . . produced in the Delaware Actions constituting . . . or relating to communications to or among McDonald's Board of Directors or any committee thereof (including but not limited to Board or committee meeting minutes) . . . relating to allegations, complaints, investigations, or remediation of sexual harassment at McDonald's restaurants."

Pls.' Br. 1-2. Plaintiffs served the requests on February 15, just weeks before the close of

discovery.

Although Plaintiffs rely on the recent Delaware orders to justify their delay in serving these requests, the allegations described in the Delaware orders have been available in publicly filed complaints in the same case for over a year. The complaints in that case, filed in April 2021 and January 2022, are replete with factual allegations sufficient to put Plaintiffs on notice that they could have pursued this line of discovery. Those pleadings allege that the Board held high-level discussions of sexual harassment in McDonald's restaurants. *In re McDonald's Corp. S'holder Derivative Litig.*, No. 2021-0324-JTL (Del. Ch. 2021), Consolidated Complaint ¶¶ 98-102, 106, 126, 164, BL-83. And, those complaints were based in large part on the set of documents Plaintiffs now seek, which the shareholder plaintiffs already possessed. *See, e.g.*, *id.* at 1. This highly-publicized lawsuit alleged that the Board "faced mounting pressure from [a] national outcry over harassment" at its restaurants that included "a strike . . . demanding that McDonald's adopt more effective sexual harassment prevention policies, procedures, reporting, and training." *Id.* ¶ 13. It simply strains credulity for Plaintiffs to now claim that they only recently had reason to believe the Board may have discussed or acted on these matters in some way.

## II. ARGUMENT

The scope of discovery is limited to matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

### A. The Board-level Materials Plaintiffs Seek Are Irrelevant.

Plaintiffs concede that they do not expect the Board materials to contain any details specific to the Florida restaurants. Pl.'s Br. 3 ("[I]t is likely that the McDonald's Corporation Board spoke generally about sexual harassment . . . without specifically singling out Florida McOpCo restaurants."). This concession is not surprising, since board members do not get involved in the day-to-day management, particularly with respect to the subsidiary of a subsidiary. Because the

Board materials lack any details about the Florida restaurants, they are not relevant to the merits of Plaintiffs' sexual harassment claims, and Plaintiffs do not argue otherwise.

Plaintiffs instead argue that the materials are relevant to their joint employer allegations. *Id.* at 5, 6. More specifically, Plaintiffs argue that the documents "are relevant to show the extent of McDonald's Corporation's control and supervision of Plaintiffs and putative class members, specifically with respect to human resources issues such as prevention and remediation of sexual harassment, and the costs of operation, such as provision of sexual harassment training and other resources." *Id*. at 7. Their arguments are entirely misplaced.

As this Court previously acknowledged, the joint employer analysis turns primarily on the "ability to supervise and control employees . . . , and of the control factors, the ability to hire and fire is the most significant." Mem. Op. and Order, July 20, 2021, Dkt. 50, at 16 (citing *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702-03 (7th Cir. 2015)). With discovery nearly closed, Plaintiffs cannot point to any evidence that McDonald's Corporation hired, fired, or managed day-to-day activities of employees of McDonald's Florida—despite taking depositions of ten Human Resources and Operations professionals and two 30(b)(6) depositions. Instead, Plaintiffs point to purported evidence that McDonald's Corporation shared policies with its subsidiaries and provided training opportunities. But such activities do not support a finding that McDonald's Corporation is a joint employer alongside McDonald's Florida. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th Cir. 2007) (parent company's promulgation of "policies that its subsidiaries were supposed to use to comply with Title VII" cannot form the basis for joint employer liability); *Gross v. Peoples Gas Light & Coke Co.*, No. 17-CV-3214, 2018 WL 558515, at *4 (N.D. Ill. Jan. 24, 2018); *Nardi v. ALG Worldwide Logistics*, 130 F. Supp. 3d 1238, 1240-41 (N.D. Ill. 2015) (summary judgment on joint employer issue for third-party human resources provider that

provided sexual harassment policy and reporting procedures). Parent companies can provide a range of "integration services" to their subsidiaries without exercising the type of control or supervision that gives rise to joint employer liability. *Gross*, 2018 WL 558515, at *4; *Clifford v. Patterson Cos*., No. 08 C 0828, 2009 WL 3852447, at *9-10 (N.D. Ill. Nov. 18, 2009) (summary judgment for parent company on joint employer issue despite evidence that it provided administrative and legal assistance to subsidiary that employed plaintiff).

