**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMELIA FAIRLEY and ASHLEY REDDICK, on behalf of themselves and all those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-02273 |
| v. | ) ) | Judge Franklin U. Valderrama |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC, and McDONALD'S RESTAURANTS OF FLORIDA, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

## <u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

## <u>REDACTED VERSION FILED IN PUBLIC RECORD</u>

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
**WERMAN SALAS P.C.**
77 W. Washington St., Ste 1402
Chicago, IL 60602
Tel: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com
sarendt@flsalaw.com

*Counsel for Plaintiffs*

Eve H. Cervantez*
Alina Pastor-Chermak*
**ALTSHULER BERZON, LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
ecervantez@altber.com
apastorchermak@altber.com

*Counsel for Plaintiffs*
*\*Pro hac vice*

**TABLE OF CONTENTS**

I.      **INTRODUCTION**..................................................................................................................1

II.     **FACTUAL BACKGROUND**..............................................................................................1

    A.  McDonald's Has One Centralized Supervision and Reporting System ................................1

        1.  The Corporate Defendants ........................................................................................1

        2.  Store Level Organization ..........................................................................................2

        3.  Organization Above the Store Level ........................................................................3

    B.  McDonald's Imposes Centrally Designed, Uniform Policies and Procedures ....................5

        1.  Florida McOpCo's Sexual Harassment Policies ......................................................5

        2.  Florida McOpCo's Sexual Harassment Training Was the Same ..............................6

        3.  Florida McOpCo's Sexual Harassment Reporting Procedures .................................7

        4.  Sexual Harassment Investigation Training and Procedures .....................................9

        5.  Common Insufficient Disciplinary Practices .........................................................11

    C.  McDonald's Pattern and Practice of Tolerating Systemic Sexual Harassment ................13

        1.  Named Plaintiffs and the South French Avenue Restaurant ..................................13

        2.  Other Sample Stores ...............................................................................................17

        3.  Other Florida McOpCo Stores ...............................................................................22

    D.  McDonald's Deliberately Ignores that Female Crew Are Subjected to Sexual Harassment with No Systemic Remedy ..............................................................................23

III.    **THE PROPOSED CLASSES SHOULD BE CERTIFIED** ...........................................27

    A.  Standard for Class Certification ......................................................................................27

    B.  Cases Alleging a Pattern or Practice of Harassment Are Commonly Certified and Tried Using the Multi-phase Teamsters Model ..........................................................................27

    C.  The Proposed Classes ......................................................................................................30

    D.  The Proposed Classes Meet All the Requirements of Rule 23(a) .....................................31

        1.  The Classes are Ascertainable and Sufficiently Numerous....................................31

        2.  Numerous Common Questions Will Drive Resolution of the Action ............................31

            a.  Was McDonald's on notice of a system-wide sexual harassment problem? ........33

            b.  Did McDonald's take effective steps to remedy systemic sexual harassment? .....33

            c.  Does an objectively hostile work environment exist at McDonald's?...................33

            d.  Are McDonald's Corp and McDonald's USA joint employers? ...........................35

            e.  May McDonald's raise a Faragher-Ellerth affirmative defense? ..........................36

            f.  Is McDonald's liable for punitive damages? ........................................................36

        3.  The Named Plaintiffs Are Typical...........................................................................36

        4.  The Named Plaintiffs Are Adequate........................................................................37

    E.  Rule 23(b)(2) Certification Is Appropriate Because the Class Seeks Uniform Injunctive Relief to Protect Class Members from Sexual Harassment .................................................37

F.  Rule 23(b)(3) Certification Is Appropriate at Selected Sample Stores Exemplifying a Hostile Work Environment. ...................................................................................38
  1.  Common Issues Predominate ........................................................................38
  2.  A Class Trial for Each Store Is Superior to Numerous Individual Trials Based on the Same Common Evidence, Witnesses, Documents, and Expert Testimony ..................39
G.  Rule 23(c)(4) Issue Certification Is Appropriate to Determine Pattern or Practice Liability to the Class as a Whole...............................................................................40
IV.  **CONCLUSION** .................................................................................................. **40**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................39

*Bell v. PNC Bank, Nat. Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ..............................................27, 38

*Blizzard v. Appliance Direct, Inc.*,
    16 So.3d 922 (Fla. Dist. Ct. App. 2009) ...............................31

*Brand v. Comcast Corp., Inc.*,
    302 F.R.D. 201 (N.D. Ill. 2014)............................................28, 35

*Bremiller v. Cleveland Psychiatric Inst.*,
    195 F.R.D. 1 (N.D. Ohio 2000) ............................................30, 33

*Brooms v. Regal Tube Co.*,
    881 F.2d 412 (7th Cir. 1989) ................................................33

*Brown v. Cook Cnty.*,
    332 F.R.D. 229 (N.D. Ill. 2019)............................................29, 39

*Brown v. Nucor Corp.*,
    2012 WL 12146620 (D.S.C. Sept. 11, 2012)........................28

*Cerros v. Steel Techs.*,
    398 F.3d 944 (7th Cir. 2005) ................................................32

*Chicago Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
    797 F.3d 426 (7th Cir. 2015) ................................................27, 31, 38

*Cooper v. Fed. Rsrv. Bank of Richmond*,
    467 U.S. 867 (1984)...............................................................29

*E.E.O.C. v. Costco Wholesale Corp.*,
    903 F.3d 618 (7th Cir. 2018) ................................................35

*E.E.O.C. v. Int'l Profit Assocs., Inc.*,
    2007 WL 3120069 (N.D. Ill. Oct. 23, 2007)............................... *passim*

*EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*,
    990 F. Supp. 1059 (C.D. Ill. 1998) ............................................. *passim*

*Faragher v. City of Boca Raton*,
 524 U.S. 775 (1998)..........................................................................................................31, 36

*Gomez v. St. Vincent Health, Inc.*,
 649 F.3d 583 (7th Cir. 2011) ....................................................................................................37

*Harris v. Pub. Health Trust of Miami*,
 82 F.4th 1296 (11th Cir. 2023) .................................................................................................31

*Hostetler v. Quality Dining, Inc.*,
 218 F.3d 798 (7th Cir. 2000) ....................................................................................................34

*Howard v. Cook Cnty. Sheriff's Off.*,
 989 F.3d 587 (7th Cir. 2021) .................................................................................29, 33, 35, 39

*Int'l Bhd. of Teamsters v. U.S.*,
 431 U.S. 324 (1977)..................................................................................................27, 29, 30

*Jenson v. Eveleth Taconite*,
 824 F. Supp. 847 (D. Minn. 1993).........................................................................30, 32, 33, 34

*Jenson v. Eveleth Taconite Co.*,
 139 F.R.D. 657 (D. Minn. 1991)................................................................................30, 35, 38

*Johnson v. Advoc. Health & Hosps. Corp.*,
 892 F.3d 887 (7th Cir. 2018) ...............................................................................................35, 39

*Keene v. Teco Energy Corp.*,
 98-2406-CIV-T-17B, 2000 WL 230243 (M.D. Fla. Mar. 1, 2000) .........................................35

*Knight v. United Farm Bureau Mut. Ins. Co.*,
 950 F.2d 377 (7th Cir. 1991) ....................................................................................................35

*Lacy v. Cook Cnty., Illinois*,
 897 F.3d 847 (7th Cir. 2018) ....................................................................................................36

*Martinolich v. Golden Leaf Mgmt., Inc.*,
 786 So. 2d 613 (Fla. 3d DCA 2001) .........................................................................................35

*In re McDonald's Corp. Stockholder Derivative Litig.*,
 291 A.3d 652 (Del. Ch. 2023)...................................................................................................25

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 672 F.3d 482 (7th Cir. 2012) ..............................................................................................27, 40

*Messner v. Northshore Univ. HealthSystem*,
 669 F.3d 802 (7th Cir. 2012) ..............................................................................................27, 38

*Neal v. Dir. D.C. Dep't of Corr.*,
    1995 WL 517248 (D.D.C. Aug. 9, 1995) ...............................................................30

*Neal v. Dir. D.C. Dept. of Corr.*,
    1995 WL 517244 (D.D.C. Aug. 9, 1995) ...........................................................30, 38

*Neal v. Dir. D.C. Dept. of Corr.*,
    1995 WL 517246 (D.D.C. Aug. 9, 1995) ...............................................................30

*Neal v. Dir. D.C. Dept. of Corr.*,
    No 92-2420 (D.D.C. Dec. 23, 1994)...................................................................30, 32

*Nischan v. Stratosphere Quality, LLC*,
    865 F.3d 922 (7th Cir. 2017) ............................................................................31, 32

*Palmer v. Combined Ins. Co. of Am.*,
    217 F.R.D. 430 (N.D. Ill. 2003).........................................................................36, 38

*Pruitt v. City of Chicago*,
    472 F.3d 925 (7th Cir. 2006) ...................................................................................31

*Ries v. McDonald's USA, LLC*,
    2021 WL 6133437 (W.D. Mich. 2021)............................................................ *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................31

*Warnell v. Ford Motor Co*,
    189 F.R.D. 383 (N.D. Ill. 1999).................................................................... *passim*

*Wilson v. Chrysler Corp.*,
    172 F.3d 500 (7th Cir. 1999) ............................................................................32, 34

**Statutes**

United States Code
    §1981 a(b)(1) ...........................................................................................................36

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................ *passim*

v

## I. INTRODUCTION

McDonald's employs thousands of teenage girls and women at its Florida corporate stores ("Florida McOpCo") but fails to protect them from sexual harassment. Based on the robust evidentiary record, this Court should certify a class under F.R.C.P. 23(c)(4) consisting of all female crew members and crew trainers employed in any Florida McOpCo store from April 10, 2016 through the time of trial, to determine whether McDonald's engaged in a pattern or practice of sex discrimination by failing to prevent and remediate sexual harassment at its stores. Plaintiffs also request certification under Rule 23(b)(2) for a subclass of currently employed class members seeking injunctive relief, including the implementation of policies and procedures adequate to protect them from sexual harassment. Finally, Plaintiffs seek certification under Rule 23(b)(3) for a subclass of female employees working at ten sample stores. *See* Store Summary Charts, T.A-J.[1]

## II. FACTUAL BACKGROUND

### A. McDonald's Has One Centralized Supervision and Reporting System.

**1. The Corporate Defendants.** There are three Defendants: McDonald's Corporation ("McDonald's Corp"), McDonald's USA, LLC ("McDonald's USA"), and McDonald's Restaurants of Florida, Inc. ("McDonald's Restaurants of FL"). McDonald's Restaurants of FL, a wholly owned subsidiary of McDonald's USA, nominally operates McDonald's company-owned restaurants in Florida under a license from McDonald's USA.[2] McDonald's Restaurants of FL does not have any employees above the restaurant level or a Chief Operating Officer;



[3] McDonald's USA is a wholly-owned subsidiary of McDonald's

---

[1] All evidence is attached as Tabs ("T") to the Declaration of Sarah Arendt, filed herewith.
[2] T.TTT, Sparks Depo. 62:4-18, 199:10-12.
[3] T.TTT, Sparks Depo. 70:1-18, 209:20-210:15; T.126S, p. 4.

Corp.[4] McDonald's Operating Company, or "McOpCo," is not a separate legal entity; "McOpCo" is used to refer to McDonald's corporate-owned restaurants.[5]

**2. Store Level Organization.** All Florida McOpCo restaurants have employed workers in the same job positions throughout the class period.[6] Employees within each position have the same basic job duties regardless of their restaurant.[7] All store-level employees are purportedly employed by McDonald's of FL.[8] Crew Members and Crew Trainers are non-supervisory restaurant employees, referred to collectively herein as "Crew." [9] Crew Trainers perform all Crew Member duties and also train other Crew Members.[10]



---

[4] T.TTT, Sparks Depo. 61:18:21.

[5] T.TTT, Sparks Depo. 63:11-18.

[6] T.TTT, Sparks Depo. 70:1-12.

[7] T.262 (Crew Member Job Duties); T.259 (People Manager); T.272 (Certified Swing Manager); T.444 (McOpCo Job Descriptions); T.445 at McDonalds_Fairley_0011251-52 (HR Consultant), McDonalds_Fairley_0011252-53 (HR People Supervisor), McDonalds_Fairley_001254-55 (Operations Manager); T.129S (Operations Manager); T.160 (HR Consultant); T.24 at McDonalds_Fairley_0005593 (Shift Manager).

