IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMELIA FAIRLEY and ASHLEY REDDICK, *on behalf on themselves and all those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>McDONALD'S CORPORATION, McDONALD'S USA, LLC, and McDONALD'S RESTAURANTS OF FLORIDA, INC.,<br><br>Defendants. | Case No. 1:20-cv-02273<br><br>Hon. Franklin U. Valderrama<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF ASHLEY REDDICK'S RETALIATION CLAIMS**

Despite the speculation and conjecture in Plaintiff Ashley Reddick's Opposition, she fails to come forth with actual evidence that she was subject to retaliation. In arguing that there is a disputed issue of whether Yvonne Collins knew of Plaintiff's alleged complaints when she made the termination decision, Plaintiff asks the Court to make a series of assumptions. Plaintiff's attempt is contrary to established law on Plaintiff's burden at this stage—Plaintiff must point to *record evidence* that her supervisor had actual knowledge of any protected activity. Moreover, a closer look at the policies to which Plaintiff points shows that the individuals to whom she claims she complained could easily comply with their reporting obligations in ways other than speaking with Collins. As to pretext, Plaintiff fails to present any record evidence showing that her supervisor's stated reason for her employment termination was a lie. She now argues she did not use abusive language. But, the record evidence is clear that Collins based her decision on her belief that Plaintiff was insubordinate that day and Plaintiff's disciplinary record – and there is

1

no evidence to the contrary. Plaintiff then tries to manufacture disputes regarding facts immaterial to the issues before this Court – such as whether her nose was bleeding on the day in question and whether she used her cell phone – but none of these manufactured disputes matters to the ultimate issue before the Court. Plaintiff has failed to create a triable issue on her retaliation claims, and the Court should grant summary judgment in Defendants' favor.

## ARGUMENT

I. **PLAINTIFF'S RETALIATION CLAIMS RELATED TO THE TERMINATION OF HER EMPLOYMENT FAIL.**[1]

   A. **Plaintiff Has Not Shown Any Genuine Issue of Dispute on Collins' Lack of Knowledge of Her Alleged Complaints.**

Plaintiff's argument that "it is reasonable to believe that Collins was told about [her] sexual harassment reports" (ECF No. 156, at 15) is based on a threadbare string of unsupported assumptions. In an effort to demonstrate Collins' purported knowledge, Plaintiff points to the sexual harassment policy and related reporting procedures applicable to her McOpCo employment and her own testimony that she reported harassment to lower-level South French managers and asks the Court to engage in a series of assumptions.[2]

Regardless of what the applicable reporting procedures may require, Plaintiff must demonstrate by specific record evidence that a genuine dispute regarding Collins' knowledge exists. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835, 841 (7th Cir. 2018) (affirming summary judgment for employer on Title VII retaliation claim where plaintiff did "not provide[] even a 'scintilla' of evidence" that HR communicated her intent to file an EEOC

---

[1] Plaintiff concedes that she is not alleging her hours were reduced in retaliation for alleged harassment complaints. (ECF No. 156, at 10, n.5.)

[2] For purposes of this Motion, the Court need not decide whether Plaintiff engaged in Title VII protected activity. However, it remains Plaintiff's burden to establish that she engaged in protected conduct at any trial or hearing in this matter

2

charge to decisionmakers). Here, the undisputed record evidence demonstrates that Collins had no knowledge of Plaintiff's alleged complaints. (Defendants' Response to Plaintiff Reddick's Statement of Additional Material Facts ("Defs' RSAF") at ¶ 16.) Collins testified unequivocally that she did not have knowledge of any sexual harassment complaints raised by Plaintiff. (*Id.*) When Plaintiff was asked whether she "kn[e]w if [Collins] knew that [she] had made complaints about sexual harassment," she testified: "Not as I know of, I don't know. Nobody ever mentioned it to me." (*Id.*)

Plaintiff seems to suggest that Defendants must show that the individuals to whom she claims she complained did not report the complaint to Collins, but it is Plaintiff's burden to show a factual dispute as to Collins' knowledge where Collins testified she did not know about Plaintiff's alleged complaints and there is no evidence anyone told her about the alleged complaints. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (affirming summary judgment in Title VII retaliation case where plaintiff pointed to decisionmaker's statements regarding vague "issues," and finding that the reference did not show "actual knowledge" of protected activity).

