IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMELIA FAIRLEY and ASHLEY REDDICK, on behalf of themselves and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> McDONALD'S CORPORATION, McDONALD'S USA, LLC and McDONALD'S RESTAURANTS OF FLORIDA, <br><br> Defendants. | No. 20-cv-02273 <br> Honorable Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jamelia Fairley (Fairley) works for McDonald's Restaurant of Florida (McDonald's). Fairley, along with Ashley Reddick, sued McDonald's Corporation, McDonald's USA, LLC (McDonald's USA), and McDonald's Restaurants of Florida, Inc. (McDonald's of Florida) (collectively, Defendants), asserting counts for sex harassment, hostile work environment, and retaliation, under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000(e), *et seq.* and the Florida Civil Rights Act, Fla. Stat. Ann. § 760. R. 18, FAC.[1] Defendants now move for summary judgment as to Fairley's retaliation claim. R. 145, Defs.' Mot. Summ. J. For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

**Background**

The following facts are set forth as favorably to Fairley, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). This background section details all material undisputed facts and notes where facts are disputed. At summary judgment, the Court assumes the truth of the undisputed facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

**A.   Overview of the Parties**

Defendant McDonald's Restaurants of Florida, Inc. operates company owned-and-operated McDonald's-brand restaurants (McOpCos) in the State of Florida and employs all restaurant-level employees at Florida McOpCos. R. 146, DSOF[2] ¶ 6. Defendant McDonald's USA, LLC, licenses the McDonald's brand and the right to operate McOpCo restaurants in Florida to McDonald's Restaurants of Florida, Inc. *Id.* ¶ 7. Defendant McDonald's Corporation is the parent company of McDonald's USA, LLC *Id.* ¶ 8.

In 2016, Fairley was hired at the McOpCo restaurant location known as "South French" as a crew member. Pls.' Resp. DSOF ¶ 24. As a Crew Member, Fairley was responsible for preparing customers' orders, delivering quality customer service, and

---

[2]Citations to the parties' briefs are identified as follows: "Mem. SJ." for Defendants' Memorandum in Support of Their Motion for Summary Judgment (R. 145); "Resp." for Fairley's Response in Opposition to Defendants' Motion (R. 151); "Reply" for Defendants' Reply in Support of Their Motion (R. 182); "DSOF" for Defendants' Local Rule 56.1 Statement of Undisputed Facts (R. 146); "Resp. DSOF" for Fairley's Response to Defendants' Statement of Undisputed Facts (R. 152); "PSOAF" for Fairley's Local Rule 56.1 Statement of Additional Facts (R. 153).

2

working with other restaurant employees to meet the restaurant's operational and service goals. *Id.* ¶ 27. Based on her experience and performance, Fairley was promoted to Crew Trainer in 2021. *Id.* ¶ 28. As a Crew Trainer, Fairley was responsible for training other crew members on restaurant operations and policies, including polices related to employee conduct, in addition to her crew member duties. *Id.* ¶¶ 27-28. Throughout her employment, Fairley received Rewards Credits—restaurant credits issued through employee recognition program known as Bravo—in recognition of her good performance and teamwork. *Id.* ¶ 29. Fairley's employer at all relevant times was McDonald's Restaurants of Florida, Inc. *Id.* ¶ 24.

Under the Attendance and Schedule Policy, McOpCo employees work flexible schedules that are based on "[the employee's] availability, business needs, and [the employee's] overall performance and versatility." *Id.* ¶ 13. McOpCo employees provide their scheduling availabilities, and restaurant managers create shift schedules that accommodate employees' availabilities. *Id.* ¶¶ 13, 54. McOpCo employees are not typically assigned to certain shifts. *Id.* ¶¶ 13, 54. Instead, schedules and hours fluctuate from week to week. *Id.* ¶¶ 54-55. Fairley participated in the flexible work schedule and on occasion, changed her availability to accommodate her childcare and transportation needs. *Id.* ¶¶ 69-70. Accordingly, her hours fluctuated. *Id.* ¶¶ 57-61.

