**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMELIA FAIRLEY and ASHLEY REDDICK, on behalf of themselves and all those similarly situated, | |
| Plaintiffs, | No. 20-cv-02273 |
| v. | Honorable Franklin U. Valderrama |
| McDONALD'S CORPORATION, McDONALD'S USA, LLC and McDONALD'S RESTAURANTS OF FLORIDA, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ashley Reddick (Reddick) worked at McDonald's South French Florida restaurant for three years until she was terminated. Reddick sued McDonald's Corporation, McDonald's USA, LLC (McDonald's USA), and McDonald's Restaurants of Florida, Inc. (McDonald's of Florida) (collectively, Defendants), asserting counts for sex harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000(e), *et seq*. and the Florida Civil Rights Act, Fla. Stat. Ann. § 760. R. 18,[1] FAC. Defendants now move for summary judgment as to Reddick's retaliation claim. R. 147, Mot. SJ;

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

R. 148, Mem. SJ. For the reasons that follow, Defendants' motion for summary judgment is granted.

## Background

The following facts are set forth as favorably to Reddick, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). This background section details all material undisputed facts and notes where facts are disputed. At summary judgment, the Court assumes the truth of the undisputed facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

### A. Overview of the Parties

Defendant McDonald's Restaurants of Florida, Inc. operates company owned-and-operated McDonald's-brand restaurants (McOpCos) in the State of Florida and employs all restaurant-level employees at Florida McOpCos. R. 149, DSOF[2] ¶ 6. Defendant McDonald's USA, LLC, licenses the McDonald's brand and the right to operate McOpCo restaurants in Florida to McDonald's Restaurants of Florida, Inc. *Id.* ¶ 7. Defendant McDonald's Corporation is the parent company of McDonald's USA, LLC *Id.* ¶ 8.

---

[2]Citations to the parties' briefs are identified as follows: "Mem. SJ." for Defendants' Memorandum in Support of their Motion for Summary Judgment (R. 148); "Resp. SJ." for Reddick's Response in Opposition to Defendants' Motion for Summary Judgment (R. 156); "Reply SJ" for Defendants' Reply in Support of Their Motion for Summary Judgment (R. 184); "DSOF" for Defendants' Local Rule 56.1 Statement of Undisputed Facts (R. 149); "Pl. Resp. DSOF" for Reddick's Response to Defendants' Statement of Undisputed Facts (R. 157); "PSOAF" for Reddick's Local Rule 56.1 Statement of Additional Facts (R. 158); "Defs. Resp. PSOAF" for Defendants' Response to Reddick's Local Rule 56.1 Statement of Additional Facts (R. 185).

Reddick worked at the McOpCo restaurant known as "South French" as a Crew Member and Trainer from October 2015 to August 2018. *Id.* ¶ 20; R. 157, Pl. Resp. DSOF ¶ 24. As a Crew Trainer, Reddick's duties included preparing customers' food orders, delivering quality customer service, maintaining the restaurant, and training new Crew Members on restaurant operations and policies. DSOF ¶¶ 23-24. Reddick reported to General Manager Jackie Alexander, who was responsible for managing the day-to-day operations of the restaurant. *Id.* ¶ 25. Alexander, in turn, reported to Operations Consultant Yvonne Collins. *Id.* ¶ 18.

Under the Attendance and Schedule Policy, McOpCo employees work flexible schedules based on the employee's personal needs and the needs of the restaurant. *Id.* ¶¶ 12, 58. McOpCo employees provide their scheduling availabilities, and McOpCo managers create schedules that accommodate employees' availabilities. *Id.* ¶ 59. McOpCo employees are not typically assigned to specific shifts. *Id.* ¶¶ 12, 58. Instead, schedules and hours fluctuate from week to week. *Id.* ¶ 58 Accordingly, Reddick's hours fluctuated. *Id.* ¶¶ 63-64.

