IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMELIA FAIRLEY, and ASHLEY REDDICK, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McDONALD'S CORPORATION, McDONALD'S USA, LLC, and McDONALD'S RESTAURANTS OF FLORIDA, INC.,<br><br>Defendants. | No. 20-cv-02273<br><br>Judge Franklin U. Valderrama |

## ORDER

Plaintiffs Jamelia Fairley (Fairley) and Ashley Reddick (Reddick) (collectively, Plaintiffs) work and worked at a McDonald's restaurant in Florida. Plaintiffs, individually and on behalf of a class of similarly situated individuals, sued McDonald's Corporation, McDonald's USA, LLC (McDonald's USA), and McDonald's Restaurants of Florida, Inc. (McDonald's of Florida) (collectively, Defendants or McDonald's), asserting counts for sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000(e), *et seq.* and the Florida Civil Rights Act, Fla. Stat. Ann. § 760. R. 18,[1] FAC. Those claims are not before the Court today. Rather, in May 2024, Plaintiffs

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

moved to certify the class. R. 135, Mot. Class Cert. In support, Plaintiffs filed a number of exhibits, including exhibits filed under seal. *See generally* R. 137–42, Exs. In July 2024, while the motion to certify was pending, Workright Training LLC ("Workright") d/b/a Seyfarth at Work (formerly d/b/a Seyfarth Shaw at Work) moved to intervene in the action for the limited purpose of filing a motion to maintain certain documents under seal. *See* R. 192, Mot. Intervene. The Court struck the motion with leave to refile after issuance of the Court's order resolving the substantive motions. *See* R. 198, Aug. 8, 2024 Min. Entry. Following the Court's class certification opinion, Workright filed a renewed motion to maintain documents under seal, which is presently before the Court. R. 217, Ren. Mot. Seal. For the reasons stated below, the Court grants Workright's motion.

**Background**

The Court includes only the background information necessary for resolving this motion. Workright is a wholly owned subsidiary of the law firm Seyfarth Shaw LLP that provides legal compliance and business solutions. Ren. Mot. Seal at 3. Workright provides interactive employment and corporate training and compliance solutions over a variety of platforms. *Id.*

As relevant here, Workright developed and delivered original content and design elements, and, in some instances, assisted McDonald's in the implementation of various training webinars, eLearning modules, and instructor-led trainings for employees who work at or support Florida McOpCo restaurants. *Id.* at 3–4. The materials Workright developed for McDonald's included a number of eLearning

trainings, webinars, and presentations that are at issue here (the Training Documents). *Id.* at 2. Workright provided the Training Documents to McDonald's subject to standard terms and conditions, that, among other things, govern ownership and use of the materials by McDonald's. *Id.* at 4. In particular, Workright owns copyrights and other intellectual property rights in the materials provided to McDonald's that are contained in the Training Documents. *Id.* The Terms & Conditions specify that the intellectual property rights are owned by Workright, reading: "WorkRight or its third party licensors own the copyrights, trademarks and all other intellectual property rights in the videocassettes, cd-roms, guides, presentation materials, releases, educational materials including participant guides and kits used in connection with the Training (the 'Materials')." *Id.* The Terms & Conditions also include limitations on the use of the Materials provided to clients, including McDonald's, as follows: "Client may use the Materials solely and exclusively for its internal use in connection with the Training. Client shall not (i) reproduce the Materials or any portions thereof or otherwise use the Materials except as expressly permitted by WorkRight, (ii) record or videotape on any medium the Materials or the Training, or (iii) conduct training using the Materials without the express written permission of WorkRight." *Id.*

On May 10, 2024, Plaintiffs moved to certify the class. Mot. Class Cert. Plaintiffs, in support of the motion, attached a number of exhibits. *See generally* Exs. On July 31, 2024, Workright moved to intervene in the action for the limited purpose of filing a motion to maintain documents under seal, which the Court granted on