In *Gross*, the court dismissed joint employer claims against the corporate parent of the plaintiff's direct employer but sustained claims against an affiliate (a second subsidiary). *Gross*, 2018 WL 558515, at *1-2. The court found joint employment by the affiliate plausible because the plaintiff: was assigned to work at the affiliate's facilities and was the "site leader" for safety initiatives there; received work attire, a vehicle, and an employee badge and ID number from the affiliate; and received *daily instruction* by the affiliate's management. *Id.* at *2-3. *Still*, the court noted the plaintiff "has a lot to prove, especially with respect to which company controlled or supervised him." *Id.* at *3. By contrast, "garden-variety" integration between affiliated corporations, like the "facts that [the] parent company maintained employment records . . . and drafted employment policies for all of the related corporations," did not make it plausible that the parent "had any involvement in controlling and supervising [plaintiff's] work activities." *Id.* at *4. Thus, the court dismissed the claims against the parent. Here, Plaintiffs' case closely resembles the corporate parent component in *Gross*, at best. At the close of discovery Plaintiffs cannot point to any "direct role" of McDonald's Corporation in "controlling [their] conditions of employment." *Id.* And more importantly, it is wholly implausible that the sky-level documents sought by RFPs 1 and 4 would help Plaintiffs establish such day-to-day control, especially where depositions of ten Human Resources and Operations professionals and two 30(b)(6) depositions did not.

The Delaware court decisions that Plaintiffs cite extensively in their brief do not change the analysis. Although those opinions note that McDonald's Corporation created "sexual harassment training" and "programs and policies with regard to sexual harassment," these types of activities do not give rise to joint employer liability. Pls.' Br. 10; *see* discussion *supra*. And Plaintiffs' citations to the court's discussion of Fairhurst's alleged conduct actually undermine Plaintiffs theory of joint employer liability. Those citations focus on what the Delaware court thought Fairhurst "should have done" in response to restaurant-level EEOC charges, walk-outs, and strikes. Pls.' Br. at 1, 5, 8-10. The court—accepting the allegations in the complaint as true—found that the shareholders had sufficiently pled that Fairhurst breached his duty of oversight by *failing to act*. It goes without saying that a failure to act cannot be indicative of the type of control that warrants a joint employer finding.

Plaintiffs will undoubtedly argue that Fairhurst's alleged failure to act is relevant to whether McDonald's Corporation took prompt action to remediate harassment as required to avoid liability under Title VII. But that puts the cart before the horse. McDonald's Corporation "can incur liability for sexual harassment only if [Plaintiffs] can 'prove the existence of an employer-employee relationship' with" McDonald's Corporation. *Nischan*, 865 F.3d at 928. Because Plaintiffs lack evidence that McDonald's Corporation was a joint employer, Plaintiffs cannot show that McDonald's Corporation is subject to liability under Title VII for sexual harassment at its subsidiaries, and thus whether Fairhurst took prompt remedial action in response to reports of sexual harassment at the restaurants is simply not relevant. *Bright*, 510 F. 3d at 771 ("Title VII applies to *employers*, not to investors who know about what employers are doing. That [plaintiff] complained directly to personnel at [the parent company] does not make it an employer, any more than complaining to . . . Congress would have made the Senator or Representative her employer.").

Notably, the Delaware court discussed what Fairhurst "should have done" as part of its analysis of the fiduciary duty of oversight that directors (and now officers) owe corporate shareholders under *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996), and its progeny. Exercising this type of oversight does not create joint employer liability—and, if it did, the parent-subsidiary distinction would collapse. The duty of oversight is fulfilled through minimal actions—namely, implementing "reasonable information and reporting systems" to monitor operations. *Caremark*, 698 A.2d at 971. This legal duty of oversight is completely separate from the joint employer inquiry, which is predicated on day-to-day control over labor relations. To hold otherwise would eradicate an entire body of law under Title VII holding that a parent company's routine oversight of its subsidiaries is insufficient to establish joint employer liability. *See, e.g.*, *Bright*, 510 F.3d at 771 (That a parent corporation has "promulgat[ed] policies that its subsidiaries were supposed to use to comply with Title VII [in an attempt] to prevent violations of law (the better to protect the value of its investment) hardly makes it directly responsible *for* those violations!"); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020) ("[T]he existence of a parent-subsidiary relationship is insufficient on its own to support a finding that the two entities are a single or joint employer for purposes of Title VII.") (quoting *Brathwaite v. Sec. Indus. Auto. Corp.*, No. 06 CV 0300 (ERK) (JMA), 2006 WL 8439237, at *4 (E.D.N.Y. Dec. 1, 2006)). Thus, the Delaware court's purely legal conclusion that Fairhurst owed a duty of oversight has no bearing on whether McDonald's Corporation was a joint employer or integrated enterprise under Title VII or the Florida Civil Rights Act.

Plaintiffs also point to documents and witness testimony obtained through discovery in this case to advance their joint employer claims. But under established precedent, this evidence has little to no bearing on the joint employer analysis, and Plaintiffs cite no case law that suggest

otherwise. Indeed, Plaintiffs' discussion of these documents and witness testimony demonstrates that Plaintiffs have received ample discovery related to their joint employer allegations without uncovering any plausible argument that McDonald's Corporation is a joint employer.