[8] T.TTT, Sparks Depo. 70:1-18; T.126S at p. 4

[9] T.KKK, Jimenez Depo. 63:19-64:3; T.ZZ Alexander Depo. 145:19-23.

[10] T.ZZ, Alexander Depo. 148:1-3; T.KKK, Jimenez Depo. 67:11-12.

[11] T.ZZ, Alexander Depo. 141:1-25; T.126S at 4; T.TTT, Sparks Depo, 68:7-10, 67:19-25.

[12] T.TTT, Sparks Depo. 136:24-137:15; T.AAA, Collins Depo. 103:10-104:15; T.ZZ, Alexander Depo. 144:4-9, 145:13-146:1, 181:1-15; T.53 (E.J. Disciplinary Action Form Oct. 2019) (prepared by Swing Manager).

[13] T.TTT, Sparks Depo. 68:15-24; T.ZZ, Alexander Depo. 139:3-6, 141:4-9.



**3. Organization Above the Store Level.** ██████████████████████████

██████████████████████████████████ [17] ███████████████████████████

█████████ [18] During most of the class period, Florida McOpCo stores were divided into four profit centers—Miami, Orlando, Bay Area, and Gold Coast.[19] ████████████████

████████████████████ [20]

██████████████████████████████████████████████

██████████████████████████████ employed by McDonald's USA.[21] ███████████████

███████ [22] ████████████████████████████ [23] ██████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████ [24]

████████████████████████████████████████

██████████████ [25] █████████████████████████ [6] ████████

---

[14] T.TTT, Sparks Depo. 132:25-133:7, 134:14-18, 135:25-136:5, 136:16-19, 137:12-21, 138:15-19, 139:10-13; T.KKK, Jimenez Depo. 77:22-78.5, T.266 (Department Manager T.T. imposed discipline).

[15] T.TTT, Sparks Depo. 132:2-3.

[16] T.TTT, Sparks Depo. 130:4-20, 131:10-14; T.ZZ, Alexander Depo. 119:9-13.

[17] T.TTT, Sparks Depo. 17:6-8.

[18] T.TTT, Sparks Depo. 20:9-11, 80:2-10.

[19] T.155 at pgs. 11-13; T.142S (Org Chart) at McDonalds_Fairley_0005503

[20] T.TTT, Sparks Depo. 79:14-20; T.JJJ, Grulkowski Depo. 110:16-111:11; T.GGG, Garcia Depo. 52:16-53:6.

[21] T.TTT, Sparks Depo. 74:7-11, 99:19-100:8.

[22] T.ZZ, Alexander Depo. 27:3-15, 31:24-32:11; T.KKK, Jimenez Depo. 34:18-36:8; T.AAA, Collins Depo. 100:19-25.

[23] T.TTT, Sparks Depo. 116:14-17.

[24] T.TTT, Sparks Depo. 82:10-21, 105:9-13, 106:9-23, 112:8-13, 109:15-22, 112:8-113:7; T.UUU, Vergara Depo. 80:12-82:4; T.AAA, Collins Depo. 104:16-18, 119:25-120:2.

[25] T.TTT, Sparks Depo, 74:7-14, 79:22-24, 100:9-11.

[26] T.TTT, Sparks Depo, 80:7-10.



████████████.[27] ███████████████████████████████████████████████████████████████████████████████[8] ███████████████████████████████████████████████ for McDonald's USA, ███████████████████████████████████████ ████████████████"[29] ███████████████████████████████████ also an officer of McDonald's USA.[30] ███████████████████████████████████████████████████████████████████████████████████████.[31] The President of McDonald's USA reports to the CEO of McDonald's Corp.[32]

████████████████████████████████████████████ also known as an HR Rep, ███████████ or HR People Supervisor.[33] ███████████████████████████████████████████[4]████████████████████████████████████████[5]██████████████████████████████████████████████████[6]███████████████████████████████████████████████████[8] A single HR Manager supports all Florida McOpCo stores.[39] █████████████████████████████████

---

[27] T.TTT, Sparks Depo, 106:17-23, 116:18-21.

[28] T.TTT, Sparks Depo. 82:10-21, 84:8-10, 86:8-24, 109:23-110:1, 130:17-131:5; T.UUU, Vergara Depo. 80:12-82:4.

[29] T.TTT, Sparks Depo. 28:13-24, 77:6-7, 210:12-15.

[30] T.TTT, Sparks Depo. 29:18-24; 208:8-19

[31] T.TTT, Sparks Depo. 29:18-30:15.

[32] T.TTT, Sparks Depo. 30:14-21; T.308 (Org Chart).

[33] T.SSS, Sanders Depo. 39:15-24, 40:12-14; T.VVV, Zubel Depo. 17:18-20; T.LLL, McGinty Depo. 27:20-28:2; T.142S at McDonalds_Fairley_0005505.

[34] T.126S (Defs' Suppl. Responses to Pls' Fourth Set of Interrogs) at 4-6.

[35] T.158 (███████████████████████ at McDonalds_Fairley_0008728; T.SSS, Sanders Depo., 84:18-23, 262:4-12.

[36] T.SSS, Sanders Depo. 49:24-50:18.

[37] T.JJJ, Grulkowski Depo. 106:2-8.

[38] T.JJJ, Grulkowski Depo. 97:10-22; 101:19-102:8.

[39] T.SSS, Sanders Depo. 70:9-11.

███████████████████████████████ [40] The HR Manager is employed by McDonald's

USA, and reports to the ███████████████████████████████████████

██████ [41] The HR Director reports to the Senior Director of HR, █████████████

██████ [42] In turn, the Chief People Officer reports to the President of McDonald's USA, who

reports to the President and CEO of McDonald's Corp.[43]

### B. McDonald's Imposes Centrally Designed, Uniform Policies and Procedures.

**1. Florida McOpCo's Sexual Harassment Policies.** Throughout the class period, McDonald's has maintained a substantively consistent sexual harassment policy, which applies to all Crew at all Florida McOpCo restaurants.[44] It is in the employee handbook, originally titled "Our Policies: A Guide to Actions and Behaviors at McDonald's," and later the "Employee Success Guide."[45] The policy, with additional language specific to managers, is provided to managers in "Our Policies: A Guide to Actions and Behaviors at McDonald's for McOpCo Restaurant Managers" and applies to all restaurant managers and employees above the restaurant level.[46] The manager policy requires restaurant-level managers to immediately report complaints of discriminatory or harassing behavior to the highest level manager in the restaurant, who in turn must immediately report to the Ops Consultant, HR Consultant, or HR Consulting hotline.[47]

McDonald's presents the Employee Success Guide, including the sexual harassment

---

[40] T.SSS, Sanders Depo. 72:12-21.

[41] T.SSS, Sanders Depo. 16:18-23, 19:9-11, 40:24-41:2, 41:6-11; 91:9-13; T.TTT, Sparks Depo., 75:20-23.

[42] T.SSS, Sanders Depo. 18:13-16, 20:5-10, 92:3-11; T.TTT, Sparks Depo. 75:23-76:1, 220:3-11.

[43] T.308 (Org Chart).

[44] *See* T.253 (Fitzgerald Report) pp. 22-23; T.SSS, Sanders Depo. 99:21-100:3, 108:8-109:4, 117:8-20; T.TTT, Sparks Depo. 186:6-17, 207:10-14.

[45] T.SSS, Sanders Depo. 108:2-16, 111:13-15; T.2 (Our Policies); T.164 (Employee Success Guide, October 4, 2017); T.21 (Employee Success Guide); T.3 (Employee Success Guide, April 26, 2018); T.165 (Employee Success Guide, Jan. 25, 2019); T.224 (Employee Success Guide, July 1, 2019); T.187 (Employee Success Guide, Nov. 16, 2020); T.121 (Employee Success Guide, May 11, 2022).

[46] T.TTT, Sparks Depo. 204:5-205:1, 207:10-14; T.SSS, Sanders Depo. 99:21-100:3, 108:8-109:4, 117:8-20; T.59 (Our Policies for managers) at McDonalds_Fairley_0001718-1721.

[47] T.59 (Our Policies for managers) at McDonalds_Fairley_0001720.

policy, to Crew only once, during onboarding or orientation.[48] Crew do not receive personal copies of the sexual harassment policy and McDonald's does not test Crew on their understanding of it.[49] This is contrary to research on effective sexual harassment practices described by Plaintiffs' sexual harassment expert, Louise F. Fitzgerald, Ph.D., which says that anti-harassment policies should be communicated to employees on a regular basis in ways that capture their interest and attention.[50]

McDonald's actively recruits teenagers and high school students to work as Crew, and for many it is their first job. Indeed, McDonald's had a campaign built around recruiting teenagers to work in its stores, which it used in Florida, touting McDonald's as "America's Best First Job."[51] As Dr. Fitzgerald explains, interaction and repetition are particularly important when presenting teenagers with new information, which McDonald's does not do.[52] Further, the policy is written in language considered "very difficult" on various readability scales.[53] The low readability of the policy, combined with the singular, cursory exposure McDonald's provides to its Crew, is particularly problematic given McDonald's practice of hiring teenage Crew.[54]

**2. Florida McOpCo's Sexual Harassment Training Was the Same.** Crew at all Florida McOpCo Restaurants receive standardized online video anti-harassment training.[55] Dr. Fitzgerald identified numerous deficiencies in the Crew training, including that Crew receive sexual harassment training only once during their employment.[56] "Virtually all authorities agree that

---

[48] T.TTT, Sparks Depo.183:10-17; T.SSS, Sanders Depo. 101:23-102:24, Supplemental Errata Sheet, p. 8; T.253 (Fitzgerald Report) p. 25; T.446 (Fitzgerald Corrected Rebuttal Report) p. 5.

[49] T.SSS, Sanders Depo. 109:12-14; T.121; T.HHH, Gonzalez Depo. 135:4-25; T.GGG, Garcia Depo. 163:15-21; T.253 (Fitzgerald Report) pp. 25-26.

[50] T.253 (Fitzgerald Report) p. 26.

[51] T.253 (Fitzgerald Report) p. 26; T.166 at McDonalds_Fairley_0003438-39, 42-43; T.JJJ, Grulkowski Depo. 75:7-16; T.TTT, Sparks Depo. 149:2-24.

[52] T.253 (Fitzgerald Report) p. 26.

[53] T.253 (Fitzgerald Report) p. 23.

[54] T.253 (Fitzergald Report) p. 26; T.446 (Fitzgerald Corrected Rebuttal Report) p. 6.

[55] T.SSS, Sanders Depo. 196:16-24; T.JJJ, Grulkowski Depo. 64:14-16; T.AAA, Collins Depo. 150:1-11.

[56] T.GGG, Garcia Depo. 145:19-146:6; T.253 (Fitzgerald Report) p. 48-49; T.446 (Fitzgerald Corrected Rebuttal Report) p. 8.

harassment training should be periodic, at least yearly."[57] The training is not interactive, provides no opportunity for live discussion, and does not sufficiently focus on sexual harassment itself—indeed, the current training video begins with the point that harassment need not be sexual.[58] The training includes at most a single scenario of customer harassment, although customer harassment has been reported by numerous Crew and is a known risk in the fast food industry.[59] And the most recent training video does not depict any scenarios where a manager is the harasser.[60]

Store-level managers, including GMs, also receive standardized anti-harassment training.[61] This training is likewise deficient because it does not emphasize that failing to escalate harassment complaints to the Ops Consultant or HR Consultant is a terminable offense, even though that is managers' primary job responsibility with respect to harassment complaints.[62] The manager training also lacks sufficient emphasis on sexual harassment, as opposed to other forms of harassment, and it does not provide managers an opportunity to practice handling customer harassment or teach them to recognize when an employee is reporting sexual harassment.[63]

**3. Florida McOpCo's Sexual Harassment Reporting Procedures.** Throughout the relevant class period, Crew at all Florida McOpCo restaurants have been instructed to report sexual harassment to *any* manager on duty, the Ops Consultant for their store, the HR Consultant for their

---

[57] T.253 (Fitzergald Report) p. 48; T.447 (Fitzgerald Reply Report) p. 88-90.

[58] T.253 (Fitzergald Report) pp. 49, 51; T.447 (Fitzgerald Reply Report) p. 90; T. 180; ▮▮▮▮▮ ▮▮▮▮▮ at McDonalds_Fairley_0012204.