Faced with this record, Plaintiff asks the Court to make multiple assumptions. First, she asks the Court to assume – without any evidence – that one of the individuals to whom she alleges to have reported had then informed Collins of her complaints instead of utilizing any of the other multiple available reporting avenues. (*See* Defs' RSAF at ¶¶ 4-5.) Plaintiff now claims to have complained to two or three individuals – GM Alexander and Thu Tran, and possibly Debbie Turner. (ECF No. 158, at ¶¶ 13-14.)[3] Under the applicable sexual harassment policy,

---

[3] Plaintiff alleges only that she told GM Alexander that she was uncomfortable working with Marlo/Marso, and she admits that she did not explain why. (ECF No. 157, at ¶ 54.) This alleged complaint to Alexander does not rise to the level of Title VII protected activity. *See Bright v. CCA*, 2013 WL 6047505, at *5 (S.D. Ind. Nov. 14, 2013) (finding that no protected activity occurred where plaintiff "complained about being uncomfortable" about

3

restaurant managers are able to escalate employee complaints using a variety of reporting avenues: the Operations Consultant, Operations Manager, HR Consultant, or HR Manager assigned to their restaurant; the HR Consulting hotline; and the Business Integrity Line. (Defs' RSAF ¶¶ 4-5.) Therefore, the fact that Collins did not have knowledge of Plaintiff's alleged complaints does not indicate that ***any*** South French manager was not in compliance with the sexual harassment policy.

Following Plaintiff's logic, the Court must also assume that these communications occurred before Plaintiff's employment was terminated on August 17, 2018, such that Collins knew of Plaintiff's alleged protected activity at the time she terminated Plaintiff's employment. However, "it is not sufficient [at summary judgment] that [an employer] could or even should have known about [an employee's] complaint." *See Tomanovich*, 457 F.3d at 668; *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (same). The Court should not engage in the layers of assumptions Plaintiff urges. *See Igasaki v. Ill. Dept. of Fin. and Prof'l Regul.*, 988 F.3d 948, 960 (7th Cir. 2021) (rejecting plaintiff's "invit[ation] [] to find causation from layering one inference . . . onto another").

Given the record evidence here, the cases to which Plaintiff cites are of no avail to her. Indeed, *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755 (7th Cir. 2008) compels summary judgment for Defendants. Here, Plaintiff points to no evidence of any conversations between Collins and the individuals to whom Plaintiff alleges she complained; in *Ridings*, even where there was such evidence, the court refused to infer retaliation based on a communication between the supervisor

---

interoffice relationship without more); *Overfield v. Kansas*, 660 F. Supp. 3d 1101, 1113 (D. Kan. Mar. 9, 2023) (no protected activity where "Plaintiff merely expressed her concerns about being in the courthouse with Judge Johnson and that she would be uncomfortable when he returns."). Plaintiff alleges that she complained to Tran, and also separately complained to either Tran or Turner. (ECF No. 158, at ¶ 13.) Accordingly, Plaintiff alleges only that she engaged in protected activity by way of her complaints to one or at most two individuals but argues in her Opposition that it was three. (*Id.*, at ¶¶ 13-14; ECF No. 156, at 14-15.)

4

who terminated the plaintiff's employment and the employee handling her protected complaint where "[t]he conversation . . . did not yield any retaliatory evidence." *Id.* at 774. In *Scott v. Sunrise Healthcare Corp.*, 195 F.3d 938 (7th Cir. 1999), the supervisor who recommended termination to the ultimate decisionmaker was directly involved in the underlying interaction that prompted the plaintiff's report. *Id.* at 940-41. Here, Plaintiff does not allege that any of the South French employees to whom she alleges to have made complaints recommended to Collins that she be terminated or were in any way involved in the termination decision.