In 2019, Fairley requested a transfer to the Lake Mary restaurant. *Id.* ¶ 46. When McOpCo employees request to be transferred between restaurants, the General Manager of the employee's restaurant and the General Manager of the desired

3

location approve and facilitate the potential transfer, often in consultation with the Operations Consultants that support both restaurants. *Id*. ¶ 43. Transfer decisions depend on a variety of factors including an employee's experience, skill, position, and availability, as well as a restaurant's need, hours, sales volume, and peak times. *Id*. ¶ 44. Fairley's transfer request was denied. Defendants contend her request was denied because the Lake Mary restaurant did not have a business need for an employee with her availability. *Id*. ¶¶ 49-50. When Fairley was informed that her transfer request was denied, she was provided the opportunity to ask questions about the denial. *Id*. ¶¶ 48-51. Fairley had previously requested a transfer to the Lake Mary restaurant at the start of her McOpCo employment, which was also denied. *Id*. ¶ 45. Fairley was ultimately transferred to the International Parkway restaurant. *Id*. ¶ 53.

### B. Anti-Harassment Policy

Defendants have a Discrimination and Harassment Policy (Policy) which applies to employees at Florida McOpCo restaurants. *Id*. ¶¶ 9-10. Employees are introduced to the Policy, along with all employment policies, during new hire orientation. *Id*. ¶ 14. Employees receive a copy of all employment policies before they begin working at the restaurants. *Id*. The Policy prohibits harassing, discriminating or retaliatory conduct against any employee who has made a complaint about sexual harassment or has cooperated in the investigation of such complaint and informs employees of multiple avenues for reporting any potential violations. *Id*. ¶¶ 10-12. The Policy prohibits any form of retaliation against employees who make complaints. *Id*. ¶ 10. Fairly received, read, and acknowledged her understanding of the

4

employment policies during her orientation in September 2016. *Id*. ¶¶ 25–26. Fairley also received training on the Policy and resources available to her at the start of her employment. *Id*. ¶¶ 25-26. In addition to the training at orientation, Fairley completed the Safe & Respectful Workplace eLearning course, which trains on what conduct may constitute sexual harassment, how to report potential harassment, and other aspects of the Policy in an interactive format. *Id*. ¶ 18. She also attended a live two-hour interactive sexual harassment training in Fall 2019, where she asked the presenters questions and received answers. DSOF ¶ 19.

### C. Fairley's Complaints of Sexual Harassment

According to Fairley, while working at South French, she was sexually harassed by two co-workers, crew member Brian Newton and maintenance employee Matthew Capshaw. PSOF ¶¶ 30, 36. In mid-December 2018, Fairley complained to People Manager Thu Tran that Newton had rubbed his private parts on Fairley during a shift. *Id*. ¶ 30. Tran told Newton to keep his hands to himself, but Newton ignored him. *Id*. ¶ 30. Fairley also reported the harassment to General Manager Pedro Jimenez, but the harassment continued. *Id*. ¶ 30. Defendants deny this allegation. On January 16, 2019, Fairley submitted written complaints alleging that Newton and Capshaw sexually harassed her. DSOF ¶¶ 31, 36. The next day, the Operations Consultant assigned to the South French restaurant met with Fairley to discuss Fairley's complaint and begin an investigation. *Id*. ¶ 33. Capshaw admitted that he made an inappropriate comment to Fairley, was immediately placed on unpaid administrative leave, and was removed from the restaurant and his

5

employment terminated shortly thereafter. *Id.* ¶¶ 37, 38. Newton, who had transferred out of the South French restaurant for unrelated reasons prior to Fairley's written statement, was issued a written warning, re-trained on the Policy, and his transfer was made permanent. *Id.* ¶¶ 34-35. Newton did not return to work at the South French restaurant, and Fairley never worked another shift with him. *Id.* ¶ 32. However, Fairley contends that after he was transferred, Newton returned to the South French restaurant to visit his sister multiple times while Fairley was working. PSOAF ¶ 21. Fairley told Collins that Newton's visits made her feel uncomfortable. *Id.* ¶ 21. Fairley additionally states that Capshaw also visited the South French restaurant, where his girlfriend worked. *Id.* ¶ 22.