## B. Anti-Harassment Policy

Defendants have a Discrimination and Harassment Policy (Policy) which applies to employees at Florida McOpCo restaurants. *Id.* ¶¶ 9-10. Employees are introduced to the Policy, along with all employment policies, during new hire orientation. *Id.* ¶ 13. Employees receive a copy of all employment policies before they begin working at the restaurants. *Id.* ¶ 14. The Policy prohibits harassing, discriminating or retaliatory conduct against any employee who has made a

3

complaint about sexual harassment or has cooperated in the investigation of such complaint. The policy additionally informs employees of multiple avenues for reporting any potential violations, instructing that employees "'should immediately report' alleged discrimination or harassment to the General Manager, HR Consultant, Operations Consultant, or the HR Consulting hotline." *Id.* ¶¶ 10-12 (quoting Ex. K, Policy, at McDonalds_Fairley_0001672). The Policy also instructs managers who receive reports of sexual harassment to report these incidents to their General Manager. PSOAF ¶ 4. The Policy prohibits any form of retaliation against employees who make complaints. DSOF ¶ 10. Reddick received and acknowledged her understanding of the employment policies during her orientation in October 2015. *Id.* ¶¶ 21–22. Reddick also received training on the Policy and resources available to her at the start of her employment. *Id.* ¶¶ 13,22.

### C. Reddick's Disciplinary Record and Termination

Reddick received several written disciplinary action forms during her employment at South French. *Id.* ¶ 26. On October 30, 2016, Reddick received a written warning for arguing with a co-worker, prompting a one-week suspension. *Id.* ¶ 27. On February 19, 2017, Reddick was disciplined for arriving to work late, having an attitude, and cursing in the restaurant, subsequently receiving both a written and verbal warning following this incident. *Id.* ¶ 28. In April 2017, Reddick was twice disciplined for not being at work during her scheduled hours. *Id.* ¶¶ 29-30. On April 16, 2018, Reddick failed to follow General Manager Alexander's instructions concerning a customer's order, prompting Alexander to send Reddick home for a 24-

4

hour cooling off period and issue Reddick with a written discipline notice. *Id.* ¶ 31. On or around August 17, 2018, Collins assigned Reddick to work the drive-thru window. Collins testified that Reddick left her assigned station, pulled out her cell phone, and walked towards the Crew Room. Collins called after Reddick, but Reddick did not acknowledge her. Collins testified that she later heard Reddick use abusive language toward her, but could not recall exactly what she had said. *Id.* ¶¶ 35-39.

Collins then terminated Reddick's employment, explaining that the termination was based upon her review of Reddick's disciplinary history following the August 2018 incident. *Id.* ¶ 42. McOpCo's official reason for Reddick's termination was "unsatisfactory performance." PSOAF ¶ 33.

### D. Reddick's Complaints of Sexual Harassment

From approximately April 2018 to July 2018, while she was working at South French, Reddick states that a restaurant employee harassed her by showing her inappropriate pictures, touching her and making inappropriate comments. DSOF ¶44. On May 21, 2019, Reddick filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that she was harassed by a former crew member named Marlo. *Id.* ¶ 45.[3] No other McOpCo employee at the South French restaurant harassed Reddick. *Id.* ¶ 52. Reddick had not reported any coworker harassment before the alleged incidents involving Marlo. *Id.* ¶ 15.

---

[3] At her deposition, Reddick testified that her harasser was called Marso, Marlo and Maurice. DSOF ¶ 49. Because Reddick refers to her harasser by different names throughout her filings, the Court refers to this individual as "Marlo" for the sake of consistency. *See* Mem. SJ. at 9.

5

Reddick alleges that she complained about Marlo's harassment to either restaurant employee Debbie Turner and/or Thu Tran, and additionally told Tran that Marlo was inappropriately rubbing himself on her. *Id.* ¶ 53; PSOAF ¶ 13 (citing T.A. Reddick Dep. 91:23-93:23). Reddick also states that she also told General Manager Alexander that she was uncomfortable working with Marlo. However, Alexander denied being told this. DSOF ¶¶ 54-55; PSOAF ¶ 14. Reddick never personally informed Collins of the harassment she suffered by Marlo, and Collins testified that she was unaware of Reddick's complaints. DSOF ¶¶ 56-57.

Reddick sued Defendants asserting counts for sex harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000(e), *et seq*. (Count I); retaliation under Title VII (Count II); and for sex harassment and hostile work environment under the Florida Civil Rights Act, Fla. Stat. Ann. § 760 (Counts III and IV). R. 18, FAC. Defendants' fully briefed motion for summary judgment on Reddick's retaliation claim (Count II) is before the Court.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party

6

must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

## Analysis

In Count II, Reddick asserts a claim for Title VII retaliation. FAC ¶¶ 175–180. Reddick alleges that she complained of Marlo's sexual harassment and was terminated as a result.

Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex…" 42 U.S.C. § 2000e-2(a)(1). Title VII also "protects employees who complain to their employers about sexual harassment from retaliation on that basis." *Caskey v. Colgate-Palmolive Co.,* 535 F.3d 585, 592–93 (7th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a). To establish a retaliation claim under Title VII, Reddick must show that: (1) she engaged in a statutorily protected activity; (2) the Defendants took a materially adverse employment action against her;

7

and (3) there is a causal link between the protected activity and the adverse action. *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). To show a causal link between a protected activity and an adverse employment action, a plaintiff must show but-for causation. *Id.* at 897. That is, there must be evidence that "the adverse action would not have happened had she not engaged in her protected activity. *Adebiyi v. S. Suburban College,* 98 F. 4th 886, 892 (7th Cir. 2024). If the plaintiff establishes these prima facie elements of retaliation, the burden shifts to the defendant to produce evidence that, when taken as true, shows it had a legitimate, non-discriminatory reason for its actions. *Robertson v. Dep't of Health Servs.,* 949 F.3d 371, 378 (7th Cir. 2020). If the defendant makes this showing, the burden then returns to the plaintiff to prove, by a preponderance of the evidence, that the proffered reasons were pretext for discrimination. *Id.*

Defendants do not contest the first element of the retaliation analysis—that Reddick engaged in a statutorily protected activity. *See* Mem. SJ. at 6 n.2. Nor do Defendants dispute that Reddick's termination constitutes an adverse employment action under Title VII. *See* Mem. SJ. at 6; Resp. SJ. at 10. Rather, Defendants maintain that Reddick cannot establish the third element because she was terminated for failing to meet Defendants' legitimate expectations, not—as Reddick claims—in retaliation for her complaints of sexual harassment.

To establish a causal link in a Title VII retaliation claim, the plaintiff must show "but-for" causation. *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 748–49 (7th Cir. 2021) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360

8

(2013)). That is, Reddick "must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* (internal quotation marks and citations omitted). A plaintiff may seek to provide the causal link via direct or circumstantial evidence. *Gnutek v. Ill. Gaming Bd.*, 80 F. 4th 820, 824 (7th Cir. 2023). "Direct evidence typically requires an admission by the employer of discriminatory animus, which is rare." *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) (cleaned up). Circumstantial evidence may consist of "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (internal quotation marks and citations omitted). All evidence, whether direct or circumstantial, is considered together, not separately. *Ortiz v. Werner Enters.*, 834 F.3d 760, 766 (7th Cir. 2016). The key question is whether a reasonable jury could conclude that there was a causal link between the protected activity or status and the adverse action. *Id.*

Defendants assert that they are entitled to summary judgment on Reddick's retaliation claim because she fails to establish a causal connection between her termination and any alleged harassment. Mem. SJ. at 11. Specifically, Defendants insist that the individual who decided to terminate Reddick, Yvonne Collins, was

9

unaware of Reddick's alleged complaints of sexual harassment at the time of the termination. *Id.* Indeed, Defendants posit, Reddick herself concedes that she did not complain to Collins about any alleged harassment, and Collins similarly testified that she was unaware of Reddick's complaints. *Id.* at 11-12. While Reddick complained to General Manager Jackie Alexander and either Debbie Turner or Thu Tran about Marlo's conduct, according to Defendants, she presents no evidence that any of them informed Collins of her alleged harassment complaints. *Id.*

Reddick disagrees. Contrary to Defendants' contention, Reddick maintains that a reasonable jury could find that Collins knew about Reddick's complaints of sexual harassment, arguing that the Policy required Alexander, Tran, and Turner to inform Collins. *See* Resp. SJ. at 14-15 (citing *Scott v. Sunrise Healthcare Corp.*, 195 F.3d 938, 941 (7th Cir. 1999) (emphasis added); see also *Ridings v. Riverside Medical Cntr.*, 537 F.3d 755, 774 (7th Cir. 2008)).

Moreover, argues Reddick, her firing was pretextual—that is, it was "an attempt to mask a discriminatory reason with a legitimate excuse." *Crain v. McDonough*, 63 F.4th 585, 593 (7th Cir. 2023). Reddick advances four arguments in support of her of pretext argument. *See* Resp. SJ. at 10-14. First, she disputes Defendants' version of events on the day of the termination. Reddick claims that she did not pull out her cell phone and that she did not direct abusive language against Collins. From Reddick's perspective, Collins' claim of using Reddick's prior discipline as a basis for her termination therefore becomes suspect, as Collins would have "no reason to review [her] disciplinary record" "if the August 17, 2018 never happened."