August 1, 2024. *See* Mot. Intervene; R. 195, Aug. 1, 2024 Min. Entry. The Court reviewed the motion to maintain documents under seal and determined not to unseal any disputed documents until ruling on the pending substantive motions. *See* Aug. 8, 2024 Min. Entry. The Court struck the motion without prejudice and with leave to refile after issuance of the Court's order resolving the pending substantive motions. *Id*. On December 31, 2025, the Court denied Plaintiffs' motion for class certification. R. 209, Order, Mot. Class Cert. Workright filed a renewed motion to maintain documents under seal in response. *See* Ren. Mot. Seal. While the motion to maintain documents under seal was pending, the Parties settled and filed a stipulated dismissal. R. 228, Dismissal. In the Court's Minute Entry dismissing the action, the Court asked whether Plaintiffs maintained their objection to the pending renewed motion by Workright to maintain documents under seal. R. 229, July 7, 2026 Min. Entry. Plaintiffs filed a status report indicating they continued to object to the sealing of the documents. R. 230, Jul. 10, 2026 Stat. Rpt. The issue is thus still ripe for consideration and the fully briefed motion to maintain documents under seal is before the Court. *See* Mot. Seal.

**Legal Standard**

Under Federal Rule of Civil Procedure 26, the Court "may, for good cause, issue an order. . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). But "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). This presumption can be

rebutted in certain circumstances, however. *See Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) ("A litigant is allowed, for example, to conceal trade secrets, and, if there are compelling reasons of personal privacy, to litigate under a pseudonym."). Because of the strong presumption toward public disclosure of court files and documents, the burden is on the party seeking confidentiality to show good cause for keeping the documents from public view. *Doe by & through Doe v. Apple Inc.*, 2025 WL 947949, at *1 (S.D. Ill. Mar. 28, 2025) (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018)). In the case of non-parties, the burden is less demanding, as "[n]on-party organizations are limited in their ability to control the manner in which parties use their confidential commercial documents." *In re Northshore Univ. HealthSystem,* 254 F.R.D. 338, 343 (N.D. Ill. 2008).

The Seventh Circuit has held that "documents may be withheld from the public if they concern any of the following three types of information: (1) confidential and/or proprietary business information such as trade secrets; (2) information covered by a recognized privilege; or (3) information required by statute to be maintained in confidence." *Laroy v. Christie*, 2025 WL 5271088, at *1 (S.D. Ind. Mar. 7, 2025) (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2009)). As to the first category of documents, the Seventh Circuit allows withholding for trade secrets or "something comparable whose economic value depends on its secrecy." *Baxter Int'l, Inc.*, 297 F.3d at 547.

In determining whether a document contains "trade secrets," courts in this district look to the Illinois Trade Secrets Act's (ITSA) definition of "trade secret," which states:

> (d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> > (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> >
> > (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d)(1)–(2).

While the ITSA explicitly defines a trade secret, Illinois courts "frequently refer to six common law factors in determining whether a trade secret exists: (1) the extent to which the information is known outside of the [movant]'s business; (2) the extent to which the information is known by employees and others involved in the [movant]'s business; (3) the extent of measures taken by the [movant] to guard the secrecy of the information; (4) the value of the information to the [movant]'s business and to its competitors; (5) the amount of time, effort and money expended by the [movant] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Learning Curve Toys,*

*Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) (citation modified). These factors are not requisite, but are meant to be "instructive guidelines" for ascertaining whether a trade secret exists under the act. *Id.*

"The decision of whether good cause exists to maintain a document under seal rests solely with the Court." *Unverferth Mfg Co. Inc. v. Par-Kan Co., LLC*, 2024 WL 2883681, at *1 (N.D. Ind. May 20, 2024) (citing *United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009)). "The determination of good cause cannot be elided by allowing the parties to seal whatever they want ... The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). It is through this lens that the Court considers Workright's motion.