Plaintiffs cite testimony from Kenny Sanders (the Senior People Director for McDonald's USA) "that the Chief People Officer for McDonald's USA reports directly to McDonald's Corporation's Global Chief People Officer, Fairhurst's former position." Pls.' Br. 13. But this type of reporting relationship is "consistent with common arrangements between parents and subsidiaries," and not indicative of a joint or single employer relationship. *Fox News*, 510 F. Supp. 3d at 83-84 (concluding that the fact that the Fox News CEO reported to Fox Corp CEO and Executive Chairman was not indicative of single employer relationship).

Plaintiffs remaining evidence conflates McDonald's USA and McDonald's Corporation, which are separate legal entities, each with their own management structure reporting up to separate executives. Plaintiffs note that HR Consultants employed by McDonald's USA investigate reports of sexual harassment by restaurant level employees. Pls.' Br. 13. But as Plaintiffs concede, the HR Consultants are employed by McDonald's USA, not McDonald's Corporation, and so involvement by HR Consultants is not evidence that McDonald's Corporation exercises control over labor relations at McDonald's Florida. Moreover, there are several layers of management between those HR consultants and the Chief People Officer for McDonald's USA, making it even less plausible that McDonald's Corporation, much less its Board of Directors, has relevant information about HR investigations in the Florida restaurants. *Id.*

Likewise, Plaintiffs' observation that "the President of McDonald's Restaurants of Florida is also an officer of McDonald's USA" is unremarkable. *Id.* at 14. Courts recognize that officers of related corporations can wear "different hats" when serving as officers of each corporation. *Fox*

*News*, 510 F. Supp. 3d at 84 ("Even complaints alleging that a parent and subsidiary *share* a high-level officer, such as a CEO or board member have been held [insufficient on joint employer]."); *cf. Gross*, 2018 WL 558515, at *4 ("[C]ommon . . . integration of functions such as . . . sharing of directors . . . does not justify ignoring corporate form."). More importantly, the fact that an officer of *McDonald's USA* serves in a dual role as an officer of McDonald's Florida does not provide any evidence that *McDonald's Corporation* is a joint employer. Plaintiffs' focus on McDonald's USA is a futile attempt to distract this Court from the fact that the materials Plaintiffs seek concern Board deliberations and executive conduct at McDonald's Corporation, a separate legal entity.

Finally, Plaintiffs cite to a single McDonald's Corporation document containing *guidelines* for disciplining violations of cash handling and security policies. In this last-gasp attempt to connect McDonald's Corporation to day-to-day control and supervision of Florida employees, Plaintiffs mischaracterize the document as some rigid specification of the "precise level of discipline to be meted out for specific offenses." Pls.' Br. 14. In fact, this document is nothing more than another garden-variety policy document of the kind commonly issued by a corporate parent "to protect the value of its investment." *Bright*, 510 F.3d at 771. The guidelines repeatedly emphasize the circumstance-driven nature of disciplinary inquiries that should be adjusted on a case-by-case basis by the person using the guidelines after considering a variety of factors. And Plaintiffs cite no evidence that such guidelines are implemented by anyone at McDonald's Corporation. In short, the guidelines are just another example of the type of policy sharing that courts routinely hold is not indicative of joint employer status. *See* discussion *supra* at 4.

Request No. 1 is irrelevant for the additional reason that it is not tailored to the issues in this case. The request seeks all documents cited in the Delaware Fairhurst decision, regardless of whether any individual document would bear on the issues Plaintiffs advance in their motion. And

notably, the wholesale request continues to seek documents concerning the personal conduct of McDonald's Corporation executives that the Court held to be irrelevant just last week. For all the reasons stated above, the Board materials Plaintiffs seek are not relevant to their claims, and discovery of those materials should be denied.[1]

### B. Discovery of Board Documents Is Not Proportional to the Needs of the Case.

The federal rules expressly limit the scope of discovery to matters that are "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The inquiry into proportionality requires courts to consider "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The Advisory Committee Notes to the 2015 amendment clarify that proportionality was originally added to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."

Plaintiffs' requests are not proportional to the needs of this case. As this Court previously noted, "the distance between the C−suite at McDonald's Corporation to the daily experience at individual stores in Florida is just too great to find such discovery proportional to the needs of the case pursuant to Rule 26(b)." Minute Entry, Mar. 23, 2023, Dkt. 99. Moreover, Plaintiffs did not serve requests for these documents until the final days of discovery, confirming this information is not important to establishing Plaintiffs' case. Weighed against McDonald's substantial interest in keeping sensitive board-level materials confidential, whatever negligible benefit these documents would have toward resolving the issues in this case does not justify their production.