[59] T.253 (Fitzgerald Report) p. 50; T.447 (Fitzgerald Reply Report) p. 90; T.6 (▮▮▮▮▮ ▮▮▮▮▮ at McDonalds_Fairley_0002288-2291; T.EE, (Monroe Decl.) ¶ 28; T.Z (Madere Decl.) ¶¶ 23-24; T.FF (Newsome Decl.) ¶ 26; T.TT (Veiga Decl.) ¶¶ 29, 32; T.CC, (Maxwell Decl.) ¶¶ 15-17, 19; T.R (Crenshaw Decl.) ¶ 28; T.MM (Reibsome Decl.) ¶¶ 23, 25; T.P (Conover Decl.) ¶¶ 35-37.

[60] T.253 (Fitzgerald Report) p. 51; T.447 (Fitzgerald Reply Report), p. 90; T.180; 2022 SRIW (not CA/CT) – McOpCo at McDonalds_Fairley_0012204.

[61] T.SSS, Sanders Depo. 196:16-24; T.GGG, Garcia Depo. 145:19-146:6; T.JJJ, Grulkowski Depo. 63:24-64:2; Managerial Training: T.61; T.179; T.181; T.183; T.63; ▮▮▮▮▮ ▮▮▮▮▮

[62] T.253 (Fitzgerald Report) pp. 52-53; T.447 (Fitzgerald Reply Report) p. 90

[63] T.253 (Fitzgerald Report) pp. 53-54; T.447 (Fitzgerald Reply Report) p. 90; T.61.

store's Profit Center, or the HR Consulting Line.[64] Crew may also report harassment to the Business Integrity Line, People Place, and the HR Manager.[65]

All store-level managers in all Florida McOpCo restaurants, including Floor Supervisors, Shift Managers, AGMs, and GMs, are required to report any sexual harassment they become aware of or witness.[66] ███████████████████████████████████████████████

███████████████████████████████████████████[67] ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████[8] The Our Policies guide states that managers who fail to meet these reporting requirements are subject to discipline, up to and including termination.[69] In practice, however, store level managers consistently fail to report incidents of sexual harassment that they witness or that are reported to them.[70] If, despite a manager's failure to report, a Crew's harassment complaint does make it to HR, McDonald's generally takes no steps to discipline the managers who failed to report the harassment or to otherwise enforce the reporting policy.[71] This lack of accountability is critical, because, as McDonald's concedes, if a store-level manager does not escalate a sexual harassment

---

[64] T.164 at McDonalds_Fairley_0009500; T.SSS, Sanders Depo. 138:16-139:12; T.FFF, Flanagan Depo. 188:6-25; T.JJJ, Grulkowski Depo, 129:22-130:13; T.AAA, Collins Depo. 174:18-175:1.

[65] Employee Success Guides: T.224 at McDonalds_Fairley_0001836; T.187 at McDonalds_Fairley_0001859; T.121 at McDonalds_Fairley_0007769.

[66] T.FFF, Flanagan Depo. 188:16-189:9; T.UUU, Vergara Depo. 173:16-23, 175:14-176:9 195:23-196:9, 323:7-18; T.LLL, McGinty Depo. 135:9-14, 246:24-247:24; T.59 at McDonalds_Fairley_0001720; T.164 at McDonalds_Fairley_0009501; T.121 at McDonalds_Fairley_0007770.

[67] T.AAA, Collins Depo. 167:11-22; T.ZZ, Alexander Depo. 101:14-102:6.

[68] T.SSS, Sanders Depo. 140:14-18; T.TTT, Sparks Depo. 141:14-11.

[69] T.59 (Our Policies for Managers) at 25.

[70] T.253 (Fitzgerald Report) pp. 29, 30-44 ("Table A – Escalation Problems Reported by Employee Witnesses Who Provided Declarations and Plaintiffs") and ("Table B – Escalation Problems Described in McDonald's Produced Documents") and documents cited therein, all attached to Arendt Declaration; T.447 (Fitzgerald Reply Report) pp. 11-12; T.SSS, Sanders Depo. 146:1-8.

[71] T.253 (Fitzgerald Report) pp. 29-44, 45 at n .98, 52-53; T.447 (Fitzgerald Reply Report) p. 8; T.FFF, Flanagan Depo. 192:3-7; T.LLL, McGinty Depo. 250:4-6; T.J (South French) at 3 (manager Debbie Turner), 5-7, 31 (GM Jackie Alexander), 18 (GM Pedro Jimenez and manager Ka'Neitra), 24 (manager M.L.); T.I (Park Blvd) at 6-7 (GM Theresa Adkins); T.E (Gibsonia) at 4-5 (GM R.S.) 6-8 (managers J.K., A.T.); T.K (General Managers) at 6-7 (Ops Consultant J.J.).

complaint as outlined in McDonald's policies, then "[w]e wouldn't know about it."[72]

### 4. Sexual Harassment Investigation Training and Procedures. ▮▮▮▮▮



[3] The entire investigation process, including the final decision and its implementation, generally takes place within the relevant patch.[74]

Despite the training, McDonald's systematically fails to enforce these investigation policies and procedures and as a result, complaint, investigation, and outcome documentation is inconsistent and poor, making it difficult to determine who did what to whom and what was done about it.[78] There are no accountability measures. For example, the investigation training

---

[72] T.SSS, Sanders Depo. 146:1-8.

[73] T.SSS, Sanders Depo. 52:13-15, 159:3-21; T.GGG, Garcia Depo. 125:25-126:11; T.79 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0002934-2957, 0002966-2968; T.118 (▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0002808-2810, 0002825-2832; T.119 ▮▮▮▮▮▮▮▮▮▮▮ McDonalds_Fairley_0002853.

[74] T.446 (Fitzgerald Corrected Rebuttal Report) p. 10-11 & n.4.

[75] T.SSS, Sanders Depo. 57:5-12; T.79 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0002925; T.158 (▮▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0008728.

[76] T.SSS, Sanders Depo. 49:24-50:18,168:19-169:12; T.III, Goodwin Depo. 71:12-25; T.AAA, Collins Depo. 161:1-19; T.158 (▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0008787-8790; T.79 ▮▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0002967-69.

[77] T.SSS, Sanders Depo. 169:13-170:11; T.158 (▮▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0008792; T.79 (▮▮▮▮▮▮▮▮▮▮▮ at McDonalds_Fairley_0002973.

[78] T.447 (Fitzgerald Reply Report) p. 7.

emphasizes the importance of documenting witness interviews.[79] However, most HR Consultants and Managers did not take (or don't recall taking) notes during sexual harassment investigations, did not believe that taking notes was important, or failed to put their names on notes.[80] This lack of consistent, complete investigation documentation is unsurprising given that ████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████[81] ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████[2]████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████[83] ██████████████████████████████████████████████████████████████████████ ████████████████████████████████[84] ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████; there was no way for managers, Ops Consultants or other HR Consultants to access those notes or witness statements.[85] ██████████████████████████ ████████████████████████████████████████████████████████████████████████████

---

[79] T.79 (████████████████████████████████████ at McDonalds_Fairley_0002958-2962; T.118 ████ ████████████████████ at McDonalds_Fairley_002823-2824, 0002831-2832.
[80] T. 253 (Fitzgerald Report) p. 58; T.JJJ, Grulkowski Depo. 155:23-156:21; T.FFF, Flanagan Depo. 62:9-17; T.III, Goodwin Depo. 176:14-22; T.LLL, McGinty Depo, 118:12-119:7, 139:2-7, 242:15-21; T.GGG, Garcia Depo. 236:22-237:11; T.UUU, Vergara Depo. 320:18-321:6.
[81] T.JJJ, Grulkowski Depo. 138:8-10.
[82] T.SSS, Sanders Depo. 101:11-15; T.119 (████████████████████████████
[83] T.SSS, Sanders Depo. 141:2-5, 11-15.
[84] T.SSS, Sanders Depo, 141:2-5, 11-15.
[85] T.253 (Fitzgerald Report) p. 61; T.SSS, Sanders Depo. 152:2-21.

███████████████████████████████████████████████ [6]

While McDonald's touts People Place as a resource for reporting and investigating sexual harassment, it does not require HR Consultants to actually use the tool when conducting investigations or hold them accountable for failing to do so.[87] The McOpCo People Officer, ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████.[88] Thus, even with People Place, there is still no central file of investigations or offenders available at the store, patch, or profit center level, and McDonald's does not keep systematic records of those individuals who have been accused of sexual harassment.[89] As Dr. Fitzgerald explains, employers should keep records of harassment complaints to identify patterns of harassment by the same individual, which are relevant to both credibility and disciplinary determinations.[90] McDonald's systematically fails to do this.

**5. Common Insufficient Disciplinary Practices.** ███████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████.[91] Sexual harassment is not among them.[92] Senior HR Director Kenny Sanders testified that there are three levels of discipline—written warning, suspension, and termination—but no specific guidelines for discipline when the sexual harassment

---

[86] T.SSS, Sanders Depo. 152:22-154:3.
[87] T.253 (Fitzgerald Report) pp. 61-65; T.447 (Fitzgerald Reply Report) pp. 7, 61; T.VVV, Zubel Depo. 60:7-61:4, 64:9-65:1.
[88] T.VVV, Zubel Depo. 39: 21-24, 57:23-58:9, 58:20-59:1, 60:5-61:4.
[89] T.253 (Fitzgerald Report) p. 61.
[90] T.446 (Fitzgerald Corrected Rebuttal Report) p. 13.
[91] T.134 (Operational Security Guidelines); T.448 (Operational Security Guidelines).
[92] T.253 (Fitzgerald Report) p. 71; T.134; T.448.

11

policy is violated.[93] McDonald's has no clear or consistent standards with respect to discipline for sexual harassment.[94]

Furthermore, HR Consultants routinely fail to make credibility determinations when investigating sexual harassment.[95] In the absence of admissions of guilt or video evidence, they simply say there is insufficient evidence to determine that the policy has been violated.[96] Even in situations where multiple women complain about the same harasser on multiple occasions, McDonald's finds there is insufficient evidence of harassment.[97] As Dr. Fitzgerald explains, "[w]hen investigating allegations of sexual harassment, the investigator needs to be able to determine whether the accused has previously been found to have engaged in sexual harassment and/or had similar allegations made against him in the past, which may make the current allegations more credible…"[98] But as explained *supra,* Section III.B.4, these records do not exist.

---

[93] T.SSS, Sanders Depo. 51:8-22; T.121 (Employee Success Guide) at McDonalds_Fairley_0007771.

[94] T.253 (Fitzgerald Report) p. 72; T.447 (Fitzgerald Reply Report) pp. 8-9.

[95] T.253 (Fitzgerald Report) p. 66; T.446 (Fitzgerald Corrected Rebuttal Report) pp. 12-13; T.447 (Fitzgerald Reply Report) p. 93.

[96] T.253 (Fitzgerald Report) p. 66; T.446 (Fitzgerald Corrected Rebuttal Report) pp. 12-13

[97] *Compare* T.86 (Policy Reminder from Ops Consultant Y.C. signed by B.N., Mar. 4, 2019) ("Recently there was an allegation towards you regarding a violation of the [sexual harassment policy] … **While there was not significant evidence of the allegation**, we wanted to remind you of McDonald's policy against harassment and discrimination") (emphasis added) *with* T.99 *and* T.96 (A. H. Statement re B.N., Jan. 14, 2019) *and* T.8 (Jamelia Fairley Statement re B.N., Jan. 16, 2019) *and* T.175 (C.O. Statement re B.N., Jan. 13, 2019). *Also compare* T.154 (Disciplinary Action Form signed by T.T.) ("An allegation of sexual harassment of a minor was made against you. **After investigation from HR there was no evidence supporting the allegations.** However, this is a very serious matter, and you need to ensure you are always remaining professional and respectful in the workplace. Due to the allegations, you are required to redo all Safe and Respectful Workplace learning in Campus") (emphasis added) *and* T.I at 9 *with* T.S (Ava Eramo Decl. ¶ 16) ("Travis also spread a rumor around the store that he slept with a female crew member who is a lesbian.") *and* T.153 (December Notes re: Park Blvd employees) at McDonalds_Fairley_0008346 ("D.S.N. (17 yrs old) told J. that T.T had locked her in his car and pulled his penis out and tried to force her into doing stuff to him."), McDonalds_Fairley_0008345 ("T.T. overnight manager. Bugs a bunch of people. Advances towards girls one is a minor, N.T.. N.T told R.X-M. that T.T sent messages on social media that were inappropriate. Should speak to other girls – J.M, J.M.. He made advances towards R.X.-M., put ice cubes down her shirt. Sunday around 6 in the managers office."); *see also* T.F at 9 (manager transferred after no supporting evidence found).