No reasonable jury can find that Collins had knowledge of Plaintiff's alleged complaints based on the record and the Court should grant summary judgment for this reason alone. *See Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) (affirming summary judgment for employer where plaintiff "failed to produce evidence from which a jury could reasonably and more likely than not infer knowledge on the part of her supervisors").

  **B.**  **Plaintiff Fails to Show the Legitimate, Non-Retaliatory Reason for Her Termination of Employment Was Pretextual.**

By arguing only that the "purported reason" for her employment termination was pretext (ECF No. 156, at 10), Plaintiff concedes Defendants have presented legitimate, non-retaliatory reasons for terminating her employment. To establish pretext, Plaintiff must show that Collins did not honestly believe the legitimate, non-retaliatory reasons for her employment termination. *See, e.g.*, *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("[t]he focus of the pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered"); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564-65 (7th Cir. 2016) ("[w]hat matters is whether [the decisionmakers] honestly believed [their stated reason]").

  **1.**  **Plaintiff Has Not Shown That Collins Did Not "Honestly Believe" The Reason for Her Termination of Employment.**

Plaintiff has "presented no evidence that undermines the truthfulness of [Defendants'] proffered reasons for firing [her]." *Kolanowski v. Conopco, Inc.*, 2010 WL 3893917, at *19 (N.D. Ind. Sept. 30, 2010). Plaintiff has not pointed to any record evidence supporting an inference that Collins did not truly believe that Plaintiff used abusive language towards her, or that Collins did not believe such language, in combination with Plaintiff's disciplinary record, were grounds for terminating her employment. *See Logan v. Sabre Mfg., LLC*, 2013 WL 5570218, at *9 (N.D. Ind. Oct. 8, 2013) (deficient performance not pretext where plaintiff did not "address the honest belief of . . . the [company] managers and supervisors who made the decision to terminate [plaintiff]"). Plaintiff now disputes that she engaged in abusive language – but this does not address the relevant pretext inquiry, which hinges on a decisionmaker's beliefs. *See Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 496-97 (D.C. Cir. 2008) (plaintiff's "contention that the underlying [] incident [for which he was demoted] never occurred" failed to overcome employer's proffer of a legitimate, non-discriminatory reason; finding no support for argument that plaintiffs can obtain a jury trial "merely by denying the underlying allegation of misconduct"); *Berrow v. Wake Forest Univ.*, 1991 U.S. Dist. LEXIS 19344, at *9-10 (M.D.N.C. Oct. 16, 1991) (no pretext where plaintiff had a documented disciplinary history and was terminated for being "verbal[ly] abus[ive] toward supervisors" despite fact that he disputed certain events ever occurred; noting that "[w]hether the events relied on by Defendant in discharging Plaintiff existed is not material to the court's finding").

Relatedly, Plaintiff cannot avoid summary judgment by arguing there is an alleged lack of evidence to support that she used abusive language. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 826 (7th Cir. 2006) (rejecting plaintiff's argument that "a lack of documentation supports a finding of pretext" and finding that, in so arguing, plaintiffs "confuse[d] [Defendant's]