In approximately March 2019, Fairley left a voicemail for HR Consultant Jessica Goodwin asking if she could be transferred to a different McOpCo restaurant. *Id.* ¶ 23. Goodwin did not return Fairley's call. *Id.* Also in March 2019, Fairley asked Collins for a transfer. *Id.* ¶ 24, 26. Collins, according to Fairley, told her she could transfer to International Parkway or to the Hickman restaurant. *Id.* ¶ 24. From Fairley's point of view, neither was a viable option: Newton worked at the International Parkway restaurant, and the Hickman restaurant would have required Fairley to spend three to four hours commuting to work. *Id.* ¶ 25.

On April 30, 2019, Fairley filed a charge with the U.S. Equal Opportunity Commission (EEOC). Pls.' Resp. SOF ¶ 26. On June 13, 2019, according to Fairley, she met with Collins and Goodwin at the South French restaurant to discuss her request to transfer to another restaurant. PSOAF ¶ 27. Fairley told Collins and

6

Goodwin that she wanted to transfer because she felt uncomfortable working at South French. *Id.* ¶ 27. Collins and Goodwin, according to Fairley, told her that a transfer was not available. *Id.* ¶ 28.

Fairley sued Defendants asserting counts for sex harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000(e), *et seq.* (Count I); retaliation under Title VII (Count II); and for sex harassment and hostile work environment under the Florida Civil Rights Act, Fla. Stat. Ann. § 760 (Counts III and IV). R. 18, FAC. Defendants' fully briefed motion for summary judgment on Fairley's retaliation claim is before the Court.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the

non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

## Analysis

In Count II, Fairley asserts a claim for Title VII retaliation. FAC ¶¶ 175–180. Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1) (cleaned up). Title VII also "protects employees who complain to their employers about sexual harassment from retaliation on that basis. "*Caskey v. Colgate-Palmolive Co.,* 535 F.3d 585, 592–93 (7th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a). To establish retaliation under Title VII, Fairley must show that: (1) she engaged in a statutorily protected activity; (2) the Defendants took a materially adverse employment action against her; and (3) there is a causal link between the protected activity and the adverse action. *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). To show a causal link between a protected activity and an adverse employment action, a plaintiff must show but-for causation. *Id*. at 897. That is, there must be evidence that "the adverse action would not have happened had she not engaged in her protected activity. *Adebiyi v. S. Suburban College,* 98 F. 4th 886, 892 (7th Cir. 2024). A plaintiff may seek to provide the causal link via direct or circumstantial evidence. *Gnutek v. Ill. Gaming Bd.*, 80 F.

8

4th 820, 824 (7th Cir. 2023). "Direct evidence typically requires an admission by the employer of discriminatory animus, which is rare." *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) (cleaned up). Circumstantial evidence may consist of "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). All evidence, whether direct or circumstantial, is considered together, not separately. *Ortiz v. Werner Enters.,* 834 F.3d 760, 766 (7th Cir. 2016). The key question is whether a reasonable jury could conclude that there was a causal link between the protected activity or status and the adverse action. *Id.*

Defendants argue that Fairley satisfies neither the second nor third elements of the retaliation cause of action—her employer did not take any adverse action, and she has not established a causal link between the protected activity and an adverse employment action. Mem. SJ. at 5–6. The Court addresses each in turn.

**A. Adverse Action**

"An adverse employment action is some quantitative or qualitative change in the terms or conditions of the plaintiff's employment that is more than a mere subjective preference." *Paterakos v. City of Chicago,* 147 F. 4th 787, 796 (7th Cir. 2025) (cleaned up). As the Seventh Circuit has explained, "[t][he words 'terms' and 'conditions' cover more than economic or tangible injuries. They also encompass harm to an employee's career prospects and humiliating, degrading, unsafe, unhealthy or

9

otherwise negative changes to an employee's work conditions." *Id*. But, "not every change that makes an employee unhappy is an actionable adverse action." *Id*.