10

*Id.* at 11. Second, Reddick argues that Defendants' account of the August 2018 incident is materially inconsistent. For example, Reddick points to Defendants' contention that Reddick used abusive or inappropriate language directed at Collins, in contrast to Reddick's manager's testimony that Reddick merely "answer[ed] back." *Id.* at 12. Third, Reddick maintains that Collins "invoked a rarely used reason" for her termination—unsatisfactory performance—and that other employees fired for this reason were not comparable to her. *Id.* at 13. Finally, Reddick points to allegedly suspicious timing: the day of Reddick's termination was supposedly the first time Collins had visited South French since Reddick had complained of sexual harassment. *Id.* at 14.

Predictably, Defendants disagree with Reddick's assertions surrounding her termination. Defendants initially maintain that Reddick fails to proffer any evidence that Collins did not believe the reasons for which she fired Reddick. Reply SJ. at 6-7. (citing *Logan v. Sabre Mfg., LLC*, 2013 WL 5570218, at *9 (N.D. Ind. Oct. 8, 2013)). Nor do Reddick's attempts to dispute certain facts concerning Reddick's alleged behavior during the August 2018 incident, Defendants argue, affect the pretextual analysis, which hinges on Collins' state of mind. *See id.* at 6-9 (citing *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 496-97 (D.C. Cir. 2008); *Berrow v. Wake Forest Univ.*, 1991 U.S. Dist. LEXIS 19344, at *9-10 (M.D.N.C. Oct. 16, 1991)). Defendants additionally object to Reddick's assertion that the reason for her termination, unsatisfactory performance, evidences pretext. *Id.* at 10-11. In support, Defendants point to the fact that Reddick had been previously disciplined for unsatisfactory

11

performance before the August 2018 incident. *Id.* Indeed, Defendants argue that Reddick fails to demonstrate how her conduct during the August incident does not qualify as "unsatisfactory performance," such that this reason is pretextual. *Id.* Moreover, Reddick's contention concerning the other four employees terminated for unsatisfactory performance misses the mark, Defendants maintain. Specifically, Reddick fails to explain why she would have been exempted from termination for this reason, regardless of the different positions held or behavior engaged in by the other employees. *Id.* at 11-12. Finally, Defendants disagree with Reddick's argument that the timing of her termination was suspicious. According to Defendants, Reddick fails to cite any evidence in support of her contention that the August 2018 incident was the first time Collins worked with Reddick since Reddick complained of sexual harassment. *Id.* at 12-13. At bottom, Defendants argue that Reddick fails to carry her burden in demonstrating that a genuine dispute of material fact exists as to Collins' knowledge of Reddick's harassment complaints. *Id.*

The Court starts and ends with the evaluation of pretext. As the Seventh Circuit has explained, "where a defendant offers a nondiscriminatory explanation for its employment decision, as here, the prima facie case and pretext inquiries often overlap, so courts may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext." *Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024) (quoting *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011). Pretext is defined as "a dishonest explanation, a lie rather than an oddity or an error." *Id.* (cleaned up). To establish pretext, Reddick must provide

12

evidence suggesting that retaliation was the most likely motive for her termination or that the Defendants' proffered reason is not worthy of belief. *See, e.g.*, *Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir. 2001). "If the [employer] honestly believed it made the correct employment decision—even if its decision was inaccurate, unfair, foolish, trivial, or baseless—[the plaintiff's] claims cannot succeed." *Barnes-Staples v. Carnahan*, 88 F.4th 712, 716 (7th Cir. 2023).

The Court agrees with Defendants that Reddick fails to establish that her termination was pretextual. To begin, Defendants have proffered legitimate, non-retaliatory reasons for Reddick's termination. *See* Mem. SJ. at 12-13. Namely, Reddick had a record of unprofessional conduct for which she had been disciplined, including instances of using inappropriate language, yelling, and failing to show up for work. *See id.* On top of her prior disciplinary history, Reddick's behavior during the August 2018 incident—leaving her assigned post, using her cell phone, and directing inappropriate language towards Collins—prompted Collins to review her record and decide to terminate her employment. Because Defendants have identified a non-discriminatory motive for the termination, the burden shifts back to Reddick to establish that this motive was pretextual. *See, e.g.*, *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) ("If the employer [provides a legitimate, non-discriminatory reason for the adverse action], the burden shifts back to the employee to prove that the employer's stated reason is mere pretext."); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