**Analysis**

Workright seeks to maintain eleven (11) Training Documents under seal. Of these eleven documents, seven are eLearning trainings, two are instructor led webinar trainings, one is an instructor led in-person training, and one is a storyboard outlining design elements and animations within a training. *See* Ren. Mot. Seal at 2. Workright argues that good cause exists for the documents to remain under seal as they contain trade secrets or are sufficiently comparable documents whose economic value depends on their secrecy, and Workright has taken reasonable steps to maintain their confidential nature. *See id.* at 3. Plaintiffs disagree. From their perspective, the Training Documents, used to train tens of thousands of McDonald's employees, are not secret. *See* R. 219, Resp. Even if they were secret, posit Plaintiffs,

Workright has not taken precautions to safeguard the training materials by, for example, requiring non-disclosure or confidentiality agreements with the workers viewing the documents. *Id.*

Both Plaintiffs and Workright agree that materials containing trade secrets or documents sufficiently secret to impart economic value are suitable for sealing. *See* Ren. Mot. Seal at 7; Resp. at 2–3. The question is whether the Training Documents fall into either of these categories. Workright maintains the Training Documents fall into both of these categories. *See* Ren. Mot. Seal. The Court finds that the documents are sufficiently secret to impart economic value and are suitable for sealing.

The first question before the Court is whether the Training Documents are sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use. *See* 765 ILCS 1065/2(d)(1). Workright is a legal compliance and consulting company. Ren. Mot. Seal. at 10. Workright's "presentation and educational materials used in connection with its training services, including in the form of slide decks, modules, and workbooks," are the core products and services offered by the company and are at the heart of its business. *Id.* at 11. Workright asserts that the Training Documents are sufficiently secret as the programs employ an innovative and interactive approach to training services, tailored to each individual client. *Id.* The proprietary training materials give Workright a competitive edge in the workplace training industry and corresponding economic value. *Id.* It is clear from Workright's success, including training over 2 million employees and managers at over 1,000

companies, that the product has economic value. *Id.* Workright insists that the content contained within the Training Documents derive much of their economic value from their secrecy. *See id.* If the Training Documents were publicly available to Workright's competitors, argues Workright, "the training methodologies and materials could be used to provide training without incurring the same time, expense and investment Workright expends in designing, developing and implementing its curriculums." *Id.* Workplaces would also have less incentive to incur the expense of Workright developing workplace trainings if they were free or publicly available instead. *Id.*

Plaintiffs fundamentally disagree with Workright's position. From Plaintiff's perspective, the Training Documents, rather than deriving economic value from their secrecy, derive economic value from their dissemination to tens of thousands of employees. Resp. at 3. The Workright trainings, according to Plaintiffs, are "of no economic value if they are never disseminated" and the "purpose of Workright's training is to be shared—not kept secret." *Id.* at 4. While the extent to which the information is known by employees is one factor used in determining whether materials are sufficiently secret, it is not the only factor. *See Connell v. KLN Steel Prods. Ltd.,* 2009 WL 691292, at *14 (N.D. Ill. Mar. 16, 2009) ("A party need not keep a trade secret absolutely secret, and the fact that a trade secret may be disclosed to an outsider for some purpose does not vitiate trade secret protection, even if the outsider is a customer.").

The Court finds that although distributed internally at McDonald's, the Training Documents are sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use. Training materials like the ones at issue here are the core of Workright's business. The value of the proprietary materials is clearly significant when viewed in the context of Workright's business. Having reviewed the Training Documents, it is clear to the Court that significant time, effort, and resources were expended in creating the materials. The Training Documents embody unique, creative aspects that have been refined over decades with significant investment, and were created specifically for McDonald's. *See* Ren. Mot. Seal at 5. While the trainings are disseminated (as is their purpose), trade secrets or similar documents with comparable economic value "can exist in a combination of characteristics and components," but together, "in unique combination, affords a competitive advantage and is a protectable secret." *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001). "Workright's value proposition is precisely that its content, sequencing, hypotheticals, and techniques are *not* publicly available for competitors and do-it-yourself customers to copy," and the Court agrees. R. 220, Reply at 8. The economic value of the Training Documents, and Workright's business model, depends on their secrecy. *See Rajaraman v. Gov't Emps. Ins. Co.,* 2025 WL 1114020, at *11 (E.D. Wis. Apr. 15, 2025) (Party established good cause to maintain documents under seal where orientation agenda and PowerPoint slide decks regarding marketing strategy could be used by competitor to enhance training and recruitment for similar programs).