[1] Plaintiffs argue that if "McDonald's Corporation had no involvement in restaurant level affairs – then there would be no documents to produce [in response to RFP No. 4], and McDonald's could easily respond that no such documents exist." Pls.' Br. 11. But Plaintiffs confuse responsiveness with relevance. The fact that there may be Board materials responsive to RFP No. 4, which seeks any Board materials that so much as touch on "sexual harassment at [any] McDonald's restaurants," does not mean those documents are relevant or otherwise discoverable.

*See Chinn v. Elmwood Franklin Sch.*, 15-CV-938G(Sr), 2018 WL 2431886, at *2 (W.D.N.Y. May 30, 2018) (acknowledging that production of board minutes and employee complaints from third-party entity would "expose confidential information [and] impose a significant burden . . . without any proportionate benefit to the fact finding process").

Plaintiffs' attempt to obtain Board-level documents serves no purpose other than to harass Defendants. Courts deny discovery into the documents of high-level executives or Board members unless they had direct involvement in the allegations in the case. *See Melgoza v. Rush Univ. Med. Ctr.*, No. 17 C 6819, 2018 WL 11366178, at *4 (denying discovery from CEO where there was "no allegation that [CEO] had anything to do with the actions that are alleged to have been taken against plaintiff"). And while Board materials were produced in the Delaware litigation, it is important to note that all claims against the Board members and Fairhurst were dismissed on March 1, 2023. *In re McDonald's Corp.*, No. 2021-0324-JTL (Del. Ch. Mar. 1, 2023), Dismissal Order, BL-182. Moreover, the Section 220 production of Board materials was made pursuant to a statute that allows specifically shareholders to access records "for [a] proper purpose." 8 Del. C. § 220. The plaintiffs in that case were shareholders who obtained those documents to investigate and assert claims against certain directors and officers of McDonald's Corporation. Here, Plaintiffs do not assert claims against directors or officers of McDonald's Corporation, and they have no legitimate purpose for seeking these materials.

Moreover, allowing discovery of these documents would unduly burden the proceedings. If such documents were produced, Defendants would have to spend considerable time and expense parsing through them and developing further evidence to defend against any arguments that Plaintiffs advance based on those documents. *See supra* at 2. Such efforts would require additional time for discovery and unduly burden these proceedings without providing any corresponding

benefit given that these materials are not relevant and discovery is now closed.

Plaintiffs argue that there is "no serious burden to McDonald's in searching for and producing the documents, because they have already been produced, and in some cases even filed, in another case." Pls.' Br. 11-12. As an initial matter, this argument ignores the time required to sort through the production in the Delaware case to find documents responsive to Plaintiffs' document requests in this case. More to the point, and as this Court has acknowledged, Defendants will incur a significant burden in developing new evidence to respond to theories that Plaintiffs might advance based on the production of Board materials. *See supra* at 2. As Plaintiffs concede, the Board materials will not specifically identify instances of sexual harassment at the Florida restaurants. Defendants will thus have to identify new evidence and witnesses to establish that any general, high-level statements in the Board materials did not pertain to the Florida restaurants.

Plaintiffs also quibble with this Court's earlier observation that Plaintiffs delayed in seeking discovery of documents from the Delaware proceeding. Plaintiffs concede that they could have served Request No. 4 earlier, but argue that Request No. 1, which seeks documents cited in the Delaware court's Fairhurst decision, could not have been requested until that decision issued in January 26, 2023. But, to the extent Request No. 1 seeks documents merely because they were cited in the Fairhurst decision, it is inappropriate because it is not tailored to the issues in *this* case. Thus, Plaintiffs' purported excuse for their delay in serving Request No. 1 highlights a fundamental flaw, which in and of itself renders the request objectionable.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion to Compel.

Dated: March 31, 2023 Respectfully submitted,

        s/Elizabeth B. McRee
Elizabeth B. McRee (6275501)
Efrat R. Schulman (6280999)
Jennifer W. Plagman (613737)
Katelyn Nicasio (6333133)
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Tel: (312) 782-3939
emcree@jonesday.com
eschulman@jonesday.com
jplagman@jonesday.com
knicasio@jonesday.com

*Attorneys for Defendants McDonald's Corporation, McDonald's USA, LLC, and McDonald's Restaurants of Florida, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Position Paper and Request for Protective Order was served upon opposing counsel via the court's electronic filing system on March 31, 2023.

Dated: March 31, 2023

Respectfully submitted,

s/Elizabeth B. McRee

Elizabeth B. McRee
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Tel: (312) 782-3939
emcree@jonesday.com

*Attorney for Defendants McDonald's Corporation, McDonald's USA, LLC, and McDonald's Restaurants of Florida, Inc.*