[98] T.253 (Fitzgerald Report) p. 61; T.446 (Fitzgerald Corrected Rebuttal Report) p. 13.

12

Because of this failure to make credibility determinations, McDonald's leaves harassers in place or transfers them to other restaurants.[99] ██████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.[100] As Dr. Fitzgerald explains, the propensity to harass is a relatively stable personality characteristic, not tied to sexual desire for one particular victim.[101] Therefore, this "pass-the-harasser" policy of transferring the accused to another store, with no warning, puts other employees at risk of sexual harassment.

**C.      McDonald's Pattern and Practice of Tolerating Systemic Sexual Harassment.**

**1. Named Plaintiffs and the South French Avenue Restaurant.** Named Plaintiffs Jamelia Fairley and Ashley Reddick's experiences are emblematic of McDonald's persistent pattern or practice of knowingly tolerating sexual harassment. Jamelia worked as a crew member at one of the ten sample stores for which Plaintiffs seek Rule 23(b)(3) certification, South French Avenue in Sanford, Florida, from January 2016 through mid-2022.[102] She is a current employee. At South French, Jamelia and her female co-workers were subjected to unrelenting sexual harassment that McDonald's knew about but ignored. For example, crew member Matthew Capshaw regularly asked Jamelia and other Crew if they "suck[ed] dick" or wore "granny

---

[99] T.253 (Fitzgerald Report) pp. 74-75; T.III, Goodwin Depo. 199:3-202:21 (██████████████████

██████████████, 229:25-231:22 (█████

███████████████████████████; T.LLL, McGinty Depo. 179:3-8,183:16-184:10 (████████

█████████████████████████████████████████████████████████),
171:24-172:3, 174:6-175:23 (███████████████

██████████████████████████████████; T.93 (Email from Y.C. directing transfer of S.A., who was accused of sexual harassment at the Lake Underhill store).
[100] T.JJJ, Grulkowski Depo. 200:2-201:5; T.UUU, Vergara Depo. 250:12-253:5.
[101] T.253 (Fitzgerald Report) p. 75.
[102] T.DDD, Fairley Depo. 97:20-99:4, 100:22-101:1.

13

panties."[103] Jamelia reported Matthew's harassment to manager Jelly, who acknowledged that Matthew "jokes around like that all the time."[104] Managers' complacence enabled Matthew's continued harassment.[105] Finally, Matthew asked how much it would cost to have sex with Jamelia's two-year-old daughter.[106] Jamelia immediately reported this outrageous statement to manager Marry L., but Marry did nothing, even after Matthew repeated the statement to her; Matthew was only disciplined after Jamelia continued to complain, another manager corroborated Jamelia's reports directly to GM Pedro Jimenez, and Matthew confessed.[107] Another crew member, Brian Newton, also frequently accosted Jamelia and other female Crew: he groped Jamelia's groin and ground his crotch on her butt.[108] Jamelia reported Brian's repeated assaults numerous times to manager Thu Tran and GM Pedro, and other Crew corroborated Jamelia's reports to manager Tangie, but to no avail.[109] Ultimately, GM Pedro only allowed Jamelia to write a statement about Brian's harassment after another manager reported *Matthew'*s harassment of Jamelia, which Jamelia had already reported.[110] McDonald's still found "there was not significant evidence to support" the allegations that Brian sexually harassed Crew; rather than disciplining him, McDonald's transferred him to another store where ▮▮▮▮▮▮▮▮

---

[103] T.DDD, Fairley Depo. 137:24-138:21.
[104] T.DDD, Fairley Depo. 139:6-18, 145:10-146:5 (Matthew also asked Jelly explicit questions, yet she never reported him).
[105] T.DDD, Fairley Depo. 139:6-18, 145:10-146:5; T.306, Fairley EEOC Charge ¶8.
[106] T.DDD, Fairley Depo. 142:9-13; T.9 (Fairley Statement); T.KKK, Jimenez Depo. 176:15-23.
[107] T.263; T.9; T.DDD, Fairley Depo. 116:8-25; T.AAA, Collins Depo. 229:11-230:3 (▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; T.87 (1/18/2019 M.C. signed statement).
[108] T.8 (Fairley Statement); T.DDD, Fairley Depo. 57:3-25, 62:25-63:7, 63:14-23 (Brian rubbed himself on female crew); 63:14-23, 102:13-23, ; T.96 (A.H. Statement) (reporting Brian rubbing his groin on C.O. and Jamelia); T.175 (C.O. Statement) (Brian said "I wanna f you").
[109] T.DDD, Fairley Depo. 103:19-104:5, 105:13-24, 110:15-111:2, 116:8-25, 200:12-201:2; T.8 (Fairley Statement); T.96 (A.H. Statement) (corroborating Jamelia's and C.O.'s complaints of Brian's harassment); *see also* T.306, Fairley EEOC Charge ¶5 (manager Marry witnessed Brian grope Jamelia but never took action).
[110] T. DDD, Fairley Depo. 116:8-25.

██████████████████████████████████████████████████████.[111] █████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████.[112]

Plaintiff Ashley Reddick worked as a crew member and crew trainer at South French from fall 2015 to summer 2018, where again, McDonald's failed to protect her and female Crew from harassment by customers and employees. A group of regular customers routinely groped and propositioned Ashley and other Crew, but managers did not intervene.[113] For example, GM Jackie Alexander watched while a "regular" told Ashley that he could make her "cum," but never confronted that customer or others who harassed Ashley and her coworkers.[114] A male Crew, Marlo, showed Ashley a picture of his penis, repeatedly rubbed his genitals on her, and peppered other female Crew with sexualized epithets and requests for personal information and dates.[115] Ashley reported Marlo to three managers, who all failed to act: manager Debbie Turner said she would speak with Marlo about his behavior, but did not; GM Jackie Alexander "[b]lew. . . off" Ashley's complaint that she was uncomfortable working with Marlo; and manager Thu Tran said "okay, Ashley" but took no action after Ashley complained that Marlo rubbed his penis on her.[116]

The South French Summary Chart, Tab J, shows that Plaintiffs' stories are typical: throughout the class period, McDonald's has done nothing to stop rampant harassment of female

---

[111] T.III, Goodwin Depo. 223:6-224:6 (███████████████████████████████
████████████████████████████████; T.449, McDonalds_Fairley_0011611; T.86 (3/4/2019 policy review signed by B.N. and GM S.L.); T.AAA, Collins Depo. 209:12-17 (███████████
███████████████████████████████████; T.J. at 19-21.

[112] T.AAA, Collins Depo. 204:1-205:9, 206:9-24; T.III, Goodwin Depo. 211:4-22, 218:2-8.

[113] T.PPP, Reddick Depo. 44:2-4, 128:7-13.

[114] T.PPP, Reddick Depo.117:2-121:4, 123:1-124:9; *see also* T.467 (Reddick EEOC Charge ¶12) (Ashley also reported customer harassment to GM Jackie, who "did nothing").

[115] T.PPP, Reddick Depo. 86:4-16, 95:13-18, 111:4-116:15.

[116] T.PPP, Reddick Depo. 90:25-91:19, 93:9-23.

Crew. During almost every shift, customers threatened female Crew: "'fuck your boyfriend, I'll fuck you better than him,' 'I'll eat you out right now,' and 'I bet my dick is bigger than your boyfriend's.'"[117] Customers called female Crew sexualized epithets, forcibly kissed and grabbed them, asked them for sex, and exposed their genitals.[118] Multiple managers witnessed or received reports of customer harassment but did not intervene.[119] In 2019, several female Crew reported sexual harassment by regular customers through an HR survey and via a "listening session" with HR Consultant Goodwin.[120] Yet Goodwin could not recall taking any specific action to prevent further harassment by customers, and it does not appear she even discussed the issue with Ops Consultant Collins or GMs Jimenez and Alexander.[121]

Female South French Crew were also tormented by fellow Crew. For example, a group of three coworkers harassed as a team: they ground their crotches against female Crew, grabbed their butts, and described the sex acts they wanted to perform.[122] Although the harassment was reported to or witnessed by multiple managers, including GMs Alexander and Jimenez, Thu Tran, Tangie

---

[117] T.DD (Mitchell Decl.) ¶19.

[118] T.PPP, Reddick Depo. 117:16-121:18, 122:17-123:5; T.MMM, Mitchell Depo. 33:10-13, 132:5-8; T.DD (Mitchell Decl.) ¶19; T.Z (Madere Decl.) ¶¶23-24; T.58 (Harassment Allegation Investigation at French).

[119] T.MMM, Mitchell Depo. 243:4-14 (manager Xavier saying customer is "probably just talking crap" after report); T.DD (Mitchell Decl.) ¶21 (manager Thu responding "[i]t's okay, he's not going to do anything"); T.Z (Madere Decl.) ¶24; *see also* T.KKK, Jimenez Depo. 189:7-18 ( █████████████ .

[120] T.58 (Listening session notes: "there were several employees who expressed concern about the inappropriate behavior of a few male customers who frequently visit the restaurant;" Harassment allegation of E.J.: "Claims some of the men will say things like if they were a little younger, they would date her… Claims they will call her baby… Claims she has heard the men say these things to other girls too;" Harassment allegation of A.B.: "Claims one man leaned over the counter and kissed her cheek""); T.471 (anonymized employee responses from 4/24/2019 RAP session) at McDonalds_Fairley_0006495.

[121] T.AAA, Collins Depo. 259:15-25, 260:15-18 ( ████████████████████████ ; T.KKK, Jimenez Depo. 191:1-7, 193:13-21 (same); T.ZZ, Alexander Depo. 197:21-198:10; T.III, Goodwin Depo. 247:6-15 ( ████████████████████████ .

[122] T.DD (Mitchell Decl.) ¶13; *see also* T.MMM, Mitchell Depo. 185:20-186:10, 188:12-20, 222:18-223:1; *see generally* T.J (South French Summary Chart); T.115 (S.G. statement) (harasser repeatedly called crew member "wet lips;" sexually assaulted her offsite); T.Z (Madere Decl.) ¶¶16, 20 (Crew leered at female Crew, made obscene comments to and about female Crew); T.188 (Tanjanika Wright EEOC Charge).

16

Jackson, and Xavier Cienfuegos, McDonald's did nothing.[123] Even managers preyed upon Crew. GM Jimenez verbally harassed female Crew, commenting on their bodies and hitting on them.[124] Lower-level managers followed suit, inappropriately touching and making sexual comments.[125]

**2. Other Sample Stores.** South French is not unique. As set forth in Summary Charts for each Rule 23(b)(3) sample store, Tabs A-J, McDonald's knowingly tolerated pervasive sexual harassment throughout Florida McOpCo. For example, at **Four Corners**, managers harassed female Crew every shift with comments like she "might be pregnant because her breasts looked bigger," and sexual propositions; one manager was only terminated after he took a photo of a teenage female Crew's butt and circulated it with a text about her "fatty ass."[126] The store's GM from October 2019 to May 2021, Hemraj Naitram, slapped female Crew's butts, hugged and kissed them, made vulgar sexual overtures, and called them demeaning names like "babe."[127] ██████████████████████████████████████████ but produced no evidence that he was ever sanctioned, even after a female Crew filed an EEOC charge in April 2021 regarding his harassment.[128] He received more coaching and unspecified discipline after yet

---

[123] T.188 (Tanjanika Wright EEOC charge) ¶8 ("I complained about [groping and forceful sexual touching by crew] to General Manager Jackie, but she did not do anything, and the harassment continues."); T.DD (Mitchell Decl.) ¶¶14-15 (Jakesha reported that fellow Crew threatened to choke her, manager Thu dismissed it; Tangie dismissed later reports; Xavier appeared to engage but never followed up on reports); T.DDD, Fairley Depo. 57:3-25 (Brian Newton inappropriately rubbed female Crew Samantha, who reported this harassment to GM Pedro; no evidence that Pedro addressed this harassment).

[124] T.DD (Mitchell Decl.) ¶18 (GM Pedro commented "You might need a bigger shirt, I can see everything," but never helped her find a bigger shirt); T.Z (Madere Decl.) ¶¶21-22 (GM Pedro made frequent inappropriate comments about Alexis's appearance).

[125] T.DD (Mitchell Decl.) ¶18; T.468 (Fairley Statement); T.188 (Tanjanika Wright EEOC Charge); T.106 (X.C. statement); T.LLL, McGinty Depo. 144:5-145:12, 156:19-157:23.