6

burden with their own burden"). Plaintiff claims that *Walker v. General Sec. Servs. Corp.*, 405 F. Supp. 2d 896 (N.D. Ill. 2005) and *Hudson v. C.P. Rail Sys.*, 24 F. App'x 610 (7th Cir. 2021) – cases where summary judgment was granted in favor of the employer despite that the plaintiff disputed the grounds for the termination – are inapposite because the employers had additional evidence beyond the decisionmaker's testimony to support that the plaintiff had engaged in the conduct prompting the termination of her employment. (ECF No. 156, at 12.) But, here, it is not only Collins' word against Plaintiff's, as she claims. Other record evidence corroborates that Plaintiff exhibited abusive language towards Collins in August 2018. The lower-level manager who wrote the contemporaneous disciplinary action noted that Collins "told [Plaintiff] again to go" and Plaintiff "start[ed] answering back to [Collins]." (Defs' RSAF, at ¶ 29.) In addition, as Plaintiff herself has testified, she was disciplined multiple times throughout her employment for inappropriate, abusive workplace conduct.[4] (*See* ECF No. 157, at ¶ 26 (Plaintiff admitting that she was disciplined for "copping an attitude"); *see also id.*, at ¶ 27 (arguing); *id.*, at ¶ 28 (having an attitude and cursing in restaurant); *id.*, at ¶ 31 (arguing with GM).) Consistent with these written disciplinary actions, Plaintiff called Collins a "bitch" during her deposition. (Defs' RSAF, at ¶ 25.) Likewise, Plaintiff's supervisors testified that she was an "explosive person" (ECF No. 157, at ¶ 33), and that she "would give pushback to managers" (*id.*, at ¶ 34). Plaintiff's denial alone fails to establish pretext, especially against the weight of evidence substantiating Collins' legitimate, non-retaliatory reasons for her terminating her employment.

---

[4] Plaintiff acknowledges that she accumulated disciplinary actions during her South French employment. (ECF No. 157, at ¶¶ 26-32.) And although she claims that her "disciplinary record is irrelevant if the August 17, 2018 incident never happened as described by Collins," (ECF No. 156, at 11) Plaintiff has no evidence, and indeed no personal knowledge, to rebut that her disciplinary record factored into Collins' decision to terminate her employment. *See Shackelford v. Roadway Express, Inc.*, 2003 WL 57027, at *6 (N.D. Ill. Jan. 6, 2003) (granting summary judgment for employer; noting that "the court cannot consider the testimony of [a witness], who admittedly does not have personal knowledge of the circumstances . . .").

7

*See Kolanowski*, 2010 WL 3893917, at *19 (granting summary judgment for employer where plaintiff provided only "bald assertions" that his violation of policy was pretext for retaliation).

For her part, Plaintiff relies on cases that are inapplicable or else distinguishable. In *Huff v. Buttigieg*, 42 F.4th 638, 648 (7th Cir. 2022), the Court inferred pretext because the plaintiff's employment was terminated for an "objectively unreasonable" reason where she was termed for "sending emails instead of making phone calls." Further, as a public sector employee, the plaintiff in *Huff* did not need to prove but-for causation. *Id.* at 646. In *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 931-33 (7th Cir. 2020), the Court found an issue of fact because there was evidence of sex-stereotyping and inconsistent explanations for not hiring the plaintiff. Here, the undisputed, consistent evidence shows that Plaintiff's employment was terminated due to her behavior towards her supervisor on the day in question in combination with her history of misconduct. (Defs' RSAF, at ¶¶ 24-25, 29.) Plaintiff cites *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) for the proposition that an employee's testimony alone can create a dispute of fact, but the plaintiff in *Ortiz* pointed not only to his own testimony but also "depositions and declarations from other brokers, managers, and former employees." *Id.* at 766.

> **2. Plaintiff's Other Purported Disputes of Fact Related to the Day of Her Employment Termination Are Immaterial.**

While Plaintiff purports to point to other disputed facts, the rest of the facts she claims are disputed are irrelevant to summary judgment because they are not material. Plaintiff must set forth facts showing that there is a genuine issue as to a *material* fact. *Bunn v. Khoury Enters. Inc.*, 753 F.3d 676, 681-83 (7th Cir. 2014) (affirming summary judgment for employer; finding that "even if [the court] credit[ed] [plaintiff's] version of events . . . that fact is not material"); *see also Shackelford v. Roadway Express, Inc.*, 2003 WL 57027, at *7 (N.D. Ill. Jan. 6, 2003) (explaining that, at the pretext analysis, "[t]he ultimate burden of persuasion remains at all times

8

with [Plaintiff]"). "A fact is material when it could affect the outcome of the suit under the governing law." *Delaney v. Menard, Inc.*, 2024 WL 2209735, at *1 (N.D. Ill. May 15, 2024). "[W]hile there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative." *Latif v. FCA US LLC*, 2019 WL 535692, at *1 (S.D. Ind. Feb. 11, 2019).