Here, Fairley identifies two adverse employment actions: her hours were reduced, and her location transfer request was denied. Defendants maintain that neither constitutes an adverse action as a matter of law. Mem. SJ. at 5-6.

1. *Reduction in Hours*

Fairley claims that her working hours decreased after she complained of the sexual harassment, which qualifies as an adverse employment action. Not so, argue Defendants, asserting that the record evidence demonstrates that Fairley's hours fluctuated both before and after she complained of sexual harassment. Mem. SJ. at 6. From Defendants' point of view, fluctuations in working hours do not establish an adverse action where Fairley was neither guaranteed a certain number of hours nor worked according to a fixed schedule. *Id. (citing Hill v. Potter,* 625 F.3d 998 (7th Cir. 2010); *Goethe v. Village of Greenwood*, 2017 WL 4163961 (N.D. Ill. Sept. 20, 2017). Defendants contend that this is especially the case in the service industry, "where employees' schedules and total number of working hours are dependent upon business need and customer demand, among other factors." *Id*.

Fairley disagrees, insisting that there is a genuine issue of material fact as to whether the reduction in her hours was in retaliation for her complaints of sexual harassment. As an initial matter, Fairley contends that a reduction in hours can constitute an adverse employment action giving rise to liability for retaliation. Resp. at 10 (citing *Hill v. Potter*, 625 F.3d 998 (7th Cir. 2010); *Lewis v. City of Chicago*, 496

10

F.3d 645 (7th Cir. 2007); *Stamm v. Tiger Tech Invest., Inc.*, 2013 WL 1093033 (S.D. Ind. Mar. 15, 2013); *Duncan v. Thorek Mem. Hosp.*, 784 F.Supp. 2d 910 (N.D. Ill. 2011)). Here, according to Fairley, the record evidence shows that, after submitting written complaints detailing sexual harassment, her average scheduled hours fell from 23.15 to 11.02 hours per week. *Id*. The loss of hours, asserts Fairley, corresponds with a loss of income, which is sufficient to establish an adverse employment action. Resp. at 10-11 (citing *Duncan v. Thorek Mem. Hosp.*, 784 F.Supp. 2d 910 (N.D. Ill. 2011)).

Both parties cite *Hill* in support of their respective positions. In *Hill,* the plaintiff sued the defendant for age and disability discrimination and for retaliation for engaging in protected activities. The district court granted defendant's motion for summary judgment finding that plaintiff failed to establish that the reduction in her hours was an adverse employment action. 625 F.3d at 1000. The Seventh Circuit affirmed. The court acknowledged that a "reduction in hours could be an adverse action giving rise to liability." *Id.* at 1001. However, the court observed that when plaintiff was on light duty status, she was not guaranteed a 40-hour work week. *Id*. Therefore, the court concluded that a reduction in hours while on light duty status was not per se an adverse action. *Id*. The Court finds *Hill* of little utility since it did not address the reduction in hours in a flexible schedule.

The Court also finds *Goethe* distinguishable. In *Goethe*, the court granted the defendant's motion for summary judgment finding that while a reduction in hours could constitute a materially adverse action, plaintiff failed to show that she met the

11

Village's legitimate expectations or that any similarly situated employee was treated more favorably or provide any evidence to show that the change in her hours was retaliatory in nature. 2017 WL 152744 at *16-17.

While Defendants posit that hourly fluctuations do not constitute adverse employment action, the parties do not dispute that a *reduction* in Fairley's hours satisfies the adverse employment action standard. Fairley has demonstrated that her average hours fell from 23.15 to 11.02 after she submitted written complaints detailing the sexual harassment she endured, resulting in a corresponding loss of average income of approximately 40%. Based on the evidence Fairley submits, she effectively establishes that she suffered an adverse employment action through the reduction of her hours for the purposes of summary judgment. *Id.* at 10-11.