13

Reddick fails to carry this burden. The reasons she provides for her termination being pretextual are immaterial or otherwise off base. First and most importantly, Reddick fails to proffer any evidence that Collins did not believe the reasons for which she fired Reddick. *See Barnes-Staples*, 88 F.4th at 716. Second, Reddick's alternative characterization of her behavior during the August 2018 incident is immaterial. Reddick argues that she merely "answer[ed] back," during the August 2018 incident, contrasting Defendants' allegation that she used inappropriate language. But whether she "answered back," as she claims, or used vulgar language, as Defendants claim, does not pose a material difference when, at bottom, she engaged in conduct that warranted discipline.

Third, Reddick's attempt to differentiate herself from other employees terminated for unsatisfactory performance is similarly inadequate. The fact that only a relatively small number of employees were terminated for unsatisfactory performance, that these employees held different positions, and that they engaged in different conduct to warrant their termination, does not equate to Reddick's termination being pretextual. *See Upchurch v. Indiana*, 146 F.4th 579, 588 (7th Cir. 2025) ("For a reasonable jury to draw an inference of pretext from evidence that the employer treated another employee differently, the comparator must be directly comparable to the plaintiff in all material respects.") (cleaned up). In other words, the fact that Reddick cannot point to another employee in her position fired for the same conduct does not affect the propriety of *her* termination. *See Towers v. Team Car Care, LLC*, 2022 WL 408097, at *5-6 (N.D. Ill. Feb. 10, 2022) (granting summary judgment

14

and finding that plaintiff's use of inappropriate language and leaving work without clocking out were non-retaliatory justifications for termination).

Finally, the Court disagrees with Reddick's characterization of "suspicious timing." In essence, Reddick argues that the August 2018 incident was the first time she and Collins worked together since the harassment complaints, and therefore, Collins used the August 2018 incident as pretext to fire her for complaining of harassment. But Reddick's assertion requires the Court to engage in impermissible speculation. *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 960 (7th Cir. 2021) (plaintiff cannot rely on impermissible speculation and "must provide more than his mere assertions to defeat summary judgment"). The Court will not do so.

Recall that Defendants adduced evidence that Collins had no knowledge of Reddick's complaints of sexual harassment. *See* Mem. SJ. at 11-12. Instead of advancing evidence to the contrary, or at least evidence creating a question of fact, Reddick simply speculates that Collins must have known about the complaints due to Reddick's conversations with Alexander, Tran, and/or Turner and McOpCo Policy instructing managers to report such complaints "up the ladder." *See* Resp. at 14-15. The Court is unpersuaded by Reddick's response. In proffering this theory, Reddick again asks the Court to engage in improper speculation; that is, to *assume* that Collins was told of the harassment allegations without sufficient evidence. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 ("It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had actual knowledge of the complaints for [its] decisions to be

15

retaliatory.") (citation omitted). Indeed, the evidence points in the opposite direction from Reddick's contentions: Collins explicitly testified that she did not have knowledge of any sexual harassment complaints raised by Reddick. *See* Reply SJ at 3. As a result, Reddick fails to establish a genuine dispute of material fact as to whether Collins knew of Reddick's protected activity, and as a result, Reddick cannot maintain that her termination was based upon retaliatory motive by Collins.

Even taking Reddick's argument as true—that Collins knew of her reports of harassment—Reddick still fails to establish a genuine dispute of material fact warranting denial of Defendants' motion. In other words, it matters not whether Collins explicitly knew of Reddick's complaints; what matters, rather, is that Reddick was terminated for a legitimate reason, and that Collins believed this reason to be true. Defendants have demonstrated this to be the case, and Reddick has not proffered evidence to establish a material dispute as to this fact.

In sum, Reddick fails to establish a genuine dispute of material fact that her termination was retaliatory. Indeed, Defendants point to legitimate, non-retaliatory motives for terminating Reddick's employment, and Reddick fails to carry her burden in response by showing that such motives were pretextual. *See Barnes-Staples*, 88 F.4th at 716. Accordingly, the Court grants summary judgment for Defendants on Count II, Reddick's Title VII retaliation claim.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment on Count II is granted.

Dated: December 8, 2025

_____
United States District Judge
Franklin U. Valderrama