Next up is whether Workright has undertaken reasonable efforts to maintain the Training Documents' secrecy. Workright insists that it has done so. Workright explains that it requires clients to agree to confidentiality with respect to the training materials it provides. *See* Ren. Mot. Seal at 13. Here, McDonald's agreed that use of the Training Documents was "solely and exclusively for [] internal use in connection with" employee training. *Id.* at 6. Additionally, the agreement between Workright and McDonald's states that McDonald's "may not reproduce or modify the training materials, videotape or otherwise record the trainings Workright conducts or conduct training using the training materials without permission of Workright." *Id.* Pursuant to the Terms & Conditions of the agreement, the Training Documents constitute confidential information, which includes "training methodologies; procedures; knowhow; marketing data; business strategies; client lists; and any other confidential information of, about, or concerning the business, products, services, research or development of Workright." *Id.* McDonald's is not allowed to disclose the Training Documents to third parties. *Id.*

Plaintiffs posit that Workright could have done more. For example, Workright has not shown that the tens of thousands of employees who received the Training Documents were subject to non-disclosure or confidentiality agreements. Resp. at 5. Nor has Workright shown, according to Plaintiffs, that the McDonald's workers who took the training were told that the materials were confidential. *Id.* But the method and manner of the disclosure of the Training Documents undercuts Plaintiffs' argument. The Training Documents were delivered via interactive eLearning

modules, instructor-led webinars and instructor-led trainings. *See* Ren. Mot. Seal at 2. As such, informing the employees that the Training Documents were subject to non-disclosure or confidentiality agreements or that the materials were confidential would not have served the purpose advanced by Plaintiffs. Regardless, Workright isn't required to have every single trainee sign a confidentiality agreement. *See Symbria, Inc. v. Callen*, 2022 WL 60530, at *11 (N.D. Ill. Jan. 6, 2022) ("[T]he law does not require Plaintiffs to guard their trade secrets by mandating confidentiality agreements with each employee"). The question is whether, under the circumstances, Workright took *reasonable steps* to maintain the documents' secrecy or confidentiality. *See Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 696 (N.D. Ill. 2004) (the law "requires only reasonable measures, not perfection" to maintain secrecy). As evidenced above, Workright took a number of reasonable steps to maintain the Training Documents' secrecy, including the scope of distribution of the training documents, the confidential nature of the documents in agreements with McDonald's, and the inability for McDonald's to reproduce the materials. *See supra*. Under the circumstances, it is clear that Workright has taken reasonable steps to maintain the Training Documents' secrecy or confidentiality. *See Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1137 (N.D. Ill. 2019) ("A company need not monitor its employees like a police state to garner trade secret protection for its confidential information. Rather, it must take reasonable protective measures for its claimed trade secret under the circumstances."); *see also Comput. Assocs. Int'l v. Quest*

*Software, Inc.,* 333 F. Supp. 2d 688, 696 (N.D. Ill. 2004) (explaining that trade secret owners need only take reasonable, not perfect, measures to maintain secrecy).

In short, the Court finds that Workright has carried its burden of establishing good cause to maintain the Training Documents under seal. The Court does not reach Workright's second argument regarding the presumption of publication. *See* Ren. Mot. Seal at 13–14.

## Conclusion

For the reasons above, the Court grants Intervenor Workright Training LLC ("Workright") d/b/a Seyfarth at Work (formerly d/b/a Seyfarth Shaw at Work)'s renewed motion to maintain documents under seal [217].

Dated: November 10, 2026

United States District Judge
Franklin U. Valderrama