[126] T.387 (1/27/2016 T.R. statement, 1/27/2016 W. "A." B. statement; 1/27/2016 J. "B." M. statement); T.U (Garcia Decl.) ¶¶16-18, 21-24; T.391 (5/31/2018 B.L. statement); T.391 (6/1/2018 C. statement); T.382 (6/1/2018 email).T.U (Garcia Decl.)¶24; T.449, McDonalds_Fairley_0011611 row 90-93; T.386 (6/12/2018 B.L statement).

[127] T.113 (6/26/2017 conversation recap with [GM] H.N. by Ops Consultant); T.W (Lomerson Decl.) ¶¶17-19; T.110 (04/19/2021 A.A. EEOC Charge); T.362 (4/2/2021 People Place message to Mark McGinty).

[128] T.112 (2/1/2017 H.N. Mid-Year Update); T.113 (6/26/2017 Conversation Recap with General Manager H.N. by Ops Consultant S.H.); T.110 (04/19/2021 A.A. EEOC Charge).

another Crew reported him (also in April 2021) for groping her and pulling her hand to his groin, yet ████████████████████████████████████ [129]

When Hemraj was transferred to **Ovation**, where he served as GM from May 2021 to May 2022, he continued to abuse female Crew.[130] Before Hemraj, Frank Lavista, the Ovation GM from March 2019 to February 2020, also made sexual comments and propositioned female Crew.[131] He had a sexual relationship with a subordinate, and pressured a female Crew into giving him oral sex, which Ovation employees knew about.[132] Other managers and Crew also victimized female Crew.[133] Crew reported this harassment to store managers and Ops Consultant Danny Martinez, who did nothing.[134] GM Frank even bragged that his supervisors knew of his behavior but covered for him because of his store profits.[135]

When Frank served as GM at **Hobo Junction** from May 2021 through at least August 2022, he continued making explicit comments to female Crew.[136] The Hobo Junction GM before Frank, Desmond Black (December 2016 to April 2021), also harassed female Crew, grinding his groin against one woman and exposing his penis to her.[137] Other managers similarly abused female

---

[129] T.LLL, McGinty Depo. 184:7-14; T.238 (Y.O. (4/1/2021)); T.VVV, Zubel Depo. 68:6-78:3, 92:6-93:8.
[130] T.JJ (Quinones Decl.) ¶24 ("He would always call me 'princess,' which made me uncomfortable. He also called many of my female coworkers 'baby.'").
[131] T.JJ (Quinones Decl.) ¶¶15-20.
[132] T.JJ (Quinones Decl.) ¶¶21-22; T.GG (Nocito Decl.) ¶21; T.NNN, Nocito Depo. 137:7-17.
[133] T.399 at McDonalds _Fairley_0010609 (11/21/2017 M.C. Complaint) (manager screamed at female crew to move their "whore's ass[es]"); T.XX (Woodard Decl.) ¶¶16-20, 27 (crew members groped and made inappropriate comments to Isabelle in front of managers); T.GG, (Nocito Decl.) ¶¶20-21, 34 (custodian talked about "sucking the meat off of" female Crew); T.NNN, Nocito Depo. 127:15-128:5.
[134] T.JJ (Quinones Decl.) ¶¶26-29; T.GG (Nocito Decl.) ¶¶20, 35; T.NNN, Nocito Depo. 166:21-24, 167:5-19; T.GG (Nocito Decl. Ex. A, Nov. 10 text conversation with GM Joska) (GM Joska was notified that custodian had repeatedly touched and made explicit comments to female Crew, yet she did nothing).
[135] T.JJ (Quinones Decl.) ¶¶28-29.
[136] T.NNN, Nocito Depo. 163:1-8; T.GG (Nocito Decl.) ¶¶27-29 (GM Frank asked "would you tap that?" about female Crew; propositioned female Crew for sex).
[137] T.307 at McDonalds_Fairley_0008412 (11/03/2020 Court Complaint ¶¶8-11, 17).

Crew, often within earshot of other Crew and managers.[138] Even though above-store managers learned of the harassment through reports and a later lawsuit about GM Desmond, there is no evidence that any discipline was imposed on harassers.[139] Customers also verbally harassed female Crew but managers rarely addressed this, even when they observed it or it was reported to them.[140]

At **Park Boulevard**, Crew made sexualized comments and jokes to female Crew, often at such volume that anyone working nearby, including managers, could hear.[141] They also put ice cubes down female Crew's uniforms, smacked their butts, and repeatedly questioned female Crew about their sexual practices over phone calls, texts, and social media.[142] Female Crew reported the ongoing harassment to managers who did nothing.[143] The Park Boulevard GM, Armando Ortega-Rodriguez, made obscene sexual comments.[144] Lower-level managers and Crew similarly harassed female Crew with impunity.[145] Managers also heard customers make comments about female

---

[138] T.WW (Williams Decl.) ¶¶16-20, 22 (manager repeatedly groped and winked at her and other female Crew, asked these same Crew to send him photos of themselves); T.394 (10/09/2018 S.C. Complaint); T.307 at McDonalds_Fairley_0008412 (11/03/2020 Court Complaint ¶¶8-12); T.Y (Lynch Decl.) ¶¶17-20 (inappropriately rubbed by Operations Consultant Joe Edholm as well as lower-level managers); T.346 (5/28/20 T. J-V. Complaint) (manager G. told female crew that his "dick [was] hard" from her presence).

[139] T.346 (5/28/20 T. J-V Complaint); T.350 (6/3/2020 email from Ops Consultant J.E. to HR Consultant A.T.) (manager G. merely transferred to another McDonald's restaurant after telling crew member that she had given him an erection); *see also* T.307 at McDonalds_Fairley_0008413 (11/03/2020 Court Complaint ¶18).

[140] T.WW (Lynch Decl.) ¶23 (managers "acted like it was normal").

[141] T.CCC, Eramo Depo. 158:16-20; T.S (Eramo Decl.) ¶¶15-19; T.BB (Mata Decl.) ¶¶24-25, 36-38.

[142] T.BB (Mata Decl.) ¶¶20, 26-30; T.S (Eramo Decl.) ¶¶17-19.

[143] T.S (Eramo Decl.) ¶¶19-20; T.CCC, Eramo Depo. 113:21-114:1; T.BB (Mata Decl.) ¶¶36, 39 (manager told Alisha to "take a smoke break and go back to work" after she reported a coworker asking her, "when are you gonna let me fuck?").

[144] T.S (Eramo Decl.) ¶¶21, 26-27 (GM Armando proclaimed his "dick is bigger" than a coworker's); T.CCC, Eramo Depo. 125:5-8.

[145] T.S (Eramo Decl.) ¶¶24-25 (reported harassment by manager Julie Jones to HR after repeated prior reports to GM Theresa Adkins went unaddressed; no evidence GM Theresa was ever disciplined for failure to follow up); T.CCC, Eramo Depo. 132:16-21; T.153 (12/13/2021 notes re: Park Blvd. employees); T.154 (T.T. signed statement); T.216 (1/19/2016 Case Listing Report); T.BB (Mata Decl.) ¶34 (GM Il'Ya Yatsenko blamed Alisha Mata for giving out her phone number to harasser and never resolved her reports of sexual harassment); T.355 at McDonalds_Fairley_0010081 (9/4/2020 S.C. Complaint); T.354 at McDonalds_Fairley_0010079 (9/4/2020 A.S. Complaint).

19

Crew's bodies and request sex, but did nothing.[146]

GM Ortega-Rodriguez also served as the GM at **Ellenton**, where he verbally harassed, groped, and leered at female Crew without consequences, even though the harassment was reported to HR.[147] Lower-level store managers sexually propositioned teenage Crew and forcibly kissed them, and other Crew made sexualized comments about female Crew as well as sexual noises and comments over the headsets, which managers and other Crew could hear.[148] Yet this behavior, even when directly witnessed by or reported to store managers and above-store management, was only rarely investigated or disciplined.[149]

At **Osceola Village**, managers and Crew groped female Crew; loudly commented on female Crew's bodies such that other Crew could hear; and voiced their sexual fantasies.[150] Multiple Crew reported to store managers and above-store management, including HR, and managers witnesses some of the harassment, but McDonald's took no steps to investigate or stop the harassment.[151] Managers also observed or learned of explicit comments by customers to female

---

[146] T.BB (Mata Decl.) ¶¶41-43.

[147] T.BBB, Cora Depo. 114:9-12, 119:3-5, 124:7-9; T.Q (Cora Decl.) ¶¶14-19 (Ebony Cora never heard back from HR after reporting GM Armando; she was soon terminated).

[148] T.BBB, Cora Depo. 159:1-6, 160:18-23, 161:10-24, 162:19-20, 165:1-14 (no evidence offending Crew were disciplined); T.Q (Cora Decl.) ¶20; T.PP (Rozier Decl.) ¶¶16-20, 24 (male Crew possessively asserted "Sa'Mya is my girlfriend" when she was not; Crew made explicit comments to many female Crew in the store; Crew told teenaged worker he "bet that pussy is pretty" in front of a manager, who did nothing); T.410 (5/1/2019 text from Y. to GM L.O.); T.T (Fiuza Decl.) ¶¶16, 21, 24; *see also* T.435 at McDonalds_Fairley_0011029 (O.R. statement) (two male crew members tried to "run a train on," or gang rape, her, restrained and choked her in the break room before she fled); T.374 at McDonalds_Fairley_0010341 (11/20/2021 B.J. statement).

[149] T.435 (O.R. 12/21/2019 or 12/24/2019 statement), (12/27/2019 B. W-C statement), (12/27/2019 Y.S. statement), (12/27/2019 translated L.M. statement); T.374 at McDonalds_Fairley_0010341 (11/20/2021 B.J. statement); T.449; T.Q (Cora Decl.) ¶¶15, 17; T.BBB, Cora Depo. 128:14-16, 129:18-20.

[150] T.TT (Veiga Decl.) ¶¶13-14, 19-23; T.NN (Roman Decl.) ¶¶15-23; T.QQQ, Roman Depo. 88:9-16; T.337 at McDonalds_Fairley_0009432 (11/17/2017 M. P-B statement); T.L (Ausa Decl.) ¶14-18.

[151] T.337 at McDonalds_Fairley_0009434 (11/18/2017 notes re: investigation of M's complaint) (manager texted female crew member that he dreamed of her "on your knees taking it all over your face," no evidence this manager was disciplined); T.NN, (Roman Decl.) ¶¶25-30 (several female Crew reported manager Eder for groping and sexual comments, including reporting to GM Irmary, but no evidence of preventative action); T.LLL, McGinty Depo. 167:22-168:8, 169:2-8; T.152 (3/23/2021 People Place message to M.M.).

20

Crew, but again, failed to address them.[152]

At **Debary**, Crew and at least one manager groped female Crew, commented on their breasts, body shape, and underwear, and interrogated female Crew about their sex lives.[153] When female Crew repeatedly reported this harassment to multiple managers, managers did not intervene to stop the harassers and only rarely raised these reports to HR.[154]

At **14th Street**, Crew rubbed female Crew's backs, groped their butts, and tried to kiss them and touch their breasts.[155] In most cases, managers failed to take action even when the harassment was reported to them.[156] Customers also made vulgar comments to female Crew, and managers who witnessed this harassment sometimes encouraged it.[157]

At **Gibsonia**, Crew and managers physically harassed female Crew, slapping their butts and making inappropriate comments so loudly they could be overheard by all workers in the

---

[152] T.TT (Veiga Decl.) ¶¶29-34 (customers made sexual comments to female Crew and asked "inappropriate questions such as when I got off, what days I worked, what school I attended, how old I was, and where I lived"; GM Felipe just said "oh, that's weird" when reported); T.L (Ausa Decl.) ¶27; T.FF (Newsome Decl.) ¶¶15-16, 26 ("Customers would frequently make sexual statements to me [a teenager]. One customer would always ask for me when he came to the restaurant, and would grab my wrist when I handed food to him. . . . I told my managers most times that these incidents happened. . . . but . . . Because we dealt with it so frequently, they seemed desensitized to it").

[153] T.OOO, Rapuano Depo. 107:14-22; 148:3-16, 142:20-143:22, 151:17-152:9; T.LL (Rapuano Decl.) ¶¶18-19, 24, 29-30, 32 (female Crew repeatedly targeted for groping and explicit inquiries; witnessed Crew proposition underage female Crew for sex acts).