The rest of the facts Plaintiff claims are disputed – for example, whether her break was delayed, whether the air conditioning in the restaurant was broken, whether she experienced a nosebleed, whether Collins saw her putting a tissue to her nose, and whether Collins asked her to return to the drive-thru – are immaterial to the issue before this Court. *See, e.g.*, *Jones v. Union Pac. R.R.*, 2001 WL 300316, at *6 (N.D. Ill. Mar. 28, 2001) (insubordination not pretext where plaintiff "dispute[d] the officer's account of the events that lead [sic] to his termination" but facts were "not material"); *cf. Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 736 (7th Cir. 2011) (affirming summary judgment for employer; finding that conflicting testimonies about when and how plaintiff notified employer of pregnancy were "factual issues [that] are not material to [plaintiff's] [Title VII] claim"). Collins did not terminate Plaintiff's employment for any of these issues and there is no record evidence to support that any of them affected her termination decision. *See Latif*, 2019 WL 535692, at *3 (granting summary judgment for employer; finding that dispute regarding compliance with proper demotion procedures was "not material or otherwise supportive of any element of [plaintiff's] claims"). And to the extent Plaintiff points to alleged inconsistencies in testimony relating to these facts, that too fails to show pretext. *See Stockhoff v. D.E. Baugh*, 2003 WL 1090203, at *7 (S.D. Ind. Mar. 10, 2003) (plaintiff failed to demonstrate non-discriminatory reason was untruthful where she pointed to

9

"several 'inconsistencies' in the deposition testimony of various [company] employees"; finding that such inconsistencies were nonetheless immaterial to pretext analysis). [5]

### 3. The Termination Code Applied to Plaintiff's Employment Termination Does Not Evidence Pretext.

Plaintiff also argues that the use of the "unsatisfactory performance" termination code as applied to her employment termination evidences pretext because it is rarely used with respect to South French employee terminations. (ECF No. 156, at 13-14; ECF No. 158, at ¶ 33.) But Plaintiff was also disciplined for "unsatisfactory performance" *before* she complained of alleged harassment. In February 2017, Plaintiff was disciplined for having an attitude and cursing in the restaurant, and the "unsatisfactory performance" code was assigned to this discipline. (ECF No. 157, at ¶ 28.) Exhibiting an "attitude" and "cursing" is consistent with the abusive language directed towards Operations Consultant Collins in August 2018 (*see* Defs' RSAF, at ¶ 25) such that use of the "unsatisfactory performance" code was appropriate in both instances.

In addition, Plaintiff fails to explain how her use of abusive language constitutes satisfactory employee performance under any standard such that the "unsatisfactory