2. *Denial of Transfer Request*

Defendants next argue that the denial of her transfer request does not constitute an adverse employment action. Mem. SJ. at 8. From Defendants' perspective, Fairley's transfer was lateral, and one that would not have resulted in different pay, hours, benefits, or duties. *Id*. Therefore, conclude Defendants, the denial is not an actionable adverse employment action for purposes of a Title VII retaliation claim. *Id.*

Fairley responds that she has submitted evidence to raise a genuine issue of fact that Defendants' refusal to grant her transfer request, which was made to get away from her harassers, constituted an adverse action. Resp. at 12. Fairley points to evidence showing that she told Operations Consultant Collins that Newton

12

continued to come to the South French restaurant even after he had been transferred, making her uncomfortable. *Id.* When Collins and HR asked Fairley why she wanted to transfer to another restaurant, she again told them she felt uncomfortable working at South French. *Id.* And when Collins offered to transfer Fairley to International Parkway, Fairley pointed out that she did not want to transfer to that restaurant as that was where Newton worked. Resp. 12-13. Fairley maintains that a reasonable jury could find that Defendants' refusal to transfer Fairley—thereby preventing her from getting away from her harassers—constituted an adverse employment action. Resp. at 13 (citing *Gustafson v. Genesco, Inc.*, 320 F.Supp.3d 1032 (S.D. Iowa 2018)). In short, Fairley argues that this was not the lateral transfer Defendants attempt to characterize it as, but rather an attempt to move to another town to escape her harassers. *Id.* The Court agrees with Fairley that a genuine dispute of material fact exists as to whether Defendants' failure to grant Fairley's transfer request constitutes an adverse employment action.

The Court turns next to Defendants' second argument regarding causation.

**B. Causation**

To establish a causal link in a Title VII retaliation claim, the plaintiff must show "but-for" causation. *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 748–49 (7th Cir. 2021) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). That is, Fairley "must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (internal quotation marks and citations omitted). To do so, Fairley can offer

13

circumstantial evidence, such as suspicious timing, ambiguous statements, "and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Fairley may further offer "evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (internal quotation marks and citations omitted).

    *1. Reduction in Hours*

Defendants contend that Fairley cannot establish causation because the fluctuations in her hours and the denial of her transfer request were unrelated to her complaints of harassment. Mem. SJ. at 11. Starting with her hours, Defendants point out that Fairley was a Crew Member. As a Crew Member, her schedule was flexible based on her availability, business needs, and performance. Mem. SJ. at 12. Defendants maintain that Fairley worked between 12 and 30 hours per week in the 6 months before her first alleged complaint in mid-December 2018, and 7 to 28 hours per week in the six months after the alleged complaints. *Id*. Defendants contend that Fairley's own changes to her availability and calling off scheduled shifts further contributed to her fluctuating schedule. *Id*.

14

Predictably, Fairley disagrees. Fairley asserts that Defendants fail to advance a legitimate reason why her hours were reduced after she submitted her written complaints. Resp. at 14. From Fairley's perspective, after she submitted her written complaints, her hours "were significantly reduced." *Id.* On the other hand, the sister of one of Fairley's harassers, whom Fairley worked with, had her hours increased. *Id.* Based on these facts, posits Fairley, a reasonable jury could infer that General Manager Jimenez and People Manager Tran reduced her hours in retaliation for submitting her written complaints. *Id.*

As explained, to establish a genuine dispute of material fact, Fairley may offer circumstantial evidence, such as suspicious timing, ambiguous statements, "and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *See Troupe*, 20 F.3d at 736. Fairley does just that: she points to both a decrease in her average number of hours and an increase in the hours worked by her co-worker after Fairley submitted her written complaints. *See* Resp. at 14. Here, viewing the evidence in the light most favorable to Fairley, the Court finds there is a material issue of fact whether the reduction in her hours was in retaliation for her complaints of sexual harassment. True, as argued by Defendants, there is evidence that her hours fluctuated prior to her complaints. However, Fairley has also adduced evidence that there was a reduction in her hours post complaint. At summary judgment, it is not the Court's role to resolve issues of fact, as that job belongs to the trier of fact. Accordingly, a reasonable jury could find that Fairley's hours were reduced after she complained about harassment.