[154] T.OOO, Rapuano Depo. 118:18-119:21, 121:18-19, 126:17-128:3, 130:8-131:14, 132:4-17, 132:19-21 (reported Crew making graphic sexual comments to female teenage Crew to three different managers, including GM Stacey Heindorn, but no manager took action to stop it); T.LL (Rapuano Decl.) ¶¶21-28; T.364.

[155] T.V (Godwin Decl.) ¶¶22-31 (in addition to physical harassment, store custodian taunted lesbian worker he could "turn her straight," aggressively "hit on" many women at the store, including one female manager); T.396 (6/9/2017 S.H. statement); T.VV (Wiggins Decl.) ¶¶12-17 (manager denied her opportunity to make a written report about being groped by two male Crew and hearing their explicit comments).

[156] T.396 (6/9/2017 S.H. statement); T.449, McDonalds_Fairley_0011611 row 28; T.VV (Wiggins Decl.) ¶¶14-17; T.V (Godwin Decl.) ¶¶26, 29-32.

[157] T.UU (Washburn Decl.) ¶¶15-16 (manager set customer up to ask for her number); T.HH (Ortiz Decl.) ¶¶20-21, 28-30.

21

vicinity.[158] One Crew said he wanted to "smash" a minor; though she reported to above-store management and cited managers who had heard his abuse, but who did nothing, McDonald's never helped her.[159] No harassers were disciplined for their actions, and managers and Crew continued to proposition, grope, and say sexual things to female Crew, even though employees continued to report.[160] Customers also harassed female Crew with impunity and with managers' knowledge.[161]

**3. Other Florida McOpCo Stores.** McDonald's tolerance of sexual harassment is not confined to the ten sample stores. *See, e.g.*, General Manager Summary Chart, Tab K; Class Member Declarations, Tabs L-YY. For example, at Spacecoast, multiple managers groped, leered at, and made explicit comments to female Crew; the store GM, Rafael Colon, observed and fielded reports about this harassment but did nothing.[162] At Curry Ford, managers inappropriately touched female Crew, failed to address sexual harassment complaints from Crew absent repeated corroboration or harasser confession, and ignored reports of customer harassment.[163] At Unity, GM H. "E" B. groped female Crew and loudly made sexual jokes, as did the GM who succeeded him.[164] Other managers acknowledged that this behavior was inappropriate, but failed to protect

---

[158] T.OO (Romo Decl.) ¶¶15-17, 21-24, 27, 31; T.MM (Reibsome Decl.) ¶¶32, 35-37 (Manager who smacked female Crew's butts with spatula declared he was above rules; Crew described fantasies of female Crew's breasts).

[159] T.345 at McDonalds_Fairley_0009980 (2/14/2020 People Place report); T.HHH, Gonzalez Depo. 251:4-252:5; T.GGG, Garcia Depo. 254:25-255:13; T.MM, (Reibsome Decl.) ¶¶36-37.

[160] T.OO (Romo Decl.) ¶¶19, 28, 31 (when teenaged female Crew reported that manager had sent her explicit messages, another manager told her to delete them); T.MM (Reibsome Decl.) ¶38-39.

[161] T.MM (Reibsome Decl.) ¶¶23-28 (GM Ruth essentially told Mallory that customer harassment "is what it is"); T.OO (Romo Decl.) ¶¶35-38; T.RRR, Romo Depo. 113:25-114:12, 115:3-8.

[162] T.RR (Sparrow Decl.) ¶¶20-24 (GM Colon said "no matter what [you] do, do not call HR" when Paula Sparrow reported harassment); T.X (Cely Decl.) ¶¶16-17.

[163] T.KK (Quintero Decl.) ¶¶14-23; T.329 (S.M. R. policy review) (female Crew reported serial sexual harassment by S.M.R..; "no evidence" found to support allegations); *see, e.g.*, T.353 (J.V. July 2020 statement); T.352 (J.M. July 2020 statement); T.351 (L.F. July 2020 statement); T.449 ( ████████████████████████████████████████ ).

[164] T.EE (Monroe Decl.) ¶¶17-19; T.240 at McDonalds_Fairley_0012369 (J.K. People Place entry); T.192 at row 5 (report to HR that GM E. had been groping female crew member starting in late 2020; offered her $200 to touch his penis in spring 2021 and continued to proposition her in the following months).

Crew.[165] Customers and Crew also made sexualized comments to many female Crew at Unity, which managers knew about but generally dismissed.[166] And at Palmetto, managers laughed off serial sexual comments and overtures by Crew and customers.[167]

> **D.    McDonald's Deliberately Ignores that Female Crew Are Subjected to Sexual Harassment with No Systemic Remedy.**

Dr. Fitzgerald explains that organizational climate has the greatest impact on allowing or preventing sexual harassment from occurring in the workplace.[168] She analyzed McDonald's sexual harassment policies, sexual harassment training, documents related to sexual harassment investigations, and, where available, documents reflecting the outcomes of those investigations and determined that McDonalds' policies and practices are ineffective to create an organizational climate that would discourage harassment.[169] She explains that effective harassment prevention and remediation programs must include the following elements: (1) "A clear and well publicized policy; (2) an accessible grievance procedure with multiple avenues to complain designed to encourage victims to come forward; (3) effective education and training (both at hiring and regularly thereafter); (4) a prompt, thorough, and well-documented investigative process conducted by suitably trained investigators; and (5) remedial action, including clear and progressive disciplinary measures that are consistently enforced, as well as actions that make the victim whole and re-integrate her into the workplace, if possible."[170] But an anti-harassment

---

[165] T.EE (Monroe Decl.) ¶¶21-22; T.192 at row 2 (the Crew being propositioned by GM E. reported to Ops Consultant J.J. in September 2021, who said he would help protect her but never did).

[166] T.EE (Monroe Decl.) ¶¶21-22; *see also* T.II (Pratt Decl.) ¶¶12-19, 26-28.

[167] T.PP (Rozier Decl.) ¶¶23-28; *see also* T.296 (06/11/2018 S.K. case listing).

[168] *See* T.253 (Fitzergald Report) pp. 15, 19-20.

[169] *Id.* p. 83; T.447 (Fitzgerald Reply Report) pp. 5-10; T.EEE, Fitzgerald Depo., 27:14-28:6.

[170] T.253 (Fitzgerald Report) p. 19.

program including these elements is still not sufficient without "visible leadership and embedded accountability" to ensure the elements are implemented and enforced.[171]

As described above in Section III.B and in Dr. Fitzgerald's Reports, McDonald's policies and procedures are systemically insufficient to prevent and remediate sexual harassment in McOpCo restaurants. McDonald's lacks every element of a successful harassment and remediation program because it fails to: sufficiently emphasize the sexual harassment policy to Crew; provide sufficient training on the sexual harassment policy to Crew and store level managers; enforce its manager reporting and escalation requirements through training, systemic accountability measures, and discipline; require consistent documentation and record-keeping when investigating harassment complaints; maintain and use central repositories that would aid in those investigations; make credibility determinations when investigating sexual harassment complaints; track individuals who have been accused of or found to have violated the sexual harassment policy; maintain and implement progressive discipline for violations of the sexual harassment policy; and warn other restaurants when accused harassers are transferred to new stores.[172] These common systemic deficiencies apply to all Florida McOpCo restaurants.

McDonald's Corp's Board of Directors is aware the company has a systemic sexual harassment problem. ███████████████████████████

██████████████████████████████████████████

████████████████████[173]████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[171] T.253 (Fitzgerald Report) p. 20.
[172] T253 (Fitzgerald Report) p. 83.
[173] T.450 (June 24, 2019 Memo re Review of Company's Efforts to Prevent Sexual Harassment) at McDonalds_Fairley_0011642.

████████████████[174]███████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████[175] One author of the June 2019 memo, former Chief People Officer David Fairhurst, the top HR executive at McDonald's, was himself the subject of multiple sexual harassment complaints which were reported to the Board. *See In re McDonald's Corp. Stockholder Derivative Litig.,* 291 A.3d 652, 666 (Del. Ch. 2023). On October 17, 2019, the Board terminated then-CEO, Steve Easterbrook, after learning that he had engaged in a prohibited relationship with an employee. *Id.* at 669. Shortly thereafter, the Board also terminated Fairhurst for cause after finding he had sexually harassed employees on multiple occasions. *Id.* at 662-663. Subsequent shareholder litigation revealed that "HR leaders under Mr. Easterbrook ignored complaints about the conduct of co-workers and executives" and two former McDonald's executives reported "the environment in HR during Fairhurst's tenure made employees feel as if they had little recourse for reporting bad behavior." *Id.* at 665. While the shareholder suit was ultimately dismissed, the Delaware Chancery Court found that, "[w]hen the head of the human resources function has repeatedly engaged in sexual harassment, that is the most vibrant of red flags regarding a potential problem with sexual harassment and misconduct." *Id.* at 662.

This casual attitude toward sexual harassment remediation and prevention trickles down through McDonald's Human Resources department, as evidenced by the testimony of Senior HR



[174] T.453 (████████████████████████████████████████████████ at McDonalds_Fairley_0012144.
[175] T.451 (█████████████████████████████████████████████ ██████████████████████████ at McDonalds_Fairley_0011651 ███████████████████████████ ██████████████████████████████████████████; T.452 ███████████████████████████████████████████████), at McDonalds_Fairley_0012104 (███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████

Director Sanders ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ to the HR Consultants who do not make credibility determinations or adequately document their sexual harassment investigations.[176]

After this lawsuit was filed, McDonald's announced new "Global Brand Standards," ██████ ████████████████████████████ ostensibly to combat sexual harassment.[177] ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████.[178] But this was a publicity measure rather than an accountability tool. ██████████████████████████████████████

████████████████████████████[179]███████████████

████████████████████████████████████████████████

███████[180]████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████[181]███████████████████████████████████

██████████████████████████████[182]

---

[176] T.SSS, Sanders Depo. 88:2-4; T.JJJ, Grulkowski Depo. 138:8-10; T.FFF, Flanagan Depo., 79:17-80:1; T.253 (Fitzgerald Report) pp. 55-60.
[177] T.267; T.SSS, Sanders Depo. 186:20-22, 193:9-11; T.104 (████████████████████████████ .
[178] T.FFF, Flanagan Depo., 150:23-152:1; T.104 at 16-18; T.AAA, Collins Depo. 75:14-17.
[179] T.253 (Fitzgerald Report) p. 79.
[180] T.253 (Fitzgerald Report) p. 79.
[181] T.SSS, Sanders Depo. 199:3-200:19.
[182] T.FFF, Flanagan Depo. 165:8-166:11, 167:8-12.

Thus, female Crew at all Florida McOpCo restaurants are at risk because McDonald's lacks an effective harassment prevention and remediation program, corporate leadership that espouses anti-harassing behaviors, and reliable accountability measures.

## III.     THE PROPOSED CLASSES SHOULD BE CERTIFIED

### A.     Standard for Class Certification.

Plaintiffs must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and one of the categories in Rule 23(b). Hybrid, or "divided certification"—where the court certifies a Rule 23(b)(2) class for the portion of the case seeking equitable relief and a separate Rule 23(b)(3) class for the portion of the case seeking damages—is appropriate in Title VII discrimination cases. *Chicago Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chicago,* 797 F.3d 426, 442 (7th Cir. 2015). A class with respect to a particular issue, such as whether an employer's policy is discriminatory, may be certified under Rule 23(c)(4). *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 672 F.3d 482, 491 (7th Cir. 2012).

While Plaintiffs bear the burden of showing, by a preponderance of the evidence, that the proposed class meets the requirements of Rule 23, they do not have to prove the merits of their case. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23 does not allow courts "to engage in free-ranging merits inquiries at the certification stage." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015).

### B.     Cases Alleging a Pattern or Practice of Harassment Are Commonly Certified and Tried Using the Multi-phase *Teamsters* Model.