---

[5] In her Opposition, Plaintiff takes issue with four of Defendants' discussions of fact (ECF No. 156, at 7, n.4.), all of which are supported by the record. *First*, Plaintiff states that the record does not support that she used "profanity" where she used "abusive language" towards a supervisor. But, she does not state how "profanity" and "abusive language" are materially different, especially where Plaintiff was previously disciplined for "cursing" in the restaurant. (*See* ECF No. 157, at ¶ 28.) Nor does she explain why "abusive language" would not violate the applicable employment policies. *Second*, Plaintiff claims that Defendants' reference to her "two-year tenure" is inaccurate because she worked "almost three years." Plaintiff admitted to her dates of employment as provided in Defendants' Statement of Facts (*see* ECF No. 157, at ¶ 20), and does not otherwise explain how the method by which her tenue is rounded is material to her claims. *Third*, Plaintiff claims that Defendants incorrectly represent that she was "disciplined for 'failing to show up to work,' [because] she was never sanctioned for missing work." But the record shows that Plaintiff was written up for violating the applicable attendance policy when she failed to timely return to work following a break. (ECF No. 157, at ¶ 30.) Plaintiff was also disciplined for not coming to work when she called out late. (ECF No. 157, at ¶ 29.) It is accurate to state that Plaintiff "failed to show up" in these instances. *Fourth*, Plaintiff argues that Defendants' statement that she "ignored management's request to return to her assignment" at the drive-thru on the day of her termination of employment is not supported by the record because Collins "only asked Ms. Reddick what was wrong." But the record supports that managers had staffing concerns during the relevant shift (*e.g.*, ECF No. 157, at ¶ 35; ECF No. 158, at ¶ 18; Defs' RSAF, at ¶ 20), substantiating that it was unacceptable for an employee to abandon their work station.

performance" code should not apply. *Cf. Towers v. Team Car Care, LLC*, 2022 WL 408097, at *5-6 (N.D. Ill. Feb. 10, 2022) (Title VII retaliation plaintiff's "inappropriate language" was "legitimate, non-discriminatory purpose for his termination"). Further, Collins did not testify that she in fact did not use the code for other employee terminations or that the code should not, or could not, be used for terminations, just that she did not remember terminating any other employee for "unsatisfactory performance." (Defs' RSAF, at ¶ 35.) This alone does not establish pretext. *See Donnelly v. Acad. P'ships LLC*, 2023 WL 4033949, at *15 (N.D. Tex. June 14, 2023) (Title VII plaintiff failed to show employer's non-discriminatory reason for her termination was pretext; rejecting argument that HR witness's testimony "that she did not remember any employee being terminated without going through [Defendant's] progressive disciplinary steps" provided evidence that plaintiff's "conduct was insufficient to warrant skipping the steps altogether").

      Plaintiff also claims that she is unlike the four employees whose terminations were coded "unsatisfactory performance" in the report produced in this case of South French employee terminations, and that these differences somehow show pretext. (ECF No. 156, at 13-14.) Plaintiff's argument misses the mark. To begin, she does not explain why her position as a Crew Trainer or the duration of her employment would make unsatisfactory performance exempt from termination. If anything, one would expect a trainer with a longer tenure to have even better performance. With respect to two of the four employees in the report produced in this case, J.H. and D.G., Plaintiff argues that their employments were terminated "after engaging in a physical altercation." (ECF No. 156, at 13.) But the evidence shows that J.H.'s employment was terminated after he argued with another employee, and was "very disrespectful, [and] rude" towards a third employee. (Defs' RSAF, at ¶ 34.) The evidence does not identify a specific

11

action leading to D.G.'s employment termination. *Id.* In any event, pointing to these individuals does not support Plaintiff's claim of pretext as she does not point to anyone who did not complain of alleged harassment, engaged in similar misconduct, and was treated more favorably than Plaintiff. *See Moore v. Superior Auto, Inc.*, 190 F. App'x 495, 497 (7th Cir. 2006) (requiring that similarly situated employees be comparable to plaintiff in "all material respects"). Indeed, all four employees were terminated, including the one who argued with a co-worker and exhibited disrespectful conduct in the restaurant. (Defs' RSAF, at ¶ 34.)