### 2. *Denial of Transfer Request*

Defendants next assert that Fairley's transfer request was denied due to legitimate, non-retaliatory reasons. Defendants maintain that Fairley's transfer request in 2019 was denied because the Lake Mary restaurant had no business need for a Crew Member with her availability. Mem. SJ. at 14. According to Defendants, transfer requests at Florida McOpCo restaurants are considered on a case-by-case basis by the General Manager of the employee's restaurant and the General Manager of the restaurant where an employee wants to transfer, in consultation with the Operations Consultants that support both restaurants. Defendants contend that the outcome of a request is based on a number of factors, including but not limited to restaurant sales and peak times; the employee's position, availability, and skill' and most notably, business need. *Id.*

Defendants also assert that the timing between Fairley's transfer request and the denial does not present suspicious timing. *Id.* at 14-15. Specifically, they argue that Fairley's transfer request was denied approximately five months after she complained of harassment, which is too remote in time to support a causal link. *Id.* at 15. Defendants additionally argue that Fairley fails to present evidence that any Crew Member worked her shift, had her same availability, and requested and was granted a transfer to the Lake Mary restaurant. *Id.* The way Defendants see it, Fairley's failure to identify any employee who did not complain of sexual harassment and was treated more favorably, dooms her claim. *Id.*

16

Fairley argues that Defendants' position omits crucial details. Specifically, Fairley argues that the witnesses upon whom Defendants rely testified that they did not know what the business needs were at the Lake Mary restaurant. Resp. at 15. Moreover, she asserts that a Lake Mary job opening showed that it was hiring for "practically anytime: breakfast, lunch, late nights, weekends—whatever." *See id.* Fairley additionally contends that, "[a]s an Operations Consultant, Collins could have spoken to the supervisor of the Lake Mary restaurant to find out if Plaintiff could have transferred, but she didn't." *Id.*

Fairley fails to establish a genuine dispute of material fact as to whether her complaints constituted the but-for reason her transfer request was denied. Defendants, for their part, submit deposition testimony supporting their argument that Fairley's request was denied because the Lake Mary location did not have a need for an employee with her availability. *See* Mem. SJ at 14 (citing DSOF ¶¶ 48-51). Crucially, Fairley fails to point to any evidence, circumstantial or otherwise, supporting the contention to the contrary—that the denial of her transfer request was due to any reason other than lack of business need. Testimony that employees failed to recall the precise business need does not satisfy this burden. Nor does a job posting mean that Fairley's transfer denial was made in response to her complaint. Importantly, while Fairley argues that Collins "could have spoken to the supervisor" of the Lake Mary location, she does not point to evidence establishing that Collins was aware of her EEOC charge when she denied the transfer request, a failure which courts have found to weigh in favor of summary judgment for the employer. *See Nagle*

17

*v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). Nor does suspicious timing alone satisfy Fairley's summary judgment burden. *See, e.g. Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015) ("Suspicious timing alone rarely establishes causation, but if there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment."); *Coleman*, 667 F.3d at 861 (interval of few weeks or months "may provide probative evidence of the required causal nexus" when "there is corroborating evidence of retaliatory motive"). Here, Fairley fails to point to sufficient corroborating evidence to establish that the denial was retaliatory.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment on Fairley's retaliation claim [144]. Specifically, Fairley has established a genuine dispute of material fact as to whether her hours were reduced in response to her complaints of harassment, but fails to do so concerning the denial of her transfer request.

Dated: November 26, 2025

_____
United States District Judge
Franklin U. Valderrama

18