This case is similar to other pattern or practice harassment cases that have been certified and tried. "The existence of a company's policy of tolerating sexual harassment is the basis for pattern or practice liability." *Warnell v. Ford Motor Co,* 189 F.R.D. 383, 387 (N.D. Ill. 1999), *citing EEOC v. Mitsubishi Motor Mfg. of Am., Inc.,* 990 F. Supp. 1059, 1074 (C.D. Ill. 1998). In

*Warnell,* the court certified a class of women working in two large plants who alleged, as here, that their employer's HR policies, including its complaint, investigative, and discipline procedures, were inadequate to prevent the pervasive sexual harassment to which they were subjected. *Id.*, 189 F.R.D. at 385-86. The court held that certification was proper even when the "alleged harassment involves disparate conduct, perpetrators, victims, and surrounding circumstances in a decentralized employment context, causing different harms in different degrees*"* because "the landscape of the total work environment, rather than the subjective experiences of each individual claimant, is the focus for establishing a pattern or practice of unwelcome sexual harassment which is severe and pervasive." *Id.* at 387-90, *citing Mitsubishi,* 990 F. Supp. at 1074. Recently, a court certified a sexual harassment case against a McDonald's franchisee, explaining "Plaintiffs' claims rest upon harm caused by many actions that together created a hostile work environment for women, not upon harm resulting from discrete decisions about their jobs." *Ries v. McDonald's USA, LLC*, 2021 WL 6133437, *14 (W.D. Mich. 2021). *See also Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 218 (N.D. Ill. 2014) (certifying class for racial harassment; noting "A hostile work environment may be experienced differently from one person to the next, but it is nonetheless 'a single unlawful practice under Title VII'") (citation omitted).

Ultimately, class certification is appropriate in such cases because the focus is on the employer's conduct in failing to prevent harassment, rather than the conduct of individual harassers: "A defendant need not actively adhere to a policy of discrimination to create a hostile work environment, which often is as much a product of what an employer tolerates as what it promotes. If the plaintiffs present significant proof "that the 'landscape of the total work environment' was hostile towards the class," the only "common policy" they need to evince is the defendants' failure to take "remedial action 'reasonably calculated to end the harassment.'" *Brown*

28

*v. Nucor Corp.*, 2012 WL 12146620, at \*23 (D.S.C. Sept. 11, 2012). "The two types of conduct, the employer's tolerance and the harasser's behavior, cannot be artificially separated. It is the employer's tolerance of the individual acts of sexual harassment that make the continuation of such harassment against individuals possible." *Mitsubishi,* 990 F. Supp. at 1081.[183]

Sexual harassment class cases are often certified and tried using the two-phase framework the Supreme Court established for Title VII pattern or practice government enforcement actions in *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 360 (1977), and later extended to private class actions in *Cooper v. Fed. Rsr. v. Bank of Richmond,* 467 U.S. 867, 875-76, n.9 (1984). In phase I, plaintiffs prove a pattern or practice of discrimination, that discrimination "was the company's standard operating procedure—the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336, 360. The inquiry is not individualized, nor does it demand evidence that every employee was victimized. *Id.* at 360. If pattern or practice liability is established, the court awards injunctive relief, and then conducts phase II "additional proceedings" to assess the impact of the discrimination on individual employees and award damages. *Id*. at 361; *see, e.g. E.E.O.C. v. Int'l Profit Assocs., Inc.,* 2007 WL 3120069, at \*17 (N.D. Ill. Oct. 23, 2007) (if plaintiff proves at phase I that sexual harassment "taken as a whole, was so severe or pervasive that a reasonable woman would find the work environment … to be hostile or abusive" and that the employer "knew or should have known that regular or systematic sexual harassment was occurring in its offices but did not take adequate steps to address the problem" the court will award prospective relief and

---

[183] *See also Brown v. Cook Cnty.*, 332 F.R.D. 229, 233-37, 240-41, 249 (N.D. Ill. 2019) (certifying sexual harassment class where a common question was whether defendants took sufficient remedial action). *Cf. Howard v. Cook Cnty. Sheriff's Off.,* 989 F.3d 587, 609 (7th Cir. 2021) (leaving open whether class certification would be proper to determine if "defendants' tolerance of … sexual harassment amounts to a pattern or practice of discrimination").

29

proceed to phase II to determine individual damages).[184] Thus, courts try sexual harassment class actions in phases, with the first phase focused on the employer's liability for tolerating sexual harassment and plaintiffs' corresponding entitlement to injunctive relief, and the second phase focused on issues regarding each class member's individual entitlement to damages.[185]

### C.     The Proposed Classes.

This Court should certify this hostile environment sexual harassment pattern or practice case to be tried on a two-phase *Teamsters* model under FRCP 23(b)(2) for injunctive relief, FRCP 23(b)(3) for individual damages in ten sample stores, and FRCP 23(c)(4) on the issue of whether McDonald's is liable for a pattern or practice of tolerating sexual harassment, and specifically whether McDonald's had actual or constructive notice of systemic harassment but failed to take adequate remedial steps to address the systemic problem. Plaintiffs seek to certify the following:

**The Rule 23(c)(4) Class:** "All female Crew Members and Crew Trainers who work or worked at any Florida McOpCo restaurant during the period between April 10, 2016 and the time of trial."

**The Rule 23(b)(2) Subclass:** "All female Crew Members and Crew Trainers who currently work at a Florida McOpCo restaurant."

---

[184] Courts differ on the precise showing necessary to award individual damages in phase II proceedings, but generally agree that the issue of whether the harassment was subjectively offensive and unwelcome is reserved for phase II. *Compare, e.g., Mitsubishi,* 990 F. Supp. at 1077-82 *with Int'l Profit Assocs.*, 2007 WL 3120069, at *17. Plaintiffs suggest that after class certification the Court permit the parties to brief their respective views on this issue.

[185] *See, e.g., Neal v. Dir. D.C. Dept. of Corr.,* No 92-2420 (D.D.C. Dec. 23, 1994) (unpublished, *see* T.470) (certifying class of 1,500 women working in nine facilities); *Neal v. Dir. D.C. Dep't of Corr.,* 1995 WL 517248 (D.D.C. Aug. 9, 1995) (jury found employer tolerated pattern or practice of harassment) (reversed due to evidentiary errors by trial court, *Bonds v. Dist. of Columbia*, 93 F.3d 801 (D.C. Cir. 1996)); *Neal v. Dir. D.C. Dept. of Corr.,* 1995 WL 517244 (D.D.C. Aug. 9, 1995) (issuing class wide injunctive relief to remedy defects in investigation and discipline procedure); *Neal v. Dir. D.C. Dept. of Corr.,* 1995 WL 517246 (D.D.C. Aug. 9, 1995) (detailed plan for phase II proceedings); *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657 (D. Minn. 1991) (certifying sex harassment class); *Jenson v. Eveleth Taconite*, 824 F. Supp. 847, 888 (D. Minn. 1993) (phase I trial found pattern or practice of sexual harassment and ordered injunctive relief), *aff'd on appeal*, 130 F.3d 1287 (8th Cir. 1997) (approving two-phase framework). *See also Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1 (N.D. Ohio 2000) (certifying sex harassment class and anticipating two-stage *Teamsters* trial); *Warnell,* 189 F.R.D. at 388 (same); *Ries*, 2021 WL 6133437, at *15, n.11 (same).

**The Rule 23(b)(3) Subclass:** "All female Crew Members and Crew Trainers who worked at any time between April 10, 2016 and the time of trial at one or more of the following Florida McOpCo restaurants: 14th Street, Debary, Ellenton, Four Corners, Gibsonia, Hobo Junction, Park Boulevard, Osceola Village, Ovation, and South French."

### D.    The Proposed Classes Meet All the Requirements of Rule 23(a).

1. **The Classes are Ascertainable and Sufficiently Numerous.** Plaintiffs meet the numerosity requirement for the Rule 23(c)(4) class, which includes 33,000 women, the Rule 23(b)(2) class, which includes current employees at approximately 100 McDonald's restaurants, and the Rule 23(b)(3) subclass, which includes hundreds of women at each store.[186] *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (a class size of forty is generally sufficient).

**2. Numerous Common Questions Will Drive Resolution of the Action.** Under Rule 23(a)(2), "a single common question of law or fact" is sufficient. *Chicago Tchrs.*, 797 F.3d at 434. "What matters ... is … the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). The central liability question justifying prospective relief here is whether McDonald's has an overall pattern or practice of tolerating sexual harassment; that is, whether it "failed to take [effective] steps to remedy the company-wide problem of harassment that it knew or should have known about." *Mitsubishi*, 990 F.Supp. at 1071-77.[187] This central question, as well

---

[186] Arendt Decl., ¶14; T.A-J.

[187] Cases setting forth the elements for proving individual sexual harassment claims are "not intended to apply lockstep" to pattern or practice cases. *Mitsubishi*, 990 F.Supp. at 1073. To prove sexual harassment in an individual Title VII case, plaintiffs must show (1) unwelcome sexual harassment; (2) because of sex; (3) that was sufficiently severe *or* pervasive to alter conditions of employment; and (4) a basis for employer liability, that is, (a) the existence of an employment relationship; and (b) either (i) employer negligence in discovering or remedying co-worker or customer harassment or (ii) the harasser was a supervisor (in which case the employer may assert an affirmative *Faragher-Ellerth* defense). *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928-31 (7th Cir. 2017). Courts interpret the Florida Civil Rights Act ("FCRA") consistently with Title VII. *Blizzard v. Appliance Direct, Inc.,* 16 So.3d 922, 925-27 (Fla. Dist. Ct. App. 2009); *Harris v. Pub. Health Trust of Miami*, 82 F.4th 1296, 1300 (11th Cir. 2023). In a pattern or practice case, that the harassment was "unwelcome" or "subjectively offensive" is reserved for phase II individual damages proceedings. *Mitsubishi*, 990 F.Supp. at 1071.

as numerous other common questions, will be answered with common evidence.

      **a. Was McDonald's on notice of a system-wide sexual harassment problem?** Whether McDonald's was on notice of a system-wide sexual harassment problem is subject to common proof. "The employer's knowledge of the misconduct is what is critical, not how the employer came to have that knowledge." *Cerros v. Steel Techs*., 398 F.3d 944, 952 (7th Cir. 2005). An employer may be on "constructive notice" of harassment in a variety of ways, including when the harassment comes to the attention of someone who, under the employer's policy, has a duty to report the harassment to someone who can take action, *Nischan*, 865 F.3d at 931; when it is "sufficiently obvious," *id.* at 931-32; or "where the work environment is permeated with pervasive harassment." *Wilson v. Chrysler Corp.,* 172 F.3d 500, 509 (7th Cir. 1999). Here, class-wide proof exists from which the jury may determine that McDonald's knew or should have known that it had a systemic sexual harassment problem in its Florida McOpCo restaurants. Defendants' documents show that the Board of McDonald's Corp. was informed of the issue, and witness testimony and documents evidence hundreds of written and oral complaints of sexual harassment made to HR Consultants, Ops Consultants, GMs, and lower store-level managers, all of whom had a duty to report the harassment to their higher-ups. McDonald's chose not to compile the many complaints in any organized fashion, nor to take any other measure to determine the incidence of sexual harassment, but a company may not deliberately ignore evidence of harassment to escape liability.[188] "An obvious common factual question is whether defendants knew of and tolerated a systemic policy of harassment…" *Neal*, T.470 at 13.

---

[188] *Jenson*, 824 F.Supp. at 888 (An employer "cannot close its eyes when confronted with incidents of sexual harassment; it has the obligation to determine the scope of the problem and take steps to alleviate it."); *Int'l Profit Assoc.,* 2007 WL 3120069, at \*14-16 ("An employer cannot escape liability by remaining willfully ignorant of individual instances of harassment when it knows that harassment is occurring regularly").

**b. Did McDonald's take effective steps to remedy systemic sexual harassment?**
Plaintiffs will prove that McDonald's failed to take effective measures to remedy systemic sexual harassment using common evidence. Remedial steps "must be reasonably calculated to prevent further harassment…" *Brooms v. Regal Tube Co.*, 881 F.2d 412, 421 (7th Cir. 1989). In a pattern or practice case, employers may not rely on "situation-specific" responses to individual complaints in the face of systemic issues.[189] The same sexual harassment policies and practices are used in all McOpCo stores. HR Consultants and Ops Consultants receive the same training about investigating sexual harassment allegations and disciplining offenders. A single HR Manager oversees a handful of HR Consultants, each of whom are responsible for investigating and remediating harassment in their profit center (and there are only four to six profit centers). McDonald's uniformly failed to track sexual harassment complaints in any organized fashion. McDonald's uniformly failed to monitor those responsible for investigating sexual harassment complaints. McDonald's uniformly failed to implement a discipline rubric for sexual harassment as it did for all other offenses. Whether McDonald's policies and procedures are adequate will be proven with expert testimony. Where the employer applies uniform sexual harassment policies to similar work environments, the adequacy of these policies raises common questions sufficient to support class certification. *Cf. Howard*, 989 F.3d at 608-09.

**c. Does an objectively hostile work environment exist at McDonald's?** As to each of the ten sample stores, and within McOpCo restaurants overall, common evidence will prove the existence of an objectively hostile work environment. Courts consider "a constellation of factors" to determine whether harassment is sufficiently severe or pervasive, as an objective matter, to alter

---

[189] *Jenson*, 824 F. Supp. at 887 (plaintiffs proved pattern or practice of sex harassment where employer "never established a system for either creating or processing records of complaints, although such records could have facilitated monitoring the work environment for its sexual hostility."); *see also Bremiller,* 195 F.R.D. at 30; *Misubishi*, 990 F.Supp. at 1074.

the work environment, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 806-07 (7th Cir. 2000) (citations omitted). Under the "totality of the circumstances analysis" applicable in pattern or practice cases, "the district court should not carve the environment into a series of discrete incidents and then measure the harm occurring in each episode. Instead, the trier of fact must keep in mind that 'each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment [thereby] [sic] created may exceed the sum of the individual episodes.'" *Mitsubishi,* 900 F.Supp. at 1074, *quoting Jenson*, 824 F.Supp. at 885.

Here, each of the ten sample stores identified is a small, confined space in which workers necessarily overhear their fellow workers, sometimes on shared headsets. And as set forth in the Store Summary Charts, Tabs A-J, there are numerous incidents of sexual harassment at each store that affected many workers, ranging from sexual jokes told over headsets to frequent sexual remarks over the grill and regular customers accosting Crew. "Employees that work in close proximity hear, see, and thus experience the same discriminatory acts. Where they do not do so first-hand, they may do so second-hand." *Ries*, 2021 WL 6133437, at *12 (certifying sex harassment class at McDonald's restaurant). The common evidence will include testimony of workers and McDonald's own assemblage of records and written complaints at each restaurant.

If the Court were to decline certification, all of this co-worker evidence would be relevant and admissible in separate individual trials for each putative class member to establish the existence of an objectively hostile work environment. *See Wilson,* 172 F.3d at 511 (whether hostile

34

work environment exists depends on "cumulative effect of … disparate acts").[190] All sexually harassing statements, including overheard comments directed to others, and misconduct or comments learned of second-hand, are relevant. *Howard,* 989 F.3d at 601-02, *citing Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 902-03 (7th Cir. 2018). Courts frequently find that the existence of an objectively hostile work environment is a common question, even when putative class members are subjected to different and individual instances of harassment.[191]

**d. Are McDonald's Corp and McDonald's USA joint employers?** McDonald's Corp and McDonald's USA deny that they "employed" Named Plaintiffs and other Crew. Whether they qualify as "joint employers" under Title VII or an "integrated enterprise" under FCRA will be determined by common evidence identical for each putative class member. To determine whether an entity is an employer for Title VII purposes, courts apply the five-factor *Knight* test:

> "(1) [T]he extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations."

*Johnson,* 892 F.3d at 905, citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991). Under FCRA, Plaintiffs must show that McDonald's of FL and McDonald's USA and/or McDonald's Corp constituted an integrated enterprise. *Keene v. Teco Energy Corp.*, 98-2406-CIV-T-17B, 2000 WL 230243, at *2 (M.D. Fla. Mar. 1, 2000); *Martinolich v. Golden Leaf Mgmt., Inc.*, 786 So. 2d 613, 615 (Fla. 3d DCA 2001). Plaintiffs will prove this using company documents and 30(b)(6) deposition testimony showing that employees of McDonald's USA and/or

---

[190] *See also E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018) (court should not "separately analyze each incident, by itself, to see if it rises to the level of being severe or pervasive.").

[191] *See, e.g., Jenson,* 139 F.R.D. at 664-65; *Brand,* 302 F.R.D. at 231; *cf. Howard,* 989 F.3d at 605 (existence of objectively hostile work environment at single location may constitute common question).

McDonald's Corp, such as Ops Consultants, had power to fire and/or discipline restaurant Crew, and that McDonald's USA and McDonald's Corp provided training for all McOpCo Crew. This is all common evidence that will not vary by class member.

**e. May McDonald's raise a Faragher-Ellerth affirmative defense?** Employers are vicariously liable for harassment by "supervisors" without the need for plaintiffs to prove negligence (employer knowledge and failure to remediate), unless the employer proves that it took reasonable steps to prevent sexual harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 806-08 (1998). McDonald's has uniform job titles and duties for various levels of managers, including set rules for who has authority to hire, fire, promote, or discipline. Thus, whether any particular level of manager is a "supervisor" of Crew will be established by common proof. And the adequacy of McDonald's procedures for the prevention and remediation of sexual harassment will be established based on common evidence of McDonald's uniform policies, procedures, and trainings, as well as expert testimony about the inadequacy of those uniform procedures.

**f. Is McDonald's liable for punitive damages?** Plaintiffs may recover punitive damages under Title VII if they prove that McDonald's exhibited "malice or …reckless indifference to [their] federally protected rights." 42 U.S.C. §1981a(b)(1). This inquiry concerns defendants' conduct and is subject to common proof. *See Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 438 (N.D. Ill. 2003). Common evidence will demonstrate that McDonald's was aware of its systemic sexual harassment problem but failed to take effective steps to ameliorate it.

**3. The Named Plaintiffs Are Typical.** "A plaintiff's claim is typical under Rule 23(a)(3) if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 866 (7th Cir. 2018). Here, the Named Plaintiffs' and putative class members' claims

arise from the same practice or course of conduct—McDonald's failure to take systemic steps to remedy systemic sexual harassment. In particular, McDonald's policies, procedures and practices regarding sexual harassment are inconsistent with widely endorsed evidence-based practices and are inadequate to prevent and remediate harassment in the workplace.[192] These systematic failures affected both Named Plaintiffs and putative class members. Thus, typicality is satisfied.

**4. The Named Plaintiffs Are Adequate.** The Rule 23(a)(4) inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), as modified (Sept. 22, 2011). Neither the Named Plaintiffs nor their counsel have any conflicts with the interests of the proposed class members. Plaintiffs and their counsel have vigorously prosecuted this action. Named Plaintiffs answered written discovery, sat for depositions, and demonstrated they understand their claims against McDonald's.[193] Proposed class counsel, Eve Cervantez, Douglas Werman, Maureen Salas, and Sarah Arendt are highly experienced class action attorneys and have been deemed adequate class counsel in many employment class actions.[194]

**E.     Rule 23(b)(2) Certification Is Appropriate Because the Class Seeks Uniform Injunctive Relief to Protect Class Members from Sexual Harassment.**

A class should be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Not surprisingly, 'civil rights cases against parties charged with unlawful, class-based discrimination are prime

---

[192] T.253 (Fitzgerald Report) p. 83.

[193] T.DDD, Deposition Transcript of Jamelia Fairley, at 191:9-16, 192:10-25; T.PPP, Deposition Transcript of Ashley Reddick, at 217:13-218:1. Arendt Decl. ¶¶12-13.

[194] Arendt Decl., ¶¶10-11; Cervantez Decl. ¶¶5-8.

37

examples' of Rule 23(b)(2) classes." *Chicago Tchrs.*, 797 F.3d at 441 (citation omitted). An employer may be liable under Title VII for a pattern or practice of tolerating sexual harassment such that an injunction is proper even if not all women are exposed to severe or pervasive harassment. *IPA,* 2007 WL 3120069 at \*10, 14. Accordingly, courts certify pattern or practice sexual harassment cases under Rule 23(b)(2) because a liability finding will entitle plaintiffs to injunctive relief to reform defendants' overall sexual harassment policies and practices. *Warnell*, 189 F.R.D. at 390 ("policies about and enforcement of sexual harassment rules were inadequate in the context of a centralized personnel system. That suffices for a consistent pattern of action towards plaintiffs.").[195] Here, Plaintiffs' expert testified that, given McDonald's currently inadequate procedures for the prevention of sexual harassment, *all* female Crew are at risk of harassment.[196] The Court should certify a Rule 23(b)(2) subclass of current McOpCo female Crew.

**F.      Rule 23(b)(3) Certification Is Appropriate at Selected Sample Stores Exemplifying a Hostile Work Environment.**

The Court should certify Rule 23(b)(3) subclasses seeking monetary relief for women at each of the ten sample stores. *See* Tabs A-J (Store Summary Charts).

**1. Common Issues Predominate.** Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (citation omitted). Not all elements of a claim need be susceptible to classwide proof. *Id.*; *Chicago Tchrs*, 797 F.3d at 444; *Bell*, 800 F.3d at 379 (Rule 23(b)(3) certification proper even though "class members still must prove individual issues of causation and damages").

---

[195] *See also Jenson*, 139 F.R.D. at 666 (Rule 23(b)(2) certification appropriate when "Plaintiffs allege that defendants have refused to institute effective sexual harassment policies"); *Palmer,* 217 F.R.D. at 438; *Neal,* 1995 WL 517244 (issuing injunction).

[196] T.447 (Fitzgerald Reply Report) p.6**.**

As described *supra*, Section IV.C.2, common evidence will be used to answer the ultimate liability issue: whether McDonald's has engaged in a pattern or practice of tolerating sexual harassment at Florida McOpCo restaurants, including the existence of an objectively hostile work environment at each of the ten sample stores, and if McDonald's was on notice of a systemic sexual harassment problem but failed to take adequate systemic steps to prevent that harassment. Because the entire work environment, rather than any particular incident, must be considered cumulatively to determine the existence of a hostile work environment, *Johnson*, 892 F.3d at 901-03, such that the testimony of each woman who worked at a store will be relevant to the claim of other women who worked at that same store, it makes far more sense to put on all evidence about each store only once, in a single trial, rather than having to repeat the evidence in multiple trials for multiple women who worked at the same store and endured the same hostile work environment. *Cf. Howard,* 989 F.3d at 605 (certification may be proper to determine extent of objectively hostile work environment for women working in same location). As a result, common issues predominate. *See Ries*, 2021 WL 6133437, \*15 (evidence necessary to adjudicate individual claims less central to case than common evidence of objectively hostile work environment, employer's actual or constructive knowledge, and adequacy of employer's response); *Brown v. Cook Cnty.*, 332 F.R.D. at 244-45 (predominance met with respect to sexual harassment class action).

**2. A Class Trial for Each Store Is Superior to Numerous Individual Trials Based on the Same Common Evidence, Witnesses, Documents, and Expert Testimony.** Superiority is satisfied when a "class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). A class action is superior to hundreds of individual trials with respect to harassment at

each of the ten sample stores, which will be premised on the same witness testimony, McDonald's complaint documents about the hostile work environment at that store, and common evidence establishing McDonald's constructive knowledge of the systemic harassment and the inadequacy of its uniform sexual harassment policies and procedures. Given the proven reticence of sexual harassment victims to come forward, a class action may be the only way towards justice here. A "class action will permit adjudication of possibly meritorious claims which otherwise might not be brought on behalf of women who are unable or unwilling to sue their employer, a risky and frightening business even for a brave employee." *Warnell*, 189 F.R.D. at 388; *Ries,* 2021 WL 6133437, *16 (finding superiority in part because many teenage workers at McDonald's had little work experience and were unlikely to be aware of their rights or have resources to enforce them).

### G.     Rule 23(c)(4) Issue Certification Is Appropriate to Determine Pattern or Practice Liability to the Class as a Whole.

Under Rule 23(c)(4), when plaintiffs challenge practices that can efficiently be determined on a class-wide basis, issue certification is proper. *McReynolds,* 672 F.3d at 491. The issues here include whether McDonald's engaged in a pattern or practice of discrimination by tolerating sexual harassment, whether McDonald's was on constructive notice of a systemic problem of sexual harassment, and whether McDonald's policies and procedures for the prevention of sexual harassment are sufficient to protect workers from that risk. These are the very same issues that the Court will decide in phase I to determine injunctive relief. *See, e.g., IPA*, 2007 WL 3120069 at *17 (court determines employer negligence—constructive knowledge and failure to remedy—in phase I trial for all employees). Rule 23(c)(4) certification is appropriate here because it will serve the goals of efficiency for the Court's rulings on these issues to apply to all class members.

### IV.    CONCLUSION

The Court should certify the class and subclasses.

DATED: May 10, 2024                              Respectfully submitted,


                                                  /s/ Sarah Arendt
                                                 One of the Attorneys for Plaintiffs

41