### 4. There Is No Suspicious Timing Between Plaintiff's Complaints and Employment Termination.

Plaintiff alleges that August 17, 2018 – the day Collins terminated her employment – was "likely . . .the first time Collins worked with Ms. Reddick since she became aware of Ms. Reddick's complaints." (ECF No. 156, at 14.) But she cites no *evidence* that this was actually the case. *First*, Plaintiff does not point to specific facts showing that Collins had actual knowledge of her alleged complaints. Her reliance on the applicable reporting procedures (ECF No. 156, at 4-5) is ultimately pure speculation. *See supra* Section I.A. *See Hruska v. Forest Preserve Dist. of Cook Cnty., Ill.*, 2013 WL 1195699, at *9 (N.D. Ill. Mar. 21, 2013) (finding Title VII retaliation plaintiff's theory of causation insufficient where it "depend[ed] wholly on [] timing . . . coupled with a series of speculative inferences"); *cf. Shackelford*, 2003 WL 57027, at *2 ("Conjecture and speculation regarding an employer's motives cannot be used to defeat summary judgment."). *Second*, the record does not support that August 17, 2018 was Collins' first visit to the South French restaurant following Plaintiff's alleged complaints. Here, Plaintiff cites her own uncorroborated and equivocal testimony to establish Collins' schedule. (*See* ECF No. 158, at ¶ 17 ("[Collins'] August 17, 2018 visit *may have* been the first time she visited the store since Plaintiff reported") (emphasis added).) But Plaintiff, as a South French employee,

12

does not have personal knowledge of Collins' restaurant visitation schedule (Defs' RSAF, at ¶ 17) such that her testimony has no evidentiary value because it is not based on personal knowledge. *See Paulos-Johnson v. Advocate Trinity Hosp.*, 2002 WL 230783, at *1 (N.D. Ill. Feb. 15, 2002) (granting summary judgment for employer; disregarding testimony "based on inadmissible hearsay rather than personal knowledge"). Plaintiff cannot support a suspicious timing argument on what is ultimately speculation. *See Igasaki*, 988 F.3d at 960 (finding that "no reasonable jury could have found that [the defendant] retaliated against" the plaintiff where his "layering" of inferences "trend[ed] towards impermissible speculation").[6]

## II. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant summary judgment in their favor on Plaintiff's retaliation claims.

---

[6] Plaintiff also argues that Defendants have engaged in a "pattern" of retaliatory conduct, summarily alleging that Defendants previously retaliated against Plaintiff for engaging in activity protected by the National Labor Relations Act. (*See* ECF No. 156, at 14, n.6.) Plaintiff appears to suggest, without citation, that Defendants do not dispute her allegations of retaliation for engaging in NLRA protected activity. Defendants deny, and have denied at all times, that there is any evidence that Plaintiff's hours were reduced in retaliation for her involvement with the "Fight for 15" campaign. (ECF No. 148, at 10.) Nevertheless, Plaintiff's argument is both factually and legally incorrect. *First*, Plaintiff has not raised a claim of retaliation in relation to her involvement with the Fight for $15 campaign. The allegation has not, and is not, being litigated here because it is irrelevant to the issues in this case and, as such, remains disputed and immaterial. *Second*, Plaintiff has not demonstrated that such alleged retaliation occurred, either by way of showing that her hours were actually reduced or that a causal connection existed between her union participation and hours worked. *Third*, Plaintiff cites no legal authority to support that alleged past retaliation that allegedly occurred in a different context (i.e., not Title VII retaliation) can support an inference of retaliatory intent here.

Dated: July 12, 2024            Respectfully submitted,

                                           /s/ Katelyn E. Nicasio
                                           Elizabeth B. McRee
Efrat R. Schulman
Jennifer W. Plagman
Ann-Marie Woods
Katelyn E. Nicasio
JONES DAY
110 N Wacker, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
emcree@jonesday.com
eschulman@jonesday.com
jplagman@jonesday.com
awoods@jonesday.com
knicasio@jonesday.com

*Attorneys for Defendants McDonald's Corporation, McDonald's USA, LLC, and McDonald's Restaurants of Florida, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2024, I electronically filed the foregoing ***Reply in Support of Defendants' Motion for Summary Judgment on Plaintiff Ashley Reddick's Retaliation Claims*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                          /s/ Katelyn E. Nicasio
                                          *One of the attorneys for